UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  16-14413-Civ-ROSENBERG/LYNCH

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

       Plaintiff,

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually,
WADE COURTEMANCHE, individually,
KEN J. MASCARA, as SHERIFF of
ST. LUCIE COUNTY, Florida,
JOSE ROSARIO, individually, and the
ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

       Defendants.
_____/

**PLAINTIFF, TAVARES DOCHER'S, MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT, JOSE ROSARIO'S, MOTION TO DISMISS [DE 19]**

    **COMES NOW** the Plaintiff, TAVARES DOCHER, by and through JANICE DOCHER-NEELEY, his mother and legal guardian, and pursuant to Fed. R. Civ. P. 12 and S.D. Fla. L.R. 7.1, hereby submits this response to Defendant, JOSE ROSARIO's, Motion to Dismiss Counts X, XII, and XX, and in support thereof, submits the following:

    1.    Defendant, JOSE ROSARIO (hereinafter "Rosario"), seeks dismissal of Count X, XII, and XX.

    2.    Count X is a First Amendment Free Speech Retaliation claim against Defendant Rosario, individually, pursuant to 42 U.S.C. § 1983.

3. Count XII is a Fourteenth Amendment Deliberate Indifference claim against Defendant Rosario, individually, pursuant to 42 U.S.C. § 1983.

4. Count XX is a negligence claim against Defendant Rosario, individually, under Florida law.

## STATEMENT OF THE FACTS

On May 11, 2014, Plaintiff TAVARES DOCHER (hereinafter "Docher") was at a CVS Pharmacy located in Port St. Lucie, Florida. **(Amended Complaint, hereinafter referred to as "complaint," DE 1-2, pp. 16-73, ¶ 13, and cited as "DE 1-2, ¶ –").** While inside the CVS, Docher asked an employee to contact law enforcement out of concern for the welfare of his mother. **(DE 1-2, ¶ 14).** Deputies Newman, Mangrum, and Robinson responded to the CVS. **(DE 1-2, ¶ 15).**

Docher was requested by the deputies to sit down in the parking lot of the CVS, and complied. **(DE 1-2, ¶ 18).** The area was obscured by landscaping from the adjacent roadways. **(DE 1-2, ¶ 17).**

While seated in the parking lot, Docher informed Mangrum he had been drinking liquor and Natural Ice, a beer manufactured by Anheuser-Bush with an alcohol content of 5.9%. **(DE 1-2, ¶ 18).** Docher was then placed under arrest by Newman for the offense of disorderly intoxication. **(DE 1-2, ¶ 21).** The arrest of Docher was unlawful, insofar the CVS parking lot was private property and not a "public place" within the meaning of Florida's disorderly intoxication statute. **(DE 1-2, ¶ 22).**

Docher was handcuffed and searched without incident, and seated in the back of a police car with the door open. **(DE 1-2, ¶ 23).** Docher subsequently alighted from the police car and was immediately taken to the ground. **(DE 1-2, ¶ 24).**

While Docher was on the ground and handcuffed behind his back, Newman, Mangrum, and

Robinson repeatedly used punches, strikes, and blows with their elbows, against Docher.  **(DE 1-2, ¶ 25)**.

Newman admits using his elbow to strike Docher in the right side of his head.  **(DE 1-2, ¶ 26)**.  Witness Shannon Randolph (hereinafter "Randolph") observed the deputies "beating the sh–"of out Docher.  Docher was doing nothing, and looked directly at Randolph and was begging or his life, stating, "Please help, they are going to kill me, don't let them kill me."  **(DE 1-2, ¶ 27)**.

Randolph observed that Docher's arms were being bend in a 90 degree angle behind his back, causing Docher to scream in pain.  **(DE 1-2, ¶ 27)**.  During the use of force Docher remained handcuffed, face down, with a large pool of blood collecting by his head.  **(DE 1-2, ¶ 28)**.

