```
                UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF FLORIDA

            CASE NO. 16-14413-CIV-ROSENBERG/LYNCH
```

TAVARES DOCHER, by and through,
JANICE DOCHER-NEELEY, his mother and legal guardian,

    Plaintiff,

v.

KENNETH J. MASCARA, as Sheriff of St. Lucie County,
DEPUTY CHRISTOPHER NEWMAN,
DEPUTY CLAYLAN MANGRUM,
DEPUTY CALVIN ROBINSON,
DEPUTY WADE COURTEMANCHE;

JOSE ROSARIO, AND
ST. LUCIE COUNTY FIRE DISTRICT,

    Defendants.
_____/

FILED by ___ D.C.

MAR 15 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - FT. PIERCE

## REPORT AND RECOMMENDATION ON DEFENDANT JOSE ROSARIO'S AMENDED MOTION TO DISMISS AMENDED COMPLAINT (DE 19)

**THIS CAUSE** comes before this Court upon an Order of Reference (DE 29) and the above Motion. Having reviewed the Motion, Response, and Reply, this Court recommends as follows:

    1.    The operative pleading before this Court is the Plaintiff's Amended Complaint which begins at page 22 of DE 1, which he brings through his mother because of his incapacitation. He includes in his Amended Complaint four counts against the Defendant Jose Rosario. That Defendant, Mr. Rosario, now moves to dismiss three of those four counts against him. The Defendant seeks to dismiss Count X where the Plaintiff alleges

that the Defendant retaliated against him for his exercise of free speech. The Defendant seeks to dismiss Count XII where the Plaintiff alleges that the Defendant was deliberately indifferent to his medical needs. Thirdly the Defendant seeks to dismiss Count XX where the Plaintiff alleges negligence.

2. Defendant Rosario is an EMT-Paramedic who works for the Co-Defendant St. Lucie County Fire District. Defendant Rosario's interaction with the Plaintiff occurred in the context of the Plaintiff's arrest. To understand better the Plaintiff's allegations against him, it is helpful to review the full timeline of events that precedes Defendant Rosario's arrival to the scene.

3. This Court reviews the facts as the Plaintiff pleads them in his Amended Complaint and accepts them as true for present purposes, as Rule 12, Fed.R.Civ.P., requires this Court to do at this stage of the litigation. Whether the Plaintiff ultimately will prove his allegations or whether the Defendants will prevail on a contrary version of the events are questions beyond the scope of this legal analysis.

4. The event took place in the parking lot of a pharmacy retail store in Port St. Lucie, Florida. The Plaintiff was at the store shopping. He was concerned about his mother, and a store employee helped him to call law enforcement for help.

After placing the call, the Plaintiff completed his purchase, and he exited the store to return to the parking lot.

5. Deputies Newman, Mangrum, and Robinson had responded to the call. The Plaintiff was "seated in the area of the CVS parking lot at the request of the deputies". The Plaintiff was speaking with Deputy Newman out of concern for his mother's safety. The implication is that the Plaintiff was concerned about his mother's mental health. However Deputy Newman "determined that Plaintiff did not fit the criteria for involuntary commitment", as he avers at ¶19. This Court notes that as worded that averment makes him, and not his mother, the focus of Deputy Newman's evaluation. This Court presumes the Plaintiff means his mother.

6. Deputy Newman then arrested the Plaintiff. He arrested the Plaintiff for the offense of disorderly intoxication. During his interaction with Deputy Newman about his mother, the Plaintiff had admitted that he had been drinking. The Plaintiff gives no details of what precipitated his arrest, but the Plaintiff does contend that the arrest was unlawful and without probable cause. The Plaintiff contends that he "never endangered any other person or property." He further contends that the setting was not in a public space. He contends that the parking lot instead is private property.

7.   The Plaintiff says that upon his arrest he was handcuffed, searched, and seated in the patrol car all without incident. He was seated in the back of the patrol car with the car door open. The Plaintiff then "subsequently alighted from the police car and was immediately taken to the ground." The Plaintiff does not say why he took flight. However the Plaintiff does detail how afterward, while he lay on the ground with his arms handcuffed behind his back, Deputies Newman, Mangrum, and Robinson severely beat him.

