UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.:  16-14413-Civ-ROSENBERG/MAYNARD

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

       Plaintiff,

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually,
WADE COURTEMANCHE, individually,
KEN J. MASCARA, as SHERIFF of
ST. LUCIE COUNTY, Florida,
JOSE ROSARIO, individually, and the
ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

       Defendants.
_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE
TO FILE THIRD AMENDED COMPLAINT [DE 70]**

**COMES NOW** Plaintiff, TAVARES DOCHER (hereinafter "DOCHER"), by and through his mother, JANICE DOCHER-NEELEY, and the undersigned attorneys, and submits this Reply in Support of Plaintiffs' Motion for Leave to File a Third Amended Complaint [DE 70]:

**Memorandum of Law**

Docher seeks to add a custom, policy, and practice claim (Count XXII) pursuant to 42 U.S.C. § 1983 against Defendant Ken J. Mascara, as Sheriff of St. Lucie County, Florida (hereinafter "Sheriff").  The Sheriff objects on two grounds.  First, the Sheriff asserts that the proposed amendment was filed 13 days after the deadline and there was no good cause for the delay.  Second,

the Sheriff submits that the proposed amendment would be futile. The Sheriff is mistaken.

1. **There was good cause for the 13-day delay**

The motion seeking leave to amend was filed on August 14, 2017 (thirteen days after the deadline of August 1, 2017). According to the Sheriff there is no good cause for the late filing and the delay prejudices the Sheriff.

Docher initially requested dates for the Rule 30(b)6 depositions on June 5, 2017.[1] The Sheriff notified Docher that Captain Adam Goodner and Lieutenant Michael Sheelar would appear as the Sheriff's official representatives but indicated they would need several weeks to collect documents. Against this backdrop, the earliest available deposition date offered was August 1, 2017. The depositions proceeded at that time.

Therefore, this was not a situation where Docher waited until the day or week before the deadline to amend and demanded deposition dates on short notice. The depositions were scheduled for August 1 because that was the first available date. Thus, the Sheriff's suggestion that there is no good cause for the delay misses the mark. The delay was necessitated by the fact that the Sheriff was unable to provide an earlier deposition date.

The depositions proceeded as scheduled on August 1, 2017; there was over 200 pages of testimony. Docher ordered the transcripts on a 3-day expedited basis. Upon receipt, the depositions were reviewed by members of Docher's legal team and the proposed Count XXII was drafted and filed within 10 days of receipt of the deposition transcripts.

It is axiomatic that Docher has no control over the Sheriff's schedule. The discovery in this

---

[1] An amended notice of taking deposition dated July 13, 2017 was filed by the Sheriff in support of their response to Plaintiff's motion for leave to amend. (DE 73-1). In fact, the *initial* draft of the notice of taking deposition was served on June 8, 2017 and was amended only to accommodate a scheduling change requested by the Sheriff.

case has been significant. There are multiple legal teams. There has been significant travel. Scheduling is difficult, and there is nothing in Docher's power to change that reality. That being said, the Sheriff's suggestion that this is somehow Docher's fault is like Lucy from the Peanuts comic stip blaming Charlie Brown for not kicking the football (after she pulls the ball away at the last moment). For these same reasons, there was good cause for the 13-day delay. Docher should not be punished simply because the Sheriff was unavailable for almost two months.[2]

The proposed Count XXII is based on the Rule 30(b)6 depositions of Captain Adam Goodner and Lieutenant Michael Sheelar. Captain Goodner testified that in the five-year period prior to the incident, there were 649 investigations involving use of force (which the Sheriff defines as force causing "actual or alleged injury"). Goodner explained that in 646 instances (out of 649) the use of force was consistent with the Sheriff's policies and procedures. In other words, there were only three instances where departmental policy was violated. That equates to a finding that the use of force (i.e., force causing actual or alleged injury) was reasonable in excess of 99.5% of the time.

The truth is that Deputy Christopher Newman and the Sheriff did not have a very good year in 2014. Neither did Gregory Hill, Jr. or Tavares Docher.

On January 14, 2014, Newman knocked on the front door of Hill's residence to investigate a noise complaint. When he received no response, Newman continued to the area of the garage door without a search warrant (in violation of the requirements of the Fourth Amendment). Seconds later he shot Gregory Hill dead. Florida v. Jardines, 133 S.Ct. 1409, 1415-16 (explaining that without a

---

[2] As the United States Supreme Court explained in Pioneer Inv. Services Co. v. Brunswick Associates Ltd. Partnership, 113 S.Ct. 1489 (1993), the relevant factors in determining whether there is excusable neglect include "the danger of prejudice . . . , the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." Id. at 1498.

warrant a police officer may "approach [a] home by the front path, knock promptly, wait briefly to be received, and then (absent invitation to linger longer) leave," since that is "'no more than any private citizen might do'"). Id. at 1415-16 (quoting Kentucky v. King, 131 S.Ct. 1849, 1862 (2011)).

