UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

        Plaintiff,

vs.

CHRISTOPHER NEWMAN, individually,
et al.

        Defendants.
_____/

CASE NO.: 2:16cv14413

### DEFENDANT NEWMAN'S MOTION FOR SUMMARY JUDGMENT
### (AND MEMORANDUM OF LAW)

The Defendant, CHRISTOPHER NEWMAN, individually, through his undersigned attorneys, pursuant to Rule 56 of the Federal Rules of Civil Procedure files this his Motion for Summary Judgment[1] (and Memorandum of Law), and in support thereof would state as follows:

1. This federal civil rights lawsuit stems from an incident which occurred in the early evening of May 11, 2014. As a result of the incident, Plaintiff brings multiple federal and state law claims against the various defendants.

2. At issue here for purposes of this Motion are: Count I-False Arrest pursuant to 42 U.S.C. §1983; Count II-Excessive Force pursuant to 42 U.S.C. §1983; Count VI-Failure to Intervene pursuant to 42 U.S.C. §1983; Count XIV-State Law False Arrest; and Count XVI-State Law Battery/Unnecessary Force Claim.

3. For the reasons outlined below, Defendant Newman is entitled to summary judgment.

---

[1] Pursuant to this Court's Order [DE 11], the Defendants have filed contemporaneously herewith a separate Statement of Material Facts in support of their Motions for Summary Judgment.

1

WHEREFORE, it is respectfully requested, that this Honorable Court grant the Defendant Newman's Motion for Summary Judgment.

FURTHER, and in support of this Motion, the Defendant Newman would refer this Honorable Court to the Memorandum of Law incorporated herein and by reference made a part hereof.

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW

The standard of review which must be applied by the Court is contained in Rule 56(a) of the Federal Rules of Civil Procedure which reads in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, in this case, the Plaintiffs. The plaintiff is then required to come forward with sufficient evidence to rebut the showing with affidavits or other relevant and admissible evidence. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. See Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). See also Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (Plaintiff must produce specific facts showing that there is a genuine issue for trial.).

### II. ARGUMENT AND CITATIONS OF AUTHORITY

#### STATEMENT OF LAW REGARDING PROBABLE CAUSE

In a Section 1983 claim for false arrest, the plaintiff has the burden of demonstrating the

complete absence of probable cause. Rankin v. Evans, 133 F.3d 1425, 1436 (11th Cir. 1998). The fact that a criminal defendant is subsequently acquitted or that charges are dropped is of no consequence in determining the validity of the arrest itself. Marx v. Gumbinner, 905 F.2d 1503, 1507 (11th Cir. 1990). The existence of probable cause constitutes an absolute bar to a Section 1983 action for false arrest. Id. at 1505. When the facts are not in dispute, the issue of whether probable cause exists is purely a question of law. Id. at 1506. The issue of probable cause may thus be properly resolved by way of summary judgment. Id. In so doing, a court must determine whether an arrest is objectively reasonable under the totality of the circumstances (subjectively) known to the arresting officer. Rankin, supra. A police officer is generally entitled to rely on a victim's criminal complaint as support for probable cause. Rankin, 133 F.3d at 1441.

Probable cause does not require overwhelmingly convincing evidence, but only "reasonably trustworthy information." Marx., at 1506 (citing Beck v. Ohio, 379 U.S. 89, 91, 85 S. Ct. 223, 225-26 (1964)). Probable cause must be judged not with a clinical detachment, but with a common sense view to the realities of normal life. Id. In determining whether probable cause exists for a given arrest, the Eleventh Circuit has stated:

> [T]he "reasonable cause" necessary to support an arrest cannot demand the same strictness of proof as the accused's guilt upon a trial, unless the powers of peace officers are to be so cut down that they cannot possibly perform their duties.
>
> Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be made for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability. In dealing with probable cause, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable men, not legal technicians, act.

Marx, 905 F.2d at 1507, quoting U.S. v. Heitner, 149 F.2d 105, 106 (2d Cir. 1945) and Brinegar

v. U.S., 338 U.S. 160, 175-76, 69 S.Ct. 1302, 1310-11.