Witness Merine Kanhai observed deputies elbowing Docher in the face and subjecting Docher to excessive force.  **(DE 1-2, ¶ 29)**.  EMS arrived on scene.  **(DE 1-2, ¶ 29)**.  At that time, Docher's arms were elevated at a 90 degree angle behind his back, and secured in handcuffs.  **(DE 1-2, ¶ 29)**.  Docher was heard crying out: "Don't let them kill me."  **(DE 1-2, ¶ 29).**

Witness Ariana Kanhai also observed deputies hitting Docher after he was handcuffed.  Docher yelled, "Don't let them kill me," as a deputy continued to strike Docher in the head with his elbow.  **(DE 1-2, ¶ 30)**

Witness Shaun Mahoney (hereinafter "Mahoney") observed Docher's arms raised up behind back where he could not move as deputies continued to strike Docher with their elbows.  Docher was screaming "Don't let them kill me."  **(DE 1-2, ¶ 31)**.

Mahoney was ordered by Deputy Courtemanche to stop recording the use of force (and Docher's pleas for help) on his cell phone, and was directed to leave the area, thereby allowing the use of force against Docher to continue outside public view.  **(DE 1-2, ¶ 31)**.

Witness Zachery Taylor observed Docher in handcuffs.  Deputies were hitting Docher with

elbows as Docher was pleading, "Don't let them kill me."  **(DE 1-2, ¶ 32)**.

Defendant JOSE ROSARIO (hereinafter "Rosario") responded to the incident location due to Docher's injuries, including but not limited to his head laceration. **(DE 1-2, ¶ 33)**. Rosario was an EMT-Paramedic who worked on a regular and routine basis with the deputies on scene. **(DE 1-2, ¶ 34)**.

Rosario was informed by deputies that Docher was intoxicated by alcohol (ETOH). **(DE 1-2, ¶ 35)**. As punishment for Docher's exercise of free speech (i.e., "Don't let them kill me") as Docher's arms were lifted 90 degrees behind his back until his right clavicle fractured, Rosario injected Docher in the buttocks with 4 mg Ativan– the maximum dosage. **(DE 1-2, ¶ 36)**. At the time Rosario administered the maximum dosage of Ativan, there were a significant number of law enforcement officers on scene, such that Docher (who was already handcuffed behind his back) could have been safely restrained in passive restraints. **(DE 1-2, ¶ 37).**

Rosario knew that Ativan was contraindicated with ETOH and potentiates its effects. **(DE 1-2, ¶ 38).** Immediately following the administration of Ativan by Rosario, Docher became unresponsive, stopped breathing, and went into cardiac arrest. **(DE 1-2, ¶ 39).**

Docher was then transported to a hospital. **(DE 1-2, ¶ 40).** At the hospital, Docher was diagnosed with multiple abrasions to the face, cheeks, shoulders, arms, and bilateral legs during the arrest.  **(DE 1-2, ¶ 41).** Docher also suffered a laceration to his right temporal region, bilateral contusions to the buttocks, and bilateral depressed nasal bone fractures. **(DE 1-2, ¶¶ 42-44).**

The use of force also caused extensive soft tissue swelling over his face, a small right mastoid effusion, and a non-displaced fracture of the right clavicle. **(DE 1-2, ¶¶ 45-47).**

Secondary to the cardiac arrest caused by Rosario's administration of the maximum dosage of Ativan, Docher suffered anoxic brain injury, and severe bilateral cerebral edema. **(DE 1-2, ¶¶**

**49-50).** As a result, Docher exists in a persistent vegetative state, and has a substantially diminished life expectancy.  **(DE 1-2, ¶¶ 49-50).**

## MEMORANDUM OF LAW

**1.      The complaint is not an improper shotgun pleading**

First, Rosario seeks dismissal of Counts X, XI, XII, and XX on the basis that the complaint is an improper "shotgun pleading," since the complaint "re-incorporates by reference paragraphs 1-51 into every count."  **(Motion to Dismiss, p. 2, hereinafter cited as "DE 19, p. –").**  Rosario is mistaken.

Put simply, re-incorporating the factual allegations into each claim for relief does not make a complaint a "shotgun pleading."  The term "shotgun pleading" has several different meanings.  In an effort to provide some clarity concerning what constitutes a "shotgun pleading," the panel in Weiland v. Palm Beach County Sheriff's Office "examined more than sixty published decisions" and grouped the term "shotgun pleading" into "four rough types or categories."  Weiland v. Palm Beach County Sheriff's Office, 792 F.3d 1313, 1321 (11th Cir. 2015).  As Judge Carnes explained:

> The most common type—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint.  The next most common type, at least as far as our published opinions on the subject reflect, is a complaint that does not commit the mortal sin of re-alleging all preceding counts but is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.  The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.  Fourth, and finally, there is the relatively rare sin of asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

Id. at 1322-23.