8.   Four witnesses observed the beating as it was happening. The Plaintiff says that he was calling out to them: "Please help, they are going to kill me, don't let them kill me." He was bleeding from his head, and he was in pain from having his arms bent behind him at a 90° angle. The deputies bent back his arms to such an extent that it fractured his right clavicle. The Plaintiff alleges a wide variety of other physical injuries including multiple abrasions, contusions, fractures, and swelling. The fourth deputy at the scene, Deputy Courtemanche, ordered one of the witnesses to stop filming them and to leave the scene.

9.   It is at this point where Defendant Rosario enters the Plaintiff's allegations. The Plaintiff alleges that Defendant Rosario "responded to the incident location due to Plaintiff's

injuries, including but not limited to his head laceration." The Plaintiff does not specify exactly when Defendant Rosario arrived, but the implication is that he arrived after the above events and after he had been physically injured.

10.   The deputies told Defendant Rosario that "Plaintiff was intoxicated by alcohol (ETOH)." This is an important detail because the Plaintiff's causes of action against Defendant Rosario rest on the averment that Defendant Rosario knew the Plaintiff had alcohol in his system. It is a material detail because the Plaintiff alleges that Defendant Rosario knowingly or negligently gave him a medication that would cause a serious adverse reaction with his blood alcohol.

11.   The Plaintiff alleges that Defendant Rosario injected him with a maximum dosage of Ativan. (This Court takes judicial notice that Ativan, also known as lorazepam, is a sedative.) The Plaintiff pleads no facts about why Defendant Rosario administered the Ativan. There is only the implication that sedation was unnecessary because the deputies already had him under physical restraint. The Plaintiff pleads only that Defendant Rosario acted under an unlawful motive or acted negligently.

12.   His adverse reaction to the Ativan was immediate. "Within moments," the Plaintiff alleges at ¶116, his "speech and

ability to communicate were permanently silenced". He became unresponsive, stopped breathing, and went into cardiac arrest. Then, "[s]econdary to the cardiac arrest", the Plaintiff suffered an anoxic brain injury and severe bilateral cerebral edema. He now lies in a persistent vegetative state.

13. This Court begins with the Defendant's argument that the Plaintiff fails to state a claim of free speech retaliation. The Plaintiff's theory, as he pleads it at Count X, is that Defendant Rosario gave him the Ativan injection knowing that it would inflict harm to him and that the Defendant did so as a means of retaliation for the Plaintiff's exercise of free speech. The act of free speech at issue was when the Plaintiff called out for help---"Please help, they are going to kill me, don't let them kill me"---while the deputies allegedly beat him.

14. The case law cited by the parties show that the context of the free speech retaliation is critical to what legal standard applies. The Eleventh Circuit case law on which the Defendant relies was decided in the context of a public employee's exercise of free speech. Because public employment is not the context there, the legal standards particular to it do not apply here. The Defendant cites to just one Eleventh Circuit opinion that discusses the legal standard for free speech retaliation claim outside the public employment context. That

opinion is Bennett v. Hendrix, 423 F.3d 1247 (11th Cir. 2005). At issue in Bennett was the free speech activity (supporting the passage of a county referendum that affected the county's sheriff) by private citizens (local business owners) and the allegedly adverse actions (a well-organized and extensive campaign of intimidation and harassment) taken against them by the sheriff.

15. The Plaintiff agrees that Bennett sets forth the elements that he must prove to prevail. To prevail on a claim of free speech retaliation, Bennett requires a plaintiff to prove (1) constitutionally protected speech or act; (2) the defendant's retaliatory conduct that adversely affects the protected speech; and (3) a causal relationship between the defendant's retaliatory conduct and the adverse effect on speech. Other than agreeing to Bennett's applicability here and asserting that he acted in the context of a private person (as opposed to a public employee), the Plaintiff offers in his Response no elaboration of his free speech retaliation theory. Such elaboration would be helpful. It is not clear how the Defendant's act translates into unlawful free speech retaliation. This case does not present the kind of civic activity that underlies Bennett. Nor does the Plaintiff's situation stem from the kind of institutional grievance activity

at issue in the prisoner cases. See, e.g., Smith v. Fla. Dept. of Corrs., 375 Fed.Appx. 905 (11th Cir. 2010) and Smith v. Fla. Dept. of Corrs., 713 F.3d 1059 (11th Cir. 2013) (applying Bennett to the context of prisoners who alleges an adverse action by their jailors in response to grievances about terms or conditions of imprisonment).