On May 11, 2014, Newman responded to the parking lot of a CVS store along with other deputies. Although various reasons have been offered for handcuffing Docher, it is agreed that Docher was handcuffed behind his back without incident. Soon thereafter, Newman is accused of using his elbow to strike Docher in the head (while on videotape). Jose Rosario then injected Docher with 4mg of Ativan. Docher went into cardiac arrest; unlike Hill, Docher survived, but remains in a permanent vegetative state.

At the Rule 30(b)6 depositions on August 1, 2017, Captain Goodner testified:

> Q: [By MR. SCAROLA] Were the results of the investigation into the propriety of the conduct of the deputy sheriff's interacting with Tavares Docher reported to Sheriff Mascara?
> 
> * * *
> 
> A: Yes.
> 
> Q: Was Sheriff Mascara the final decision maker with regard to the conclusion that the conduct of the deputy sheriffs in this case was in accord with the policies, practices, and procedures of the St. Lucie County Sheriff's Office?
> 
> A: Yes.
> 
> Q: And did he make the final determination approving of all of the conduct of the three deputy sheriffs involved in the interaction Tavares Docher?
> 
> * * *
> 
> A: Yes.

(Deposition of Captain Goodner pursuant to Rule 30(b)6, pp. 126-27).

In short, it is apparent that the allegations in the proposed Count XXII are more than plausible. See Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (holding in the antitrust context that a complaint must include only "enough fact to raise a reasonable expectation that

discovery will reveal evidence of illegal agreement"). Undeterred, the Sheriff asserts: "Interestingly, Plaintiff does not attach the depositions to her motion to leave, which were her apparent basis for filing such a late motion." (DE 73, p. 4). However, the Rule 30(b)6 deposition testimony speaks for itself– and speaks volumes.

Beyond any doubt, "[t]he touchstone of the Fourth Amendment is reasonableness." Florida v. Jimeno, 111 S.Ct. 1801 (1991). For this reason, modern police policies and procedures require that police officers use only *reasonable* force, based on the totality of the circumstances. The concern is that in St. Lucie County, the line between *reasonable* and excessive force seemingly includes almost *all* force (i.e., 99.5% of the time). This includes the use of force by Newman towards Hill in January 2014, when in light of Jardines, every reasonable officer in Newman's position would have understood that the warrantless investigation of the property (by leaving the front door to bang on the garage door) was unconstitutional.

Again in May 2014, Newman's use of force towards Docher while he was handcuffed behind his back is indefensible. Nevertheless, in sworn testimony the Sheriff approved the use of force by his subordinates and agreed that, as the final decision maker, the use of force was consistent with the Sheriff's official customs, policies, and practices. In other words, the question is whether the Sheriff's understanding of what constitutes *reasonable* force is objectively reasonable under the Fourth Amendment. The conduct of Newman in 2014 alone suggests that there is something seriously wrong with the implementation of the Sheriff's use of force policy, and that what passes for *reasonable* under the Sheriff's policies is not *objectively* reasonable.

The statistical improbability that use of force is reasonable 99.5% of the time injury is alleged or occurs simply drives home the point. In St. Lucie County, what is considered reasonable use of force under the Sheriff's policies necessarily includes force that is objectively unreasonable under

the Fourth Amendment. There is no other explanation– unless the premise is that St. Lucie County has one of the all-time great police departments. At least insofar as Gregory Hill, Jr., and Docher are concerned, they are not so great.

Nor is the delay of 13 days prejudicial. While hindsight is always 20/20, the simple truth is that Docher's attorneys cannot fulfill their private attorney general responsibilities if the measure (in complicated cases such as this) is only speed. If a custom, policy, and practice claim is prematurely filed, it will not survive a motion to dismiss. Discovery is generally necessary, since it is not the usual case for an attorney to have access to the information necessary to support a custom, policy, and practice claim from day one. Rule 30(b)6 depositions require the filing of a lawsuit. The Sheriff, like most other public agencies, isn't simply going to confess. It is always a fight, albeit a just and proper fight– since any other result would leave the police to police themselves. In a Nation where life and liberty are constitutionally protected, there must be a workable mechanism to protect and defend those rights. When it comes to the police, § 1983 is that mechanism.