When making a probable cause determination, it is important to remember that the determination is based upon the totality of the circumstances known to the arresting officer at the time of the arrest. See Rankin, supra. It is most certainly the case that some factual conclusions by reasonable officers are subject to challenge by attorneys sufficient to create a reasonable doubt in the minds of a juror, but are not sufficient to dispel probable cause. See Rankin and Marx supra.; Lee v. Geiger, 419 So.2d 717 (Fla. 1st DCA 1982) (A police officer does not have to conduct a perfect investigation); Doorbal v. State, 837 So.2d 940 (Fla. 2003); and State v. Catt, 839 So.2d 757 (Fla. 2nd DCA 2003). Consequently, the facts should **not** be viewed as known to the Plaintiff or as known to the Court later in the case. See Jones v. Cannon, 174 F.3d 1271, 1283 and 1283, n.4 (11th Cir. 1999).

Finally, under federal and state law, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002). Accordingly, so long as probable cause existed to detain the Plaintiff for any reason, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges. Id.

## STATEMENT OF LAW CONCERNING EXCESSIVE FORCE

The United States Supreme Court has held that an excessive force claim against a law enforcement officer must be analyzed under the Fourth Amendment and its reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Crenshaw v. Lister, 556 F.3d 1283 (11th Cir. 2009). The reasonableness inquiry in a Fourth Amendment excessive force case is an objective one. The question is whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation.

4

Graham, 490 U.S. at 397. The "reasonableness" inquiry requires courts to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Reasonableness depends on all circumstances relevant to an officer's decision to use force, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight. See Id; see also, Crenshaw, 556 F.3d at 1290. Furthermore, reasonableness must account for the fact that police officers are sometimes forced to make split-second judgments under circumstances that are tense and rapidly evolving. Graham, 490 U.S. at 397. What the officer could or should have done in hindsight is not the appropriate inquiry. Rather, "[t]he sole inquiry is whether the officer's actions, as taken, were objectively reasonable under all the circumstances. See Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009).

## STATEMENT OF LAW REGARDING QUALIFIED IMMUNITY

In order for Plaintiff to recover against the Defendant Newman in his individual capacity, Plaintiff must demonstrate that the Defendant Newman violated Plaintiff's constitutional rights and is not entitled to qualified immunity. The qualified immunity defense protects governmental officials from suit in their individual capacities for acts based on the use of their discretion. See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Qualified immunity affords broad protection to "all but the plainly incompetent or those who knowingly violate the law." See Malley v. Briggs, 475 U.S. 335, 341 (1986); Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990); Tillman v. Coley, 886 F.2d 317 (11th Cir. 1989).

The Supreme Court of the United States has indicated that:

> Such officials as police officers or prison wardens, to say nothing
> of higher level officials who enjoy only qualified immunity
> routinely make close decisions in the exercise of the broad
> authority that necessarily is delegated to them. These officials are
> subject to a plethora of rules, often so voluminous, ambiguous, and
> contradictory, and in such flux that officials can comply with them
> only selectively . . . . In these circumstances, officials should not
> err always on the side of caution.

Davis v. Scherer, 468 U.S. 183, 196 (1986).

In Harlow, supra, the United States Supreme Court applied an objective test regarding government officials performing discretionary duties, and specifically noted:

> Government officials performing discretionary functions generally are
> shielded from liability for civil damages insofar as their conduct does not
> violate clearly established statutory or constitutional rights of which a
> reasonable person would have known.

This objective test clearly gives trial courts greater flexibility in disposing of claims on summary judgment. See Harlow, supra, at 818.

Qualified immunity presents a question of law for the court regardless of which stage of the procedure, if a determination must be made. See Dartland v. Metropolitan Dade County, 866 F.2d 1321 (11th Cir. 1989). The burden of proof on the defense of qualified immunity is allocated as follows:

First, it is the obligation of the defendant who claims that his or her action is qualifiedly immune to demonstrate that his or her actions were taken within the scope of his or her discretionary authority. Here there is no dispute that the Defendant Newman was acting as a deputy sheriff in any contact he had with the Plaintiff. (See Second Am. Compl. pg. 2, ¶5). Therefore the Defendant Newman was performing discretionary functions. When the initial burden of the defendant public official has been met, it is then incumbent upon the plaintiff to demonstrate that the defendant public official acted in bad faith, i.e. "violated clearly established

constitutional law." See Brosseau v. Haugen, 543 U.S. 194 (2004). The United States Supreme Court has recently reiterated the fact that: "'Clearly established law' should not be defined at a high level of generality...the clearly established law must be particularized to the facts of the case." See White v. Pauly, 137 S.Ct. 548, 552 (internal citations omitted).[2]