Defendant Rosario seeks dismissal on the basis that the complaint alleges "irrelevant factual

allegations and legal conclusions" in paragraphs 1-51, which is reincorporated by reference into each claim for relief. **(Motion to Dismiss, p. 2, hereinafter cited as "DE 19, p. –").** However, Defendant Rosario fails to provide even a single example of how the complaint is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action," such that it constitutes a "shotgun pleading" as that term was defined in Weiland. Id. at 1322.

The simple truth is that the complaint does exactly what it supposed to do. It identifies the parties. It explains what occurred before, during, and after the time Rosario injected Docher with the maximum dosage of Ativan. It alleges damages– insofar as Docher now lives in a persistent vegetative state; and, it explains how each defendant caused or contributed to causing Docher's injuries. While Rosario may not like the allegations or agree that he is responsible for the fact that Docher now lives in an persistent vegetative state, the allegations could not be more crystal clear– particularly with regards to Rosario

As such, Rosario's motion to dismiss on the basis the complaint constitutes an improper "shotgun pleading" under Fed. R. Civ. P. 8 must be denied.

**2.     The complaint does not improperly plead alternative theories in Count XX**

Next, Rosario alleges that the complaint "improperly pleads alternative theories in Count XX," when in fact, Rule 8 "allows alternative pleading of the same claim, but does not authorize two separate and distinct claims to be plead in the same count." **(Motion to Dismiss, p. 2, hereinafter cited as "DE 19, p. –").**

Rosario's concerns are substantially incomprehensible in light of the allegations in Counts XIX-XX. Count XIX is a negligence claim against Defendant ST. LUCIE COUNTY FIRE DISTRICT under Florida law. **(DE 1-2, ¶ 150-59).** Count XX is a negligence claim against Defendant Rosario, individually under Florida law. **(DE 1-2, ¶¶ 160-69).** In Count XX, Docher

alleges:

> 167. Alternatively to the allegations set forth in Count XIX, if the negligence of Defendant ROSARIO towards Plaintiff was committed by Defendant ROSARIO outside the course and scope of his employment or was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property, then the negligence of Defendant ROSARIO occurred in his individual capacity.

**(DE 1-2, ¶ 167)**. So it is correct that Count XIX and Count XX are plead in the alternative. Pleading in the alternative is entirely permissible (even in the same count). Fed. R. Civ. P. 8(d) provides:

> (2) *Alternative Statements of a Claim or Defense.* A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.
>
> (3) *Inconsistent Claims or Defenses.* A party may state as many separate claims or defenses as it has, regardless of consistency.

Fed. R. Civ. P. 8(d).

For these reasons, Count XX is not improperly plead in the alternative.

**3.   Count XX is not barred by the doctrine of sovereign immunity**

Rosario also seeks dismissal of Count XX on the basis of sovereign immunity, stating:

> In the instant matter, Plaintiff alleges in Count XX that ROSARIO was an employee of SLCFD at the time of the incident. See (Compl. ¶¶ 160, 161). As such, ROSARIO is entitled to sovereign immunity as to Count XX. Plaintiff attempts to plead in the alternative, however, Plaintiff cannot plead that ROSARIO acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property and in the scope of his employment in the same count. This type of pleading is specifically what Section 768.28(9)(a), *Florida Statutes* is designed to guard against.

**(DE 19, p. 9)**. In short, Rosario's suggestion that Rule 8 prohibits alternative claims and allegations is inconsistent with the plain language of the rule itself. The fact that alternative claims are mutually exclusive (and hence, inconsistent) does not make the claims any less alternative to each other within

the meaning of Rule 8.   As the Eleventh Circuit recently reiterated:

> Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of alternative and inconsistent claims." United Techs. Corp. v. Mazer, 556 F.3d 1260, 1273 (11th Cir. 2009). 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure § 1283* (3d ed. 2004) ("In contrast to common law and code practice, the federal rules recognize that inconsistency in the pleadings does not necessarily mean dishonesty, and that frequently a party, after a reasonable inquiry and for proper purposes, must assert contradictory statements when he or she legitimately is in doubt about the factual background of the case or the legal bases that underlie affirmative recovery or defense."). Thus, "[i]t is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability." *Adinolfe v. United Techs. Corp.*, 768 F.3d 1161, 1175 (11th Cir. 2014).