16. However the issue comes before this Court on the Defendant's Motion to Dismiss, and it is the Defendant's burden to show how the count is defective. The Defendant fails to demonstrate why the Plaintiff's claim is not viable and why it should be dismissed as a matter of law. It is unclear how the Defendant's legal analysis applies to the Plaintiff's free speech retaliation theory, either to this case's facts or under a Rule 12(b)(6) standard of review. The only on point, Eleventh Circuit case law that the Defendant cites is the Bennett case. It, alone, does not show why Count X should be dismissed as a matter of law. The Defendant provides no analysis of on point binding case law for what a plaintiff in this situation and context must prove to state a viable free speech retaliation claim for relief. Without knowing what the specific legal standard is, this Court cannot determine whether the Plaintiff pleads enough facts to support his free speech retaliation claim under Twombly.

17. Next this Court considers the Plaintiff's deliberate indifference claim at Count XII. The Plaintiff recounts his severest physical injuries from his arrest: profuse bleeding from the "right temporal region" of his head, having his arms bent 90° behind his back, and the right clavicle fracture. The Plaintiff also references the Ativan injection. These posed serious medical needs and substantial risks of harm. The Plaintiff argues that in injecting him with the maximum dosage of Ativan, the Defendant acted with deliberate indifference to his serious medical needs. The Plaintiff alleges that the Defendant disregarded the health risks as a means to inflict punishment and to retaliate for his exercise of free speech. The Plaintiff argues that the Defendant thereby violated his "clearly established rights under the Fourteenth Amendment". This allegation implies that the Plaintiff was a pre-trial detainee or an arrestee. The Plaintiff's deliberate indifference to medical need also implies that the Defendant acted as a public officer.

18. The Defendant's argument for why Count XII should be dismissed is limited. The Defendant says that the legal standard for what constitutes the deliberate indifference of a medical need---that is, an act of a sufficient nature to constitute the deprivation of a constitutional right---is quite high. The

Defendant argues that the Plaintiff must prove more than medical malpractice. The Defendant's argument fails because the Plaintiff does indeed plead more than just medical malpractice or negligence. If the Plaintiff fails to plead the correct degree of culpability that the cause of action requires, it would be because the Plaintiff pleads a greater, not lesser, degree of culpability. The degree of culpability that is required to state a claim of deliberate indifference to serious medical needs is a degree of culpability equivalent to recklessness or gross negligence (and thus a degree of culpability worse than medical malpractice or simple negligence). Here, the Plaintiff is not alleging the <u>failure</u> to provide medical care. Instead the Plaintiff is alleging a positive act---the act of administering medical care to cause or that caused harm. The cause of action does not cover acts of purposeful and deliberate harm such as the excessive use of force. <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994). Citing <u>Waldrop v. Evans</u>, 871 F.2d 1030 (11th Cir. 1989), the Plaintiff couches the allegation in terms of grossly excessive or grossly inadequate medical care and therefore within that middle degree of culpability in between negligence and deliberate harm.

19. As with his free speech retaliation claim, the Plaintiff bases his deliberate indifference to medical needs

theory on a fact pattern that differs from the typical fact pattern in the case law. Or at least the Plaintiff bases his deliberate indifference to medical needs theory on a fact pattern that differs from the opinions that the Defendant cites. Of the opinions that the Defendant cites, the one that comes closest to this case is Taylor v. Adams, 221 F.3d 1254 (11th Cir. 2000). Taylor shows the potential that a deliberate indifference to medical needs cause of action can be raised against a paramedic who attends to an arrestee before the arrestee is taken to jail. However Taylor concerned the situation of an alleged failure to provide medical care and not, as here, the provision of medical care that directly caused harm. The Defendant's limited legal analysis is unpersuasive in other ways. The opinions he cites were decided in the summary judgment context, and several also were decided in the qualified immunity context as well, neither of which are at issue here.

20. Consequently the Defendant's argument that Count XII should be dismissed because the Plaintiff pleads only an act of medical malpractice or negligence is unpersuasive. The Plaintiff pleads a degree of culpability greater than that.