In truth, if the proposed amendment had been filed 13 days earlier the Sheriff would still be claiming prejudice (and still asserting that they need more time to hire experts). So be it. This case is littered with experts. Docher has no objection to an extension of time so the Sheriff may hire an additional expert. It will not change the Sheriff's policies or practices, or the Sheriff's approval of his subordinates conduct towards Docher.[3]

---

[3]

The Sheriff's suggestion that by "agreement of counsel" that parties have continued the Court's trial date is, of course, a misnomer. (DE 73, p. 11). Docher fully understands that the Court controls its own calendar. The fact that one party signals to another that they have no objection to an extension of time or a proposed change in the Court's schedule by no means suggests that the parties are under the impression that they control the Court's deadlines or calendar. Put simply, they do not. On the other hand, even in an adversarial system, if a party legitimately needs more time,

**2.     The proposed amendment is not futile.**

Next, the Sheriff suggests leave to amend should be denied because the proposed amendment is futile. Specifically, the Sheriff asserts that Docher's § 1983 claim fails because it does not allege that the Sheriff was aware of the deputies' "impermissible motive" at the time of the incident. According to the Sheriff,

> [r]atification is in most respects the weakest theory of Monell liability, given the stringent requirements set forth by the United States Supreme Court in Board v. Brown, requiring evidence of a direct causal connection, based upon intentional conduct of the government entity. Therefore, the law requires proof that the Sheriff, through his administration, was aware of, and agreed with, the allegedly impermissible motive that Plaintiff claims the Defendants Newman, Mangrum and Robinson had to violate Tavares Docher's constitutional rights as alleged by Plaintiff. Plaintiff proposed third amended complaint includes no such allegations that offer support for such a theory.

(DE 73, p. 10). Put simply, the Sheriff's argument boarders on the nonsensical.

Since the United States Supreme Court's decision in Graham v. Connor, 109 S.Ct. 1865 (1989), it has been clearly established that the "[t]he Fourth Amendment inquiry is one of 'objective reasonableness' under the circumstances, and subjective concepts . . . have no proper place in that inquiry." Id. at 1873. In other words, motive– or "impermissible motive"– has no place under the Fourth Amendment. As the United States Supreme Court explained:

> As in other Fourth Amendment contexts . . . , the "reasonableness" inquiry in an excessive force case is an objective one: the question is whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation. See *Scott v. United States,* 436 U.S. 128, 137–139, 98 S.Ct. 1717, 1723–1724, 56 L.Ed.2d 168 (1978); see also *Terry v. Ohio, supra,* 392 U.S., at 21, 88 S.Ct., at 1879 (in analyzing the reasonableness of a particular search or seizure, "it is imperative that the facts be judged against an objective standard"). An officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force

---

it is reasonable and appropriate to agree to the relief requested, subject always to the Court's approval.

>   constitutional. See *Scott v. United States, supra,* 436 U.S., at 138, 98 S.Ct., at 1723, citing *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

Graham v. Connor, 109 S.Ct. at 1872.

The Sheriff's reliance on Board of County Commissioners of Bryan County, Oklahoma v. Brown, 117 S.Ct. 1382, 1388–89 (1997) is also misplaced. According to the Sheriff, "the United States Supreme Court in Board v. Brown, requir[ed] evidence of a direct causal connection, based upon *intentional* conduct of the government entity." (DE 73, p. 10) (italics added). Of course, that is not what the United States Supreme Court concluded.

>   Section 1983 itself "contains no state-of-mind requirement independent of that necessary to state a violation" of the underlying federal right. *Daniels v. Williams,* 474 U.S. 327, 330, 106 S.Ct. 662, 664, 88 L.Ed.2d 662 (1986). In any § 1983 suit . . . , the plaintiff must establish the state of mind required to prove the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decisionmaker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains.

Id. at 1388–89. Obviously, since Graham v. Connor makes clear that there is no state-of-mind requirement in excessive force claims under the Fourth Amendment, Board of County Commissioners of Bryan County, Oklahoma v. Brown stands for proposition that because the Sheriff's policy was itself the moving force behind the injury–the Sheriff as the final decision maker has liability under Section 1983 by approving or ratifying his subordinates' conduct (vis-a-vis the Sheriff's official policy)

In the final analysis, "*Monell* is a case about responsibility." Pembaur v. City of Cincinnati, 106 S.Ct. 1292, 1297 (1986). One of the ways that a government may be held responsible for the constitutional torts of its employees is by approving or ratifying their employees' conduct.

It is well understood that "a municipality can be held liable 'on the basis of ratification when

a subordinate public official makes an unconstitutional decision and when that decision is then adopted by someone who does have final policymaking authority.' Hoefling v. City of Miami, 811 F.3d 1271, 1279 (11th Cir. 2016) (quoting Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002)). As the United States Supreme Court explained in City of St. Louis v. Praprotnik, 108 S.Ct. 915, 926 (1988),

> when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Id. at 926 (italics in original).

From a temporal standpoint, Praprotnik could not be more clear. It speaks to situations where subordinates' actions are subject to review by a final decision maker. It does not require, as suggested, that the final policy maker approve or ratify a specific use of force *before* the force occurs. That would be impossible in most instances, since deputies generally do not have the luxury of contacting the Sheriff on their phone or radio whenever use of force is contemplated; put simply, such a requirement would render *Monell* a nullity vis-a-vis the Fourth Amendment.