Furthermore, the resolution of the qualified immunity issue in the Eleventh Circuit is controlled by the state of the law as found in the opinions issued by the following courts: the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court. See Vineyard v. Wilson, 311 F.3d 1340, 1351 n.22 (11th Cir. 2002). In addition, the qualified immunity analysis is dependent upon the state of the law **at the time** the officer allegedly violated the decedent's constitutional rights; in this case, May 11, 2014. Consequently, opinions of the courts decided **after** the date of the alleged constitutional violation do not clearly establish the law as to that particular constitutional issue for the purpose of denying qualified immunity. However, such opinions are helpful in determining whether a particular defendant is entitled to qualified immunity.

In the context of a claim for excessive force, qualified immunity applies unless the circumstances would inevitably lead a reasonable officer in the defendant's position to conclude that the force used was unlawful. Gold v. City of Miami, 121 F.3d 1442 (11th Cir. 1997), cert. denied, 119 S.Ct. 165 (1998); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993). Furthermore, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, not by hindsight. Rodriguez v. Farrell, 280 F.3d 1341 (11th

---

[2]This court is authorized to resolve the qualified immunity question first and is no longer required to first determine whether an actual constitutional violation occurred. See Pearson v. Callahan, 555 U.S. 223 (2009).

Cir. 2002), cert. denied, 123 S.Ct. 1482 (2003); McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003).

The Supreme Court of the United States has provided specific principles of law to follow when addressing the defense of qualified immunity in the context of a Fourth Amendment use of force claim. See Brosseau v. Haugen, 543 U.S. 194 (2004). The Court in Brosseau addressed the application of the Fourth Amendment as it would relate to the use of force. The Court noted that:

> it is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. . . .there is no doubt that Graham v. Connor, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. Yet that is not enough. Rather, we emphasized in Anderson v. Creighton that the right the official is alleged to have violated must have been clearly established in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted (internal cites and quotes omitted).

Consequently, it is clear that in the Fourth Amendment use of force context the qualified immunity question must be answered by focusing on clearly established case law that existed before the date of the conduct in question that is specific in the context of the force used in the case in question which requires a more particularized set of factual circumstances. This principle was recently reiterated by the Supreme Court in response to a number of qualified immunity cases which resulted in reversals where lower courts had improperly lowered the Plaintiff's burden by relying on generalized statements of law. See White, 137 S.Ct. at 552. ("Today it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a great level of generality"). (internal quotations omitted). Thus, in the Fourth

Amendment arena, absent an obvious violation of the Constitution, factually specific law must be produced by the Plaintiff to overcome the defense of qualified immunity.

### APPLICATION OF LAW TO ANALYSIS OF COUNT I: VIOLATION OF § 42 U.S.C. 1983 AGAINST NEWMAN FOR FALSE ARREST

It is anticipated that the Plaintiff may attempt to create a dispute regarding Deputy Newman's subjective motivations for initially detaining the Plaintiff prior to the Plaintiff fleeing the back of Deputy Newman's patrol vehicle. Regardless of any alleged dispute on this issue, it is immaterial to this Court's analysis for two reasons. First, as noted above, a law enforcement officer's subjective intentions are not the proper inquiry in a false arrest claim. Second, Plaintiff's initial detention, whether effectuated pursuant to the Baker Act or for a criminal violation of Florida's disorderly intoxication statute, was supported by, at a minimum, arguable probable cause and Plaintiff's subsequent actions of elbowing Deputy Newman while fleeing from the back of Deputy Newman's patrol car while handcuffed unquestionably established probable cause for multiple crimes.

By its terms, Florida's disorderly intoxication statute provides two distinct avenues for violating the law: (1) where a person is intoxicated and endangers the safety of another person or property; and (2) where a person is intoxicated in a public place and causes a disturbance. Royster v. Florida, 643 2d 61, 64 (Fla. 1st DCA 1994).