Savage v. Secure First Credit Union, 2016 WL 2997171, at *1 (11th Cir., May 25, 2016).

These same principles apply to the alternative allegations set forth in Count XIX and Count XX.  The complaint alleges that Rosario was informed by deputies that Docher was intoxicated by alcohol (ETOH).  **(DE 1-2, ¶ 35).**  As punishment for Docher's exercise of free speech (i.e., "Don't let them kill me") as Docher's arms were lifted 90 degrees behind his back until his right clavicle fractured, Rosario injected Docher in the buttocks with 4 mg Ativan– the maximum dosage.  **(DE 1-2, ¶ 36)**.   At the time Rosario administered the maximum dosage of Ativan, there were a significant number of law enforcement officers on scene, such that Docher (who was already handcuffed behind his back) could have been safely restrained in passive restraints.  **(DE 1-2, ¶ 37).**

Rosario knew that Ativan was contraindicated with ETOH and potentiates its effects.  **(DE 1-2, ¶ 38).**  Immediately following the administration of Ativan by Rosario, Docher became unresponsive, stopped breathing, and went into cardiac arrest.  **(DE 1-2, ¶ 39).**

Thus, if the allegations are true, a reasonable jury could find that Rosario acted "in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," as alleged in Count XX.  **(DE 1-2,¶ 167)**.  Alternatively, a reasonable jury could find that Rosario was negligent– or even grossly negligent– but that his conduct was not the result

of "bad faith or . . . malicious purpose[,] or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." **(DE 1-2,¶ 167)**.

If Rosario acted in bad faith or in wanton and willful disregard for human rights, Rosario is liable in his individual capacity as alleged in Count XX. If he did not, the ST. LUCIE FIRE DISTRICT is liable in Count XIX. In either case, "the question must be put to the fact-finder whether [the government employee] acted in bad faith, with malicious purpose, or in a manner exhibiting wanton or wilful disregard of human rights, safety, or property." as the Florida Supreme Court explained in McGhee v. Volusia County, 679 So. 2d 729, 733 (Fla. 1996).

The result does not change under Florida Statute § 768.28 simply because a government official is sued individually, or in the alternative. As Magistrate Judge Torres recently observed:

> "[T]he 'nature of Florida Statutes § 768.28 tends to require a plaintiff to plead alternative and inconsistent claims against a government entity and its employees.'" *Valdes v. Miami-Dade Cty*, No. 12-22426-CIV, 2013 WL 5429938 at *18 (S.D. Fla. Sept. 27, 2013) (quoting *Petithomme v. Cty. of Miami-Dade*, No. 11-20525-CIV, 2011 WL 3648622, *3 n.2 (S.D. Fla. Aug. 16, 2011)). In fact, Section 768.28(9)(a) "tends to cause plaintiffs to bring 'mutually exclusive' claims in the alternative against a government and its employees because the state is immune from acts committed with bad faith or malice, while employees must have acted with bad faith or malice to be held personally liable." *Reyes v. City of Miami Beach*, No. 07-22680-CIV, 2007 WL 4199606, *3 (S.D. Fla. Nov. 26, 2007). While [plaintiff] cannot ultimately prevail on both claims, he is not barred from making alternative, inconsistent allegations at the pleading stage.

Garayoa v. Reina,, 2016 WL 3348536, at *2 (S.D. Fla. June 16, 2016).

Against this backdrop, Rosario's asserts that "[t]his type of pleading is specifically what Section § 768.28(90(a), *Florida Statutes*, is designed to guard against." **(DE 19, p. 9).** However, Rosario provides no legal support for this claim, and as Magistrate Judge Torres noted, the tendency is that persons injured by the government are compelled to plead alternative or inconsistent claims against both the state and its employee.

For the foregoing reasons, Count XX is not subject to dismissal on the basis of sovereign immunity.

**4.     The complaint properly alleges the elements of a First Amendment Free Speech Retaliation claim (Count X)**

Rosario seeks dismissal of Count X on the basis that Docher has failed to properly allege a First Amendment Free Speech Retaliation claim. Here, Rosario correctly recites the elements of a First Amendment Free Speech Retaliation claim:

> To state a First Amendment Retaliation claim, the United States Court of Appeals for the Eleventh Circuit has stated that a plaintiff "must establish first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005).