21. The Defendant's other argument for dismissal also is unpersuasive. The Defendant argues that the fact that the Plaintiff "was transported to the hospital for care and

treatment" from the scene makes "clear that [he] met any applicable constitutional duty to [the Plaintiff] regarding his access to medical care and Plaintiff is merely disputing the adequacy of the care provided." This second argument is unpersuasive because it misconstrues the nature of the Plaintiff's allegation.

22. The Defendant raises a third argument for dismissal in his Reply. This third argument essentially is that the Plaintiff draws no clear link between his head injury and the Defendant's act of injecting him with Ativan. This Court agrees that Count XII leaves somewhat unclear what role his head injury plays in the Plaintiff's theory of deliberate indifference. However this Court does not find that ambiguity fatal.

23. Thirdly the Defendant seeks to dismiss Count XX, the negligence count raised against him individually. Citing § 768.28, Fla. Stat., the Defendant argues that he enjoys sovereign immunity and cannot be held liable. However, as he explains in his Response, the Plaintiff purposely pleads Count XX in a way to invoke the waiver of that immunity. Simply put, that statute permits the State to be held liable for an employee's tort unless the employee committed that tort in bad faith, malicious purposes, or with wanton and willful disregard. In that situation, or in the situation of an employee who

committed the tort outside the scope of his or her public employment, the State cannot be held liable; a plaintiff must sue the employee directly. That is why, the Plaintiff explains, he pleads his negligence theory of wrongdoing in the alternative. He pleads one version against Defendant Rosario (the employee) at Count XX, and he pleads the other version against the Co-Defendant St. Lucie County Fire District (his State subdivision employer) at Count XIX. Count XX seeks to hold Defendant Rosario (the employee) liable for negligence in the event the fact-finder finds that Defendant Rosario committed that negligence outside the course and scope of his employment or committed it in bad faith, etc. Although this means that this litigation currently is proceeding against him despite the potential of sovereign immunity, the Plaintiff cites case law that permits this form of alternative pleading. See Garayoa v. Reina, 2016 WL 3348536 (S.D.Fla. 2016). Cf. McGhee v. Volusia County, 679 So.2d 729 (Fla. 1996) (leaving it for the fact-finder to answer the question of whether the employee acted in bad faith, etc.)

24. Consequently this Court sees no legal bar that precludes the Plaintiff from pleading alternative theories of negligence against the Defendant and his employer that tracks the way Florida waives sovereign immunity. Nor does this Court

agree with the Defendant that the way the Plaintiff pleads the two alternative negligence theories is too unclear for him to know how to defend himself.

25. Lastly this Court addresses the Defendant's argument that the subject counts should be dismissed as an impermissible shotgun pleading. It is true that the Plaintiff begins each of the three subject counts by re-alleging and adopting by reference ¶¶ 1–51, the Amended Complaint's general background section. That does not necessarily constitute the kind of shotgun pleading style for which dismissal is appropriate. At least it does not in this case. The better practice may be to plead all supporting averments that relate to a count expressly within that count, and the Plaintiff assumes the risk that pleading by general incorporation may cause a supporting averment from the general background section to be overlooked. However the Plaintiff is not relying on pleading by incorporation exclusively. The Plaintiff still pleads each count in its own right and sufficiently so to put the Defendant on notice of what is at issue.

## CONCLUSION

26. The Defendant does not persuasively show why either Count X or XII fail to state an actionable claim for relief. That is not to say that Counts X and XII do not suffer from a

lack of clarity. However the Defendant's limited arguments do not demonstrate how they fail to state claims for relief either as a matter of law or because of an insufficient factual predicate under Twombly. The Defendant does not show how § 768.28, Fla. Stat., sets forth a legal bar to Count XX that compels dismissing it as a matter of law at this stage. Nor does the Defendant point to no pleading defect that warrants dismissal.

**ACCORDINGLY**, this Court recommends to the District Court that the Defendant's Amended Motion to Dismiss Amended Complaint (DE 19) be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case. Failure to file timely objections shall bar the parties from a de novo determination by the District Court of the issues covered in this Report and Recommendation and bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 749-50 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 15th day of March, 2017.

_____
FRANK J. LYNCH, JR.
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: Hon. Robin L. Rosenberg
    Benjamin W. Newman, Esq.
    Hugh L. Koerner, Esq.