As the Eleventh Circuit explained in Fundiller v. City of Cooper City, 777 F.2d 1436, 1443 (11th Cir. 1985), official capacity claims are actionable under § 1983 where the conduct is ratified by the final decision maker. That approval or ratification may be direct (as in the case *sub judice*) or indirect (as in Fundiller). As the Court explained in Fundiller,

> [t]he complaint states that the City of Cooper City has a custom of allowing the use of excessive force. If established, this allegation provides the requisite fault on the part of the City, as a persistent failure to take disciplinary action against officers can give rise to the inference that a municipality has ratified conduct, thereby establishing a "custom" within the meaning of *Monell. Batista v. Rodriquez,* 702 F.2d 393, 397 (2nd Cir. 1983). In addition, Fundiller's allegation would provide the causal link between the challenged conduct and the City's policy, because Officer Guarnaccia

would have been acting in accordance with the policy of allowing or encouraging excessive force. *See Acoff v. Abston,* 762 F.2d 1543, 1548 (11th Cir. 1985). Hence we reverse the grant of the motion to dismiss in favor of the City.

Id. at 1443.

Whether directly or indirectly, the Sheriff of St. Lucie County approved and ratified the unlawful conduct of his subordinates towards Docher. At the Rule 30(b)6 depositions on August 1, 2017, Captain Goodner explained:

> Q: [By MR. SCAROLA] Were the results of the investigation into the propriety of the conduct of the deputy sheriff's interacting with Tavares Docher reported to Sheriff Mascara?
>
> * * *
>
> A: Yes.
>
> Q: Was Sheriff Mascara the final decision maker with regard to the conclusion that the conduct of the deputy sheriffs in this case was in accord with the policies, practices, and procedures of the St. Lucie County Sheriff's Office?
>
> A: Yes.
>
> Q: And did he make the final determination approving of all of the conduct of the three deputy sheriffs involved in the interaction Tavares Docher?
>
> * * *
>
> A: Yes.

(Deposition of Captain Goodner pursuant to Rule 30(b)6, pp. 126-27). For these reasons, Count XXII is not futile, and leave to amend should be granted.

**WHEREFORE**, Plaintiff requests that the Court enter an Order finding good cause and granting leave to amend.

**DATED** this __2nd__ day of September, 2017.

/s/ DARRYL L. LEWIS
Darryl L. Lewis
Florida Bar No.: 818021
Attorney E-Mail(s): dll@searcylaw.com  and
axs@searcylaw.com
Primary E-Mail:  lewisteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax: (561) 383-9485
Attorney for Plaintiff(s)

By: *s/. Hugh L. Koerner*
Hugh L. Koerner
Florida Bar No.: 716952
Email: hlklaw@hughkoerner.com
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, FL 33021
Telephone:  (954) 522-1235
Facsimile:   (954) 522-1176
*Co-counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**
**Case No.:   16-14413-Civ-ROSENBERG/MAYNARD**

**I HEREBY CERTIFY** that this   2nd   day of September, 2017, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: *s/. Hugh L. Koerner*
Hugh L. Koerner

**Service List**

Summer M. Barranco, Esq.
Florida Bar No.: 984663
Email: summer@purdylaw.com
Purdy Jolly Giuffreda & Barranco, P.A.
2455 E Sunrise Boulevard, Suite 1216
Fort Lauderdale, FL 33304
Phone: (954)-462-3200
Fax: (954)-462-3861
*Attorneys for Defendants Newman, Mangrum, Robinson, Courtemanche, and Ken J. Mascara, as Sheriff of St. Lucie County, Florida*

Darryl L. Lewis, Esq.
FL Bar No.: 818021
Email: lewsiteam@searchlaw.com
Searcy Denney Scarola Barnhart
& Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, FL 33409
Phone: 561/686-6300
Fax:   561/383-9585
*Attorney for Plaintiff*

Benjamin W. Newman, Esq.
Florida Bar No.: 0011223
Email: ben.newman@gray-robinson.com
Julie Tyk, Esq.
Florida Bar No.: 84493
Email: julie.tyk@gray-robinson.com
Gray Robinson, P.A.
301 E. Pine Street, Suite 1400
Orlando, FL 32801-2741
*Attorneys for Defendants Jose Rosario, individually, and the St. Lucie County Fire District*

Hugh L. Koerner, Esq.
Florida Bar No.: 716952
Email: hlklaw@hughkoerner.com
Hugh L. Koerner, P.A.
Sheridan Executive Centre
3475 Sheridan Street, Suite 208
Hollywood, FL 33021
Telephone:  (954) 522-1235
Facsimile:   (954) 522-1176
*Co-counsel for Plaintiff*