Florida's involuntary commitment statute, commonly referred to as the Baker Act, allows a person to be involuntarily placed in a treatment facility when: (1) he is mentally ill and because of the mental illness he (a) is unable to determine for himself whether placement is necessary and (b) there is a substantial likelihood that in the near future he or she will inflict serious bodily harm on himself or another person, as evidenced by recent behavior. See Fla Stat. §394.467 (2014). In this case, Deputies Newman, Mangrum and Robinson responded to a CVS store in Port St.

Lucie, Florida in response to a 911 hang-up. (Statement of Material Facts,¶ 7). Upon their arrival, they encountered the Plaintiff who was holding a screwdriver "to protect himself from Arabs," admitted he had been drinking, declared he was a registered sex offender, and that he was being followed by black vans and helicopters. (Statement of Material Facts,¶s 10, 16, 17). They also were informed by the CVS manager that Docher was scaring customers. (Statement of Material Facts,¶ 13).

Based on the totality of the circumstances including the Plaintiff's bizarre comments and actions combined with his admission that he had been drinking alcohol, at a minimum, gave the deputies reasonable suspicion to detain the Plaintiff to determine whether the crime of disorderly intoxication had been committed, Illinois v. Wardlow, 528 U.S. 119, 120 (2000), or whether he fit the criteria of Florida's Baker Act. See Cochrane v. Havey, No. 04-CV-475-RH/WCS, 2005 WL 2176874 (N.D. Fla. 2005) (holding that the Fourth Amendment, which applies to the seizure of a person for the purpose of an examination, neither adds nor detracts from Florida's statutory standards). Further, the decision to handcuff the Plaintiff at that time was constitutionally permissible in light of the Plaintiff's behavior. United States v. Hensley, 105 S.Ct. 675, 684 (1985) (holding that law enforcement officers may take reasonable action, based upon the circumstances, to protect themselves during these encounters, or to maintain the status quo). As noted above, when the deputies first encountered the Plaintiff, he was holding a screwdriver to defend himself from the "Arabs." See United States v. Bankston, 121 F.3d 1411, 1412 n.1 (11th Cir. 1997) (noting that even a pen has the potential to be a "dangerous weapon"). Although the Plaintiff had voluntarily dropped the screwdriver when requested by the deputies, the Plaintiff had not been thoroughly searched prior to being handcuffed. Thus the decision to handcuff the Plaintiff to maintain the status quo was reasonable. Hensley, 105 S.Ct. at 684.

If the matter had ended there with the Plaintiff being escorted to Deputy Newman's car without further incident, the question of whether Plaintiff's detention was lawful might present a closer question. The incident did not end there, however. After the Plaintiff was placed in the back of the patrol car, suddenly and without warning, he bolted from the back of the Defendant Newman's car, elbowed Deputy Newman in the face while attempting to bite the deputies, and ran, while handcuffed, towards a heavily traveled road. (Statement of Material Facts,¶s 19, 21). Fla. Stat. § 843.02 (2014) provides, "[w]hoever shall resist, obstruct, or oppose any officer...in the lawful execution of any legal duty...shall be guilty of a misdemeanor of the first degree." A person commits the crime of resisting or obstructing an officer when he "flees while knowing the officer's intent to detain him and the officer is justified in stopping and detaining him." Slydell v. State, 792 So.2d 667, 671 (Fla. 4th DCA 2001). Moreover, Fla. Stat. §784.07 (2014) makes it a third degree felony for knowingly committing a battery on a law enforcement officer. Regardless of whether the Plaintiff could have formed the necessary mens rea to convict the Plaintiff of any of the above mentioned offenses based on the Plaintiff's bizarre actions and statements (which is evidence of the objective reasonableness of the Plaintiff's detention pursuant to the Baker Act), the fact that Plaintiff elbowed Deputy Newman while fleeing from the back of Deputy Newman's police car after being handcuffed established probable cause for the offense of obstruction and battery on a law enforcement officer. While the Plaintiff may point to after the fact determinations made by detectives who were not present during any interactions with the Plaintiff, the deputies' subjective motivations are irrelevant, as argued above. See also Rusher v. Parker, 599 F.3d 1263, 1266 (11th Cir. 2010) (holding that the standard for evaluating the lawfulness is an objective one and does not include an inquiry into the officer's subjective intent or beliefs).