**(DE 19, p. 4).**

From this starting point, Rosario alleges that Count X is subject to dismissal on the basis that Docher's final words before he went into cardiac arrest ("Please help, they are going to kill me, don't let them kill me") was not a "matter of public concern protected by the First Amendment." **(DE 19, p. 5).** Rosario misreads Bennett v. Hendrix.

The analysis of whether a public employee's speech is entitled to First Amendment protection turns on whether the employee speaks (1) as a private citizen; and (2) on a matter of public concern. Where the employee speaks

> on a matter of public concern, "the possibility of a First Amendment claim arises," and the inquiry becomes one of balance, *see Garcetti,* 547 U.S. at 418, 126 S.Ct. at 1958; on the other hand, if the employee spoke as an employee and on matters of personal interest, the First Amendment is not implicated, and "the constitutional inquiry ends with no consideration of the *Pickering* test," *see Boyce,* 510 F.3d at 1343. The First Amendment will step in to safeguard a public employee's right, *as a citizen,* to participate in discussions involving public affairs, but "it [will] not empower [her] to 'constitutionalize the employee grievance.'" *Garcetti,* 547 U.S. at 420, 126 S.Ct. at 1959 (quoting *Connick v. Myers,* 461 U.S. 138, 154, 103 S.Ct.

1684, 1694, 75 L.Ed.2d 708 (1983)).

Alves v. Bd. of Regents of the University System of Georgia, 804 F.3d 1149, 1160 (11th Cir. 2015) (italics in original).

The problem with Rosario's analysis is that Docher was not a public employee. As the Eleventh Circuit explained in Bennett v. Hendrix, none of the standards applicable in the public employee First Amendment-context are relevant to the constitutional protections private persons are afforded to verbally challenge or oppose police conduct. Thus,

> reliance on retaliation cases in the *public employment* context is misplaced, because different interests are at stake there. In the employment context, the required adverse action in a retaliation claim is an "adverse employment action." *See Stavropoulos v. Firestone,* 361 F.3d 610, 616 (11th Cir. 2004), *cert. denied,* 544 U.S. 976, 125 S.Ct. 1850, 161 L.Ed.2d 727 (2005). Plainly, private citizens cannot suffer adverse employment actions at the hands of public officials who are not their employers.

Bennett v. Hendrix, 423 F.3d 1247, 1252 (11th Cir. 2005) (italics added).

Conversely, almost all speech by private persons, with very few limitations, is protected under the First Amendment. As the United States Supreme Court explained, the First Amendment protects "against censorship or punishment, unless shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest." Terminiello v. City of Chicago, 69 S.Ct. 894, 896 (1949). The situation is the same when speech is directed towards police officers, since "[t]he freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." City of Houston, Tex. v. Hill, 107 S.Ct. 2502, 2510 (1987). For these reasons, Docher's speech was protected under the First Amendment.

Secondly, Rosario seeks dismissal of Count X on the basis that he acted without a "retaliatory motive." **(DE 19, p. 5).** The problem with Rosario's analysis is that evidence of "retaliatory

motive" is only required in limited contexts, such as public employee free speech claims, and First Amendment retaliation claims filed by prisoners. Crawford El v. Britton, 118 S.Ct. 1584, 1587 (1998) ("[A]t least in cases brought by prisoners, the plaintiff must adduce clear and convincing evidence of improper motive. . .").

Outside the context of prisoner free speech and public employee cases, the "primary focus" in constitutional claims "is not on any possible animus directed at the plaintiff." Crawford-El v. Britton, 523 U.S. 574, 592 (1998). Instead, "[a] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Bennett v. Hendrix, 423 F.3d 1247, 1254 (11th Cir. 2005). Because a person of ordinary firmness would be deterred from exercising their right to free speech if the penalty was life in a persistent vegetative state, Docher has stated a cause of action under the First Amendment.