Under these circumstances, Defendant Newman is at a minimum entitled to qualified immunity on Plaintiff's §1983 false arrest claim since a reasonable officer in Defendant Newman's position could have determined that probable cause existed for Plaintiff's detention. See Montoute v. Carr, 114 F.3d 181, 184 (11th Cir. 1997) ("[w]e have repeatedly held that because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed"). See also Scott v. Baldwin, 720 F.3d 1034, 1036 (8th Cir. 2013) (qualified immunity protects law enforcement officers from liability "for bad guesses in grey areas").

In evaluating the propriety of Defendant Newman's actions, it is not the Court's role "to sit in judgment to determine whether an officer made the best or a good or even a bad decision in the manner of carrying out an arrest." Buckley v. Haddock, 292 Fed.Appx. 791, 794 (11th Cir. 2008). The Constitution demands reasonableness. Defendant Newman's actions to detain Docher were reasonable and did not violate the Constitution. On the contrary, Defendant Newman respectfully submits that it would have been *unreasonable to not detain* the Plaintiff based on his erratic behavior.

**APPLICATION OF LAW TO ANALYSIS OF COUNT II: EXCESSIVE FORCE**

The case at bar presents a factual scenario which is becoming increasingly common in this country: subject is acting bizarrely, law enforcement respond, law enforcement officers attempt to confront subject acting bizarrely, a struggle ensues and the subject unexpectedly suffers some combination of cardiac and/or respiratory arrest. See Gregory v. Cnty. of Maui, 523 F.3d 1103 (9th Cir. 2008); Mann v. Taser International, Inc., 588 F.3d 1291 (11th Cir. 2009); Roell v. Hamilton County, Ohio/Hamilton Bd. Of County Commissioners, 16-4045, 2017 WL

12

3864618 (6th Cir. 2017); <u>McCue v. City of Bangor, Maine</u>, 838 F.3d 55 (1st Cir. 2016); <u>Waters v. Coleman</u>, 632 Fed. Appx. 431 (10th Cir. 2015).

As argued above, in order to divest Deputy Newman of the protections afforded him by qualified immunity, it is the Plaintiff's burden to present factually similar case law which preceded the subject incident sufficient to give Deputy Newman fair notice that his actions were unlawful. This the Plaintiff cannot do. However, "a necessary determination to the determination of whether the constitutional right is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." <u>Seigert v. Galley</u>, 500 U.S. 226, 232 (1991). Because Deputy Newman's actions were reasonable, Plaintiff cannot establish a constitutional violation.

As noted above, in evaluating whether the force used to effectuate a seizure was objectively reasonable and therefore lawful, the court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 397. Just as Plaintiff's physical resistance provided probable cause for his arrest, it also justified the degree of force which Deputy Newman used to subdue the Plaintiff.

After handcuffing the Plaintiff without incident, Deputy Newman escorted the Plaintiff to the back of his patrol car. (Statement of Material Facts,¶ 18). Once Docher reached the patrol car, he sat in the back seat again without incident but when it came time for Docher to place his feet inside the car, Docher instead pushed his way out of the car while attempting to bite the deputies and elbowing Deputy Newman in the eye. (Statement of Material Facts,¶ 19). <u>See</u> <u>State v. Granner</u>, 661 So.2d 89, 90 (Fla. 5th DCA 1995). After Docher fled the back of the patrol car