Finally, even if proof of "improper motive" were required, the allegations in the complaint are sufficient to state a cause of action against Rosario under the First Amendment. Rosario was an EMT-Paramedic who worked on a regular and routine basis with the deputies on scene. **(DE 1-2, ¶ 34)**. Witness Merine Kanhai observed deputies elbowing Docher in the face and subjecting Docher to excessive force. **(DE 1-2, ¶ 29).** At that point, Rosario arrived on scene. **(DE 1-2, ¶ 29).** Docher's handcuffed arms were elevated at a 90 degree angle behind his back. **(DE 1-2, ¶ 29).** Docher was heard crying out: "Don't let them kill me." **(DE 1-2, ¶ 29).**

Witness Ariana Kanhai also observed deputies hitting Docher after he was handcuffed. Docher yelled, "Don't let them kill me," as a deputy continued to strike Docher in the head with his elbow. **(DE 1-2, ¶ 30)**

Witness Shaun Mahoney (hereinafter "Mahoney") observed Docher's arms raised up behind

back where he could not move as deputies continued to strike Docher with their elbows. Docher was screaming "Don't let them kill me." **(DE 1-2, ¶ 31)**.

Witness Mahoney was ordered by Deputy Courtemanche to stop recording video and audio of the use of force on his cell phone, and was directed to leave the area, thereby allowing the use of force against Docher to continue outside the vantage point of persons who heard Docher screaming: "Don't let them kill me." **(DE 1-2, ¶¶ 29, 31)**.

Witness Zachery Taylor observed Docher in handcuffs. Deputies were hitting Docher with elbows as Docher was pleading, "Don't let them kill me." **(DE 1-2, ¶ 32)**.

It is against this backdrop that Rosario was informed by deputies that Docher was intoxicated by alcohol (ETOH). **(DE 1-2, ¶ 35).** Rosario knew that Ativan (a psychotropic medication) was contraindicated with ETOH and potentiates (i.e., increases) its affect. **(DE 1-2, ¶¶ 38, 106).** Nevertheless, as punishment for Docher's exercise of free speech (i.e., "Don't let them kill me"), Rosario injected Docher in the buttocks with 4 mg Ativan– the maximum dosage. **(DE 1-2, ¶ 36).** Immediately following the administration of Ativan by Rosario, Docher became unresponsive, stopped breathing, and went into cardiac arrest. **(DE 1-2, ¶ 39)**.

At the time Rosario administered the maximum dosage of Ativan, there were a significant number of law enforcement officers on scene, such that Docher (who was already secured in handcuffs behind his back) could have been safely restrained in passive restraints. **(DE 1-2, ¶ 37).**

Accepting the well-plead facts as true, the complaint alleges "a plausible claim for relief." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009). It is *entirely* plausible that Docher–who was already handcuffed and bleeding profusely– was silenced in response to his protected speech, particularly since Docher's speech ("Please help, they are going to kill me, don't let them kill me") and the use of force against a restrained subject attracted the attention of so many concerned bystanders. **(DE**

1-2, ¶ 27).

The truth is that in a perfect world Rosario would not be motivated to silence Docher; but we do not live in a perfect world. Docher was screaming for his life. His concerns were justified. The fact that Rosario administered the maximum dosage of Ativan at that very moment is not speculation. He did, and Docher immediately became unresponsive, stopped breathing, and went into cardiac arrest. **(DE 1-2, ¶ 39).**

At the hospital, Docher was diagnosed with multiple abrasions to the face, cheeks, shoulders, arms, and bilateral legs. **(DE 1-2, ¶ 41).** Docher also suffered a laceration to his right temporal region, bilateral contusions to the buttocks, and bilateral depressed nasal bone fractures. **(DE 1-2, ¶¶ 42-44).**

Because the allegation that Docher was silenced in retaliation for his protected speech is *entirely* plausible, Defendant Rosario's motion to dismiss Count X must be denied.

**5.     The complaint properly alleges the elements of a Fourteenth Amendment Deliberate Indifference claim (Count XII)**

In the Eleventh Circuit, a claim of deliberate indifference to serious medical needs is the same under both the Fourteenth Amendment (for pretrial detainees) and Eighth Amendment (for convicted prisoners). In a deliberate indifference claim, "a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." Carter v. Broward County Sheriff's Department Medical Department, 558 Fed. Appx. 919, 922 (11th Cir. 2014)(unpublished).

As to the first prong, Docher's head injury clearly constitutes a serious medical need, i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Farrow v. West,

320 F.3d 1235, 1243 (11th Cir. 2003). Additionally, the complaint alleges that Rosario's conduct was the proximate cause of Docher's injuries, such that the third prong is satisfied, as well.