13

while handcuffed, Docher was able to run a short distance away from Deputy Newman's patrol car towards Prima Vista Boulevard before the deputies were able to take him to the ground. (Statement of Material Facts,¶ 21). Once Docher was on the ground Deputies Newman and Mangrum attempted to control Docher's upper body while Deputy Robinson was positioned at Docher's legs trying to control Docher's lower body. (Statement of Material Facts,¶ 22). As the Deputies tried to restrain Docher, Docher was able to slip one of his cuffs up to his elbow permitting him to slip one of his arms underneath him. (Statement of Material Facts,¶ 23). With his arm underneath him, Docher attempted to push himself off the ground while the deputies used their weight to keep him on the ground. (Statement of Material Facts,¶ 24). As Deputies Newman and Mangrum attempted to control Docher's head, Docher bit Deputy Newman in the finger and attempted to bite Deputy Mangrum's fingers, (Statement of Material Facts,¶ 25), again committing the crime of battery on a law enforcement officer. To combat Docher's bites, Deputy Newman delivered a quick elbow strike to Docher's head. (Statement of Material Facts,¶ 26). When the first elbow strike failed to stop Docher from attempting to bite the deputies, Deputy Newman delivered a second quick elbow strike to Docher's head. (Statement of Material Facts,¶ 27). Under these circumstances, this was constitutionally permissible. See Benton v. Hopkins, 190 Fed. Appx. 856, 860 (11th cir. 2006) (concluding that multiple baton strikes to the legs and neck of an unarmed resisting arrestee were not unreasonable).

      Evaluating Deputy Newman's actions in the middle of a tense and rapidly evolving situation while utilizing the factors laid out by the Supreme Court in Graham compels the conclusion that Deputy Newman's actions were reasonable. The Plaintiff had recently committed multiple crimes of varying degrees of seriousness, exhibited an immediate threat to the safety of the deputies and others including himself, and was actively resisting the deputies' efforts to

14

restrain him after he had recently attempted to evade his detention by flight. Because the force applied by Deputy Newman was reasonably justified by the Plaintiff's actions, Plaintiff's excessive force claim fails as a matter of law.

Plaintiff may argue that the Defendant Newman's use of force against the Plaintiff after he was handcuffed was unreasonable. While the law was clearly established on May 11, 2014 that it was unlawful for a law enforcement officer to use force against an arrestee who is already handcuffed and was not resisting in any way, Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002), here the record evidence shows that the Plaintiff actively resisted the deputies' attempts to restrain him. Buckley v. Haddock, supra, is instructive to this issue. In Buckley, the Eleventh Circuit reversed the trial court's denial of summary judgment for a deputy sheriff who had tased a suspect multiple times who was only passively resisting. Buckley, 292 Fed.Appx. at 792. In denying summary judgment to the deputy defendant, the district court concluded that the multiple deployments of the taser were grossly disproportionate and unnecessary since the crime the Plaintiff had committed was minor, the Plaintiff was secured, the Plaintiff never attempted to evade arrest by flight and only passively resisted while analogizing the case to Lee. Id. at797-798. In reversing the district court, the Eleventh Circuit noted that although the Plaintiff was handcuffed, he still had the **potential** to run and kick. Id. at 795 (emphasis added). The Eleventh Circuit distinguished Lee and other cases from the facts of Buckley by recognizing that the Lee court stressed the fact that the arrestee did not resist in any way making the force used wholly uncalled for. Id. at 798.

While the Plaintiff in Buckley only possessed the potential for kicking and running, the Plaintiff here actively resisted the deputies' efforts by fleeing, biting and kicking the deputies and fighting their efforts to control him. Plaintiff's resistance lasted from the time he fled Deputy

15

Newman's patrol car until the time the paramedics arrived to render medical attention. The Plaintiff's resistance is corroborated by the accounts of the civilian witnesses who testified that the Plaintiff's hands were underneath him after he was on ground and handcuffed which is consistent with the deputies' testimony that the Plaintiff was able to slip his cuffs up to his elbow allowing him to perform a one armed pushup while handcuffed as well as the accounts of the paramedics who testified that the Plaintiff was kicking and flailing when they arrived. Due to the Plaintiff's actions, Deputy Newman's use of an intermediate amount of force was reasonable. As the Eleventh Circuit noted in Buckley, "[t]he circumstances that call on police to use some intermediate force-between no force and deadly force-remain the cases where the law of excessive force is most ambiguous...considering the limitless set of potential different fact combinations and the necessity of allowing for flexible responses from the police." Id. at 798.