As to the second prong, the complaint alleges that Rosario acted with deliberate indifference. Under the Fourteenth Amendment, a deliberate indifference claim "has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999). Medical care is more than negligent where the care is "grossly inadequate." Id. at 1255. In turn, grossly inadequate care includes treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989).

The complaint alleges grossly excessive care, vis-a-vis Rosario's administration of the maximum dosage of Ativan. Rosario acted *after* he was informed by deputies that Docher was intoxicated from alcohol (ETOH). **(DE 1-2, ¶ 35).** Rosario also knew that Ativan was contraindicated with ETOH and potentiates its effects. **(DE 1-2, ¶ 38).** Nevertheless, as punishment for Docher's exercise of free speech (i.e., "Don't let them kill me") and as Docher's arms were lifted 90 degrees behind his back until his right clavicle fractured, Rosario injected Docher in the buttocks with the maximum dosage of Ativan. **(DE 1-2, ¶ 36)**.

This was not a situation where Rosario was working alone without police back-up. Docher was already handcuffed. **(DE 1-2, ¶ 37).** There were a sufficient number of law enforcement officers on scene, such that Docher could have been safely restrained in passive restraints. **(DE 1-2, ¶ 37).** Against this backdrop, and as punishment, Rosario acted with deliberate indifference by administering an excessive dosage of Ativan. **(DE 1-2, ¶ 39).** Docher immediately became unresponsive, stopped breathing, and went into cardiac arrest. **(DE 1-2, ¶ 39).**

Because grossly inadequate treatment includes care that is excessive and intolerable, Docher has properly alleged a Fourteenth Amendment deliberate indifference claim. Waldrop v. Evans, 871 F.2d at 1033.

For the foregoing reasons, Docher has alleged the elements of a Fourteenth Amendment claim for deliberate indifference, and Rosario's motion to dismiss Count XII must be denied.

**WHEREFORE**, Docher requests that the Court enter an Order denying Rosario's Motion to Dismiss **[DE 19]**. Alternatively, Docher requests leave to file a second amended complaint. *See* Friedlander v. Nims, 755 F.2d 810, 813 (11th Cir. 1985).

**DATED** this __14th__ day of November, 2016.

                By: *s/. Hugh L. Koerner*
                   Hugh L. Koerner
                   Florida Bar No.: 716952
                   Email: hlklaw@hughkoerner.com
                   Hugh L. Koerner, P.A.
                   Sheridan Executive Centre
                   3475 Sheridan Street, Suite 208
                   Hollywood, FL 33021
                   Telephone: (954) 522-1235
                   Facsimile:  (954) 522-1176
                   *Co-counsel for Plaintiff*

**CERTIFICATE OF SERVICE**
**Case No.:   16-14413-Civ-ROSENBERG/LYNCH**

**I HEREBY CERTIFY** that this ___14th___ day of November, 2016, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.   I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:   *s/. Hugh L. Koerner*
Hugh L. Koerner

**Service List**

Summer M. Barranco, Esq.
Florida Bar No.: 984663
Email:  summer@purdylaw.com
Purdy Jolly Giuffreda & Barranco, P.A.
2455 E Sunrise Boulevard, Suite 1216
Fort Lauderdale, FL 33304
Phone: (954)-462-3200
Fax: (954)-462-3861
*Attorneys for Defendant Ken J. Mascara,*
*as Sheriff of St. Lucie County, Florida*

Benjamin W. Newman, Esq.
Florida Bar No.: 0011223
Email:  ben.newman@gray-robinson.com
Julie Tyk, Esq.
Florida Bar No.: 84493
Email:  julie.tyk@gray-robinson.com
Gray Robinson, P.A.
301 E. Pine Street, Suite 1400
Orlando, FL 32801-2741
*Attorneys for Defendants Jose Rosario,*
*individually, and the St. Lucie County Fire*
*District*

Darryl L. Lewis, Esq.
FL Bar No.: 818021
Email: lewsiteam@searchlaw.com
Searcy Denney Scarola Barnhart
& Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Phone: 561/686-6300
Fax:  561/383-9585
*Attorney for Plaintiff*

Hugh L. Koerner, Esq.
Florida Bar No.: 716952
Email:  hlklaw@hughkoerner.com
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, FL 33021
Telephone:  (954) 522-1235
Facsimile:   (954) 522-1176
*Co-counsel for Plaintiff*