With factual scenarios like the case at hand, the pivotal point in the analysis is the point at which a suspect is safely in custody and poses no risk of danger to the officers. See Mobley v. Palm Beach County Sheriff Dept., 783 F.3d 1347, 1356 (11th Cir. 2015). ("We have held a number of times that severe force applied *after* the suspect is safely in custody is excessive...[b]ut force applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive"). This case never reached that pivotal point. Here the Plaintiff resisted the deputies' efforts up to the time the paramedics attempted to treat him. This is evidenced by the fact that Defendant Rosario administered the maximum approved dosage of Ativan within his discretion reserved for the most combative subjects to sedate the Plaintiff so that the paramedics could attempt to treat him.

Deputy Newman is entitled to summary judgment on Count II of the Second Amended Complaint.

16

## ANALYSIS OF COUNT VI: FAILURE TO INTERVENE

In Count VI, Plaintiff attempts to impose liability on Deputy Newman on a failure to intervene theory based on the actions of Deputies Mangrum and Robinson. A law enforcement officer can be liable for a failure to intervene if he stands idly by and watches his fellow officers commit a constitutional violation. See Priester v. City of Riviera Beach, Florida, 208 F.3d 919 (11th Cir. 2000); Fundiller v. City of Cooper City, 777 F.2d 1436 (11th Cir. 1985). However, liability can only arise when the officer is in a position to intervene and fails to do so. See Priester, supra at 924-925; see also Ensley v. Soper, 142 F.3d 1402 (11th Cir. 1998).

As argued by the Defendant deputies in their motions for summary judgment, the force used by them to restrain the resisting Plaintiff was reasonable. Further, even assuming arguendo that some of the force used by any of the deputies violated the Constitution, "[i]n order for an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene." Ensley, 142 F.3d at 1407. Viable intervention claims involve "egregious, clear-cut, allegations and opportunity to intervene." Gatling v. Holand, No. 5:10-CV-55, 2011 WL 2711226, at *10 (M.D. Ga. July 13, 2011) which is not established by the record here. Moreover, to the extent this Court finds that the deputies are entitled to the protections of qualified immunity on the excessive force claims, Defendant Newman would likewise be entitled to said protections on Plaintiff's failure to intervene claims.

## ANALYSIS OF COUNTS XIV AND XVI: STATE LAW FALSE ARREST AND BATTERY CLAIMS

To the extent this Court finds that Plaintiff's detention was supported by probable cause as it relates to Count I, Defendant Newman would also be entitled to summary judgment on Plaintiff's state law false arrest count (Count XIV). See Wright v. State, 418 So.2d 1087, 1094 (Fla. 1st DCA 1982) (recognizing that Florida's standard for probable cause is no more restrictive

17

than is required under the Fourth Amendment and is in effect a mirror image of the Fourth Amendment standard).

Likewise, to the extent this Court finds that Deputy Newman's use of force was reasonable under the circumstances, Defendant Newman would be entitled to summary judgment on Plaintiff's state law battery claim (Count XVI). See City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3rd DCA 1996) (a battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances). Further, Defendant Newman is entitled to sovereign immunity on Plaintiff's state law claims since there is no record evidence that Deputy Newman acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property as required to divest him of the protections provided by Florida's waiver of sovereign immunity. See F.S. 768.28(9)(a) (2014).

The motion should be granted.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **ADAM S. HECHT, ESQUIRE,** Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, ash@searcylaw.com, axs@searcylaw.com; mal@searcylaw.com; jcx@searcylaw.com, **HUGH L. KOERNER, ESQUIRE**, Hugh L. Koerner, P.A., Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021, hlklaw@hughkoerner.com, and **BENJAMIN W. NEWMAN, ESQUIRE,** Wilson Elser Moskowitz Edelman & Dicker, LLP, 111 N. Orange Ave., Suite 1200, Orlando, FL 32801, ben.newman@wilsonelser.com; julie.tyk@wilsonelser.com this **6th** day of October, 2017.

        PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
        Attorneys for Defendants Newman, Mangrum, Robinson,
        Courtemanche and Sheriff
        2455 East Sunrise Boulevard, Suite 1216
        Fort Lauderdale, Florida 33304
        Telephone (954) 462-3200
        Telecopier (954) 462-3861
        Email: summer@purdylaw.com
                melissa@purdylaw.com

BY    *s/ Summer M. Barranco*
        SUMMER M. BARRANCO
        Fla. Bar No. 984663