UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

        Plaintiff,

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as SHERIFF of ST. LUCIE
COUNTY, Florida, JOSE ROSARIO,
individually, and the ST. LUCIE COUNTY
FIRE DISTRICT, an independent special
district,

        Defendants.
_____/

CASE NO.: 2:16cv14413

## DEFENDANTS MANGRUM AND ROBINSON'S MOTION FOR SUMMARY JUDGMENT (AND MEMORANDUM OF LAW)

The Defendants, CLAYLAN MANGRUM and CALVIN ROBINSON, individually, through their undersigned attorneys, pursuant to Rule 56 of the Federal Rules of Civil Procedure file this their Motion for Summary Judgment[1] (and Memorandum of Law), and in support thereof would state as follows:

1. This federal civil rights lawsuit stems from an incident which occurred in the early evening of May 11, 2014. As a result of the incident, Plaintiff brings multiple federal and state law claims against the various defendants.

2. At issue here for purposes of this Motion are:

---

[1] Pursuant to this Court's Order [DE 11], the Defendants have filed contemporaneously herewith a separate Statement of Material Facts in support of their Motions for Summary Judgment.

1

    Count III-Excessive Force Claim cognizable under 42. U.S.C. §1983 against Defendant Mangrum;
    Count IV-Excessive Force Claim cognizable under 42 U.S.C. § 1983 against Defendant Robinson;
    Count V-Supervisory Liability Claim cognizable under 42 U.S.C. § 1983 against Defendant Mangrum;
    Count VII-Failure to Intervene Claim cognizable under 42 U.S.C. § 1983 against Defendant Mangrum;
    Count VIII-Failure to Intervene Claim cognizable under 42 U.S.C. § 1983 against Defendant Robinson;
    Count XVII-State Law Battery Claim against Defendant Mangrum; and
    Count XVIII-State Law Battery Claim against Defendant Robinson.

3. For the reasons outlined below, Defendant Mangrum and Robinson are entitled to summary judgment.

WHEREFORE, it is respectfully requested, that this Honorable Court grant the Defendant Mangrum and Robinson's Motion for Summary Judgment.

FURTHER, and in support of this Motion, the Defendant Mangrum and Robinson would refer this Honorable Court to the Memorandum of Law incorporated herein and by reference made a part hereof.

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW

The standard of review which must be applied by the Court is contained in Rule 56(a) of the Federal Rules of Civil Procedure which reads in pertinent part as follows:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the non-moving party, in this case, the Plaintiff. The plaintiff is then required to come forward with sufficient evidence to rebut the showing with affidavits or other relevant and admissible evidence. See Avirgan v.

2

Hull, 932 F.2d 1572, 1577 (11th Cir.), cert. denied, 112 S.Ct. 913 (1992). It is the non-moving party's burden to come forward with evidence on each essential element of his claim sufficient to sustain a jury verdict. See Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). See also Matsushita Electronic Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (Plaintiff must produce specific facts showing that there is a genuine issue for trial.).

## II.     ARGUMENT AND CITATIONS OF AUTHORITY

### STATEMENT OF LAW CONCERNING EXCESSIVE FORCE

The United States Supreme Court has held that an excessive force claim against a law enforcement officer must be analyzed under the Fourth Amendment and its reasonableness standard. Graham v. Connor, 490 U.S. 386, 395 (1989); Crenshaw v. Lister, 556 F.3d 1283 (11th Cir. 2009). The reasonableness inquiry in a Fourth Amendment excessive force case is an objective one. The question is whether the officer's actions are objectively reasonable in light of the facts confronting the officer, regardless of the officer's underlying intent or motivation. Graham, 490 U.S. at 397. The "reasonableness" inquiry requires courts to carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Graham, 490 U.S. at 396. Reasonableness depends on all circumstances relevant to an officer's decision to use force, including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officer or others, and whether the suspect actively resisted arrest or attempted to evade arrest by flight. See Id; see also, Crenshaw, 556 F.3d at 1290. Furthermore, reasonableness must account for the fact that police officers are sometimes forced to make split-second judgments under circumstances that are tense and rapidly evolving. Graham, 490 U.S. at 397. What the officer could or should have done in hindsight is not the appropriate inquiry. Rather, "[t]he sole inquiry is whether the

officer's actions, as taken, were objectively reasonable under all the circumstances. See Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009).

## STATEMENT OF LAW REGARDING QUALIFIED IMMUNITY

In order for Plaintiff to recover against the Defendants Mangrum and Robinson in their individual capacities, Plaintiff must demonstrate that the Defendants Mangrum and Robinson violated Plaintiff's constitutional rights and are not entitled to qualified immunity. The qualified immunity defense protects governmental officials from suit in their individual capacities for acts based on the use of their discretion. See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Qualified immunity affords broad protection to "all but the plainly incompetent or those who knowingly violate the law." See Malley v. Briggs, 475 U.S. 335, 341 (1986); Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990); Tillman v. Coley, 886 F.2d 317 (11th Cir. 1989); White v. Pauly, ___ U.S. ___, 137 S.Ct. 548, 196 L.Ed2d 463 (2017).

The Supreme Court of the United States has indicated that:

> Such officials as police officers or prison wardens, to say nothing of higher level officials who enjoy only qualified immunity routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, often so voluminous, ambiguous, and contradictory, and in such flux that officials can comply with them only selectively . . . . In these circumstances, officials should not err always on the side of caution.

Davis v. Scherer, 468 U.S. 183, 196 (1986).

In Harlow, supra, the United States Supreme Court applied an objective test regarding government officials performing discretionary duties, and specifically noted:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

4

This objective test clearly gives trial courts greater flexibility in disposing of claims on summary judgment.  See Harlow, supra, at 818.

Qualified immunity presents a question of law for the court regardless of which stage of the procedure, if a determination must be made.  See Dartland v. Metropolitan Dade County, 866 F.2d 1321 (11th Cir. 1989).  The burden of proof on the defense of qualified immunity is allocated as follows:

First, it is the obligation of the defendant who claims that his or her action is qualifiedly immune to demonstrate that his or her actions were taken within the scope of his or her discretionary authority.  Here there is no dispute that the Defendants Mangrum and Robinson were acting as deputy sheriffs in any contact they had with the Plaintiff. (See Second Am. Compl. pg. 3,¶s 6-7).  Therefore the Defendants Mangrum and Robinson were performing discretionary functions. When the initial burden of the defendant public official has been met, it is then incumbent upon the plaintiff to demonstrate that the defendant public official acted in bad faith, i.e. "violated clearly established constitutional law." See Brosseau v. Haugen, 543 U.S. 194 (2004).  The United States Supreme Court has recently reiterated the fact that: "'Clearly established law' should not be defined at a high level of generality...the clearly established law must be particularized to the facts of the case." See White v. Pauly, 137 S.Ct. 548, 552 (internal citations omitted).[2]

Furthermore, the resolution of the qualified immunity issue in the Eleventh Circuit is controlled by the state of the law as found in the opinions issued by the following courts:  the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme

---

[2]This court is authorized to resolve the qualified immunity question first and is no longer required to first determine whether an actual constitutional violation occurred. See Pearson v. Callahan, 555 U.S. 223 (2009).

5

Court.  See Vineyard v. Wilson, 311 F.3d 1340, 1351 n.22 (11th Cir. 2002).  In addition, the qualified immunity analysis is dependent upon the state of the law **at the time** the officer allegedly violated the plaintiff's constitutional rights; in this case, May 11, 2014. Consequently, opinions of the courts decided **after** the date of the alleged constitutional violation do not clearly establish the law as to that particular constitutional issue for the purpose of denying qualified immunity.  However, such opinions are helpful in determining whether a particular defendant is entitled to qualified immunity.

In the context of a claim for excessive force, qualified immunity applies unless the circumstances would inevitably lead a reasonable officer in the defendant's position to conclude that the force used was unlawful.  Gold v. City of Miami, 121 F.3d 1442 (11th Cir. 1997), cert. denied, 119 S.Ct. 165 (1998); Post v. City of Fort Lauderdale, 7 F.3d 1552, 1559 (11th Cir. 1993). Furthermore, the reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, not by hindsight.  Rodriguez v. Farrell, 280 F.3d 1341 (11th Cir. 2002), cert. denied, 123 S.Ct. 1482 (2003); McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1244 (11th Cir. 2003).

The Supreme Court of the United States has provided specific principles of law to follow when addressing the defense of qualified immunity in the context of a Fourth Amendment use of force claim.  See Brosseau v. Haugen, 543 U.S. 194 (2004).  The Court in Brosseau addressed the application of the Fourth Amendment as it would relate to the use of force.  The Court noted that:

> it is important to emphasize that this inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. . . .there is no doubt that Graham v. Connor, clearly establishes the general proposition that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness.  Yet that is not enough.  Rather, we emphasized in Anderson v. Creighton that the right the official is alleged to have violated must

6

have been clearly established in a more particularized, and hence more relevant, sense: the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. . . . the relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted (internal cites and quotes omitted).

Consequently, it is clear that in the Fourth Amendment use of force context the qualified immunity question must be answered by focusing on clearly established case law that existed before the date of the conduct in question that is specific in the context of the force used in the case in question which requires a more particularized set of factual circumstances. This principle was recently reiterated by the Supreme Court in response to number of qualified immunity cases which resulted in reversals where lower courts had improperly lowered the Plaintiff's burden by relying on generalized statements of law. See White, 137 S.Ct. at 552. ("Today it is again necessary to reiterate the longstanding principle that clearly established law should not be defined at a great level of generality"). (internal quotations omitted). Thus, in the Fourth Amendment arena, absent an obvious violation of the Constitution, factually specific law must be produced by the Plaintiff to overcome the defense of qualified immunity.

**APPLICATION OF LAW TO ANALYSIS OF COUNT III AND COUNT IV: EXCESSIVE FORCE CLAIMS AGAINST MANGRUM AND ROBINSON**

The case at bar presents a factual scenario which is becoming increasingly common in this country: subject is acting bizarrely, law enforcement respond, law enforcement attempt to confront subject, a struggle ensues and the subject unexpectedly suffers some combination of cardiac and/or respiratory arrest. See Gregory v. Cnty. of Maui, 523 F.3d 1103 (9th Cir. 2008); Mann v. Taser International, Inc., 588 F.3d 1291 (11th Cir. 2009); Roell v. Hamilton County, Ohio/Hamilton Bd. Of County Commissioners, 16-4045, 2017 WL 3864618 (6th Cir. 2017); Waters v. Coleman, 632 Fed. Appx. 431 (10th Cir. 2015); Fernandez v. City of Cooper City, 207

7

F.Supp.2d 1371 (S.D.Fla. 2002).

As argued above, in order to divest Deputies Mangrum and Newman of the protections afforded them by qualified immunity, it is the Plaintiff's burden to present factually similar case law which preceded the subject incident sufficient to give Deputy Mangrum and Robinson fair notice that their actions were unlawful. This the Plaintiff cannot do. However, "a necessary determination to the determination of whether the constitutional right is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." Seigert v. Galley, 500 U.S. 226, 232 (1991). Because Deputies Mangrum and Robinson's actions were reasonable, Plaintiff cannot establish a constitutional violation.

As noted above, in evaluating whether the force used to effectuate a seizure was objectively reasonable and therefore lawful, the court must evaluate a number of factors, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 397.

After handcuffing the Plaintiff without incident, Deputy Newman escorted the Plaintiff to the back of his patrol car. (Statement of Material Facts,¶ 18). Once Docher reached the patrol car, he sat in the back seat again without incident but when it came time for Docher to place his feet inside the car, Docher instead pushed his way out of the car while attempting to bite the deputies and elbowing Deputy Newman in the eye. (Statement of Material Facts,¶ 19). At that moment, Plaintiff committed two serious crimes: obstruction and battery on a law enforcement officer. See State v. Granner, 661 So.2d 89, 90 (Fla. 5th DCA 1995). As Docher began to flee the back of the patrol car while handcuffed, Deputy Robinson delivered two closed fist strikes to the large

muscle mass on Docher's leg in an effort to slow him down. (Statement of Material Facts,¶ 20). After Docher fled the back of the patrol car while handcuffed, Docher was able to run a short distance away from Deputy Newman's patrol car towards Prima Vista Boulevard before the deputies were able to take him to the ground. (Statement of Material Facts,¶ 21). Once Docher was on the ground Deputies Newman and Mangrum attempted to control Docher's upper body while Deputy Robinson was positioned at Docher's legs trying to control Docher's lower body. (Statement of Material Facts,¶ 22). As the Deputies tried to restrain Docher, Docher was able to slip one of his cuffs up to his elbow permitting him to slip one of his arms underneath him. (Statement of Material Facts,¶ 23). With his arm underneath him, Docher attempted to push himself off the ground while the deputies used their weight to keep him on the ground. (Statement of Material Facts,¶ 24). As Deputies Newman and Mangrum attempted to control Docher's head, Docher bit Deputy Newman in the finger and attempted to bite Deputy Mangrum's fingers, (Statement of Material Facts,¶ 25), again committing the crime of battery on a law enforcement officer. In response to this ongoing active resistance, Deputy Mangrum delivered an elbow strike to the Plaintiff's head. (Statement of Material Facts,¶ 26). This he was constitutionally permitted to do. See Benton v. Hopkins, 190 Fed. Appx. 856, 860 (11th cir. 2006) (concluding that multiple baton strikes to the legs and neck of an unarmed resisting arrestee were not unreasonable).

     As for Deputy Robinson, besides the two strikes to Docher's leg, the only other force utilized by him was captured in a cell phone video of the incident. As observed in the cell phone video, Plaintiff can be heard exclaiming, "I'm going to get up." Soon after declaring his intention to get up, the Plaintiff can be observed repeatedly kicking Deputy Robinson with the back of his foot in Deputy Robinson's lower back. (Statement of Material Facts,¶ 29). While the Plaintiff

was kicking Deputy Robinson, Deputy Robinson delivered one closed fist strike to the Plaintiff's side. (Statement of Material Facts,¶ 30). Meanwhile, Deputy Mangrum is observed on the video placing his foot on the Plaintiff's upper back and lifting the Plaintiff's arms to gain leverage over the Plaintiff. (Statement of Material Facts,¶ 31).

Evaluating Deputy Mangrum and Robinson's actions in the middle of a tense and rapidly evolving situation while utilizing the factors laid out by the Supreme Court in Graham compels the conclusion that the deputies' actions were reasonable. The Plaintiff had recently committed multiple crimes of varying degrees of severity, exhibited an immediate threat to the safety of the deputies and others including himself, and was actively resisting the deputies' efforts to restrain him after he had recently fled the back of Deputy Newman's car. Because the force applied by Deputies Mangrum and Robinson was reasonably justified by the Plaintiff's actions, Plaintiff's excessive force claims as to them fail as a matter of law.

To the extent Plaintiff's excessive force claim against Deputy Mangrum is based on his actions of placing a foot on the Plaintiff's back while lifting his arms behind him, Deputy Mangrum is entitled to qualified immunity. In Post v. City of Fort Lauderdale, supra, a law enforcement officer applied a choke hold to the Plaintiff after the Plaintiff put his hands up to be arrested. Post, 7 F.3d at 1556. Despite the fact that non-party bystanders testified that the Plaintiff was not interfering with the officers in any way when he was arrested, the Eleventh Circuit held that the officer was entitled to qualified immunity since a reasonable officer "could have concluded that the technique [the defendant officer] used was needed to stop [the plaintiff] **from becoming** violent."[3] Id. at 1559. (emphasis added).While the rationale for the officer's

---

[3]The Court noted that the Defendant Officer heard from another officer that the Plaintiff had been violent in the past. Post, 7 F.3d at 1559.

entitlement to qualified immunity in Post was based on the Plaintiff's potential for violence, here the rationale is much stronger where the Plaintiff had already exhibited the behavior Deputy Mangrum sought to prevent. Before Deputy Mangrum lifted the Plaintiff's arms while placing his foot on the Plaintiff's upper back, the Plaintiff had already been able to slip one of the cuffs to his elbow allowing him to get his other arm underneath him which in turn allowed him to push off the ground. Like the scenario in Post, a reasonable officer here could have determined that the technique used by Deputy Mangrum was needed to prevent the Plaintiff from **again** slipping his cuffs and furthering his active resistance of the deputies efforts.

Plaintiff may argue that the Defendants Mangrum and Robinson's use of force against the Plaintiff after he was handcuffed was unreasonable. While the law was clearly established on May 11, 2014 that it was unlawful for a law enforcement officer to use force against an arrestee who was already handcuffed and was not resisting in any way, see Lee v. Ferraro, 284 F.3d 1188, 1198 (11th Cir. 2002), here the record evidence shows that the Plaintiff actively resisted the deputies' attempts to restrain him. Buckley v. Haddock, supra, is instructive on this issue. In Buckley, the Eleventh Circuit reversed the trial court's denial of summary judgment for a deputy sheriff who had tased a suspect multiple times who was only passively resisting. Buckley, 292 Fed.Appx. at 792. In denying summary judgment to the deputy defendant, the district court concluded that the multiple deployments of the taser were grossly disproportionate and unnecessary since the crime the Plaintiff had committed was minor, the Plaintiff was secured, the Plaintiff never attempted to evade arrest by flight and only passively resisted, analogizing the case to Lee. Id. at797-798. In reversing the district court, the Eleventh Circuit noted that although the Plaintiff was handcuffed, he still had the **potential** to run and kick. Id. at 795 (emphasis added). The Eleventh Circuit distinguished Lee and other cases from the facts of Buckley by

11

recognizing that the Lee court stressed the fact that the arrestee did not resist in any way making the force used wholly uncalled for. Id. at 798.

 While the Plaintiff in Buckley only possessed the potential for kicking and running, the Plaintiff here actively resisted the deputies' efforts by fleeing, biting and kicking the deputies and fighting their efforts to control him. Plaintiff's resistance lasted from the time he fled Deputy Newman's patrol car until the time the paramedics arrived to render medical attention. The Plaintiff's resistance is corroborated by the accounts of the civilian witnesses who testified that the Plaintiff's hands were underneath him after he was on ground and handcuffed which is consistent with the deputies' testimony that the Plaintiff was able to slip his cuffs down to his elbow allowing him to himself off of the ground while handcuffed as well as the accounts of the paramedics who testified that the Plaintiff was kicking and flailing when they arrived. Due to the Plaintiff's resistance, Deputies Mangrum and Robinson's use of an intermediate amount of force was reasonable. As the Eleventh Circuit noted in Buckley, "[t]he circumstances that call on police to use some intermediate force-between no force and deadly force-remain the cases where the law of excessive force is most ambiguous...considering the limitless set of potential different fact combinations and the necessity of allowing for flexible responses from the police." Id. at 798.

 With factual scenarios like the case at hand, the pivotal point in the analysis is the point at which a suspect is safely in custody and poses no risk of danger to the officers. See Mobley v. Palm Beach County Sheriff Dept., 783 F.3d 1347, 1356 (11th Cir. 2015). ("We have held a number of times that severe force applied *after* the suspect is safely in custody is excessive...[b]ut force applied while the suspect has not given up and stopped resisting and may still pose a danger to the arresting officers, even when that force is severe, is not necessarily excessive"). This case

never reached that pivotal point. Here the Plaintiff resisted the deputies' efforts up to the time the paramedics attempted to treat him. This is evidenced by the fact that Defendant Rosario administered the maximum approved dosage of Ativan within his discretion reserved for the most combative subjects to sedate the Plaintiff so that the paramedics could attempt to treat him.

Deputies Mangrum and Robinson are entitled to summary judgment on Counts III and IV of the Second Amended Complaint.

## ANALYSIS OF COUNT V:
## SUPERVISORY LIABILITY CLAIM AGAINST DEPUTY MANGRUM

In Count V of the Second Amended Complaint, Plaintiff attempts to impose supervisory liability on Deputy Mangrum premised on the theory that he, as Deputy Robinson's field training officer, is liable for failing to "direct, control, and supervise the use of force by Defendant Robinson towards Plaintiff." (Second Amended Complaint, pg. 15, ¶ 71). "It is well established in the Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal quotations marks omitted). Instead, to hold a supervisor liable a plaintiff must show that the supervisor directly participated in the unconstitutional acts or that a causal connection exists between the supervisor's actions and the alleged constitutional violation. Id. In defining the scope of a supervisor's liability, the Eleventh Circuit held:

> The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy...result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so.

13

Id.(internal quotation marks omitted) (citations omitted). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation mark omitted). As announced by the Eleventh Circuit, "the standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." Cottone, 326 F.3d at 1360. (Internal quotation marks omitted).

For starters, Plaintiff cannot show that force used by Deputy Robinson to restrain and control the Plaintiff violated the Plaintiff's constitutional rights. See supra. Even assuming arguendo that Deputy Robinson violated the Plaintiff's constitutional rights when Deputy Robinson punched the Plaintiff in the side immediately after being kicked by the Plaintiff, Plaintiff's supervisory liability claim would fail as a matter of law. There has been no allegation that Deputy Mangrum directed Deputy Robinson to punch the Plaintiff. Indeed at the time Deputy Robinson used force against the Plaintiff, Deputy Mangrum was fully engaged in the struggle to control the Plaintiff. Further, there is no evidence of a widespread practice on the part of Deputy Robinson of violating person's constitutional rights in the way alleged in the Second Amended Complaint. As a result, Deputy Mangrum is entitled to summary judgment on Count V.

**ANALYSIS OF COUNTS VII AND VIII: FAILURE TO INTERVENE CLAIMS AGAINST DEPUTIES MANGRUM AND ROBINSON**

In Count VII and VIII, Plaintiff attempts to impose liability on Deputies Mangrum and Robinson on a failure to intervene theory. A law enforcement officer can be liable for a failure to intervene if he stands idly by and watches his fellow officers commit a constitutional violation. See Priester v. City of Riviera Beach, Florida, 208 F.3d 919 (11th Cir. 2000); Fundiller v. City of

Cooper City, 777 F.2d 1436 (11th Cir. 1985). However, liability can only arise when the officer is in a position to intervene and fails to do so. See Priester, supra at 924-925; see also Ensley v. Soper, 142 F.3d 1402 (11th Cir. 1998).

As argued by the Defendant deputies in their motions for summary judgment, the force used by them to restrain the resisting Plaintiff was reasonable. Further, even assuming arguendo that some of the force used by any of the deputies violated the Constitution, "[i]n order for an officer to be liable for failing to stop police brutality, the officer must be in a position to intervene." Ensley, 142 F.3d at 1407. Viable intervention claims involve "egregious, clear-cut, allegations and opportunity to intervene." Gatling v. Holand, No. 5:10-CV-55, 2011 WL 2711226, at *10 (M.D. Ga. July 13, 2011) which is not established by the record here. Moreover, to the extent this Court finds that the defendant deputies are entitled to qualified immunity since their use of force did not violate clearly established law, the other deputies allegedly in a position to intervene would likewise be entitled to the protections qualified immunity.

**ANALYSIS OF COUNT XVI: STATE LAW BATTERY/EXCESSIVE FORCE CLAIM**

To the extent this Court determines that the Defendants Mangrum and Robinson are entitled to summary judgment based upon a finding that the force used was reasonable as a matter of law, the Defendants would also be entitled to summary judgment on Counts XVII and XVIII of the Second Amended Complaint. Under Florida law the use of excessive force by a deputy sheriff is considered to be a battery. See City of Miami v. Sanders, 672 So.2d 46, 47 (Fla. 3rd DCA 1996) (a battery claim for excessive force is analyzed by focusing upon whether the amount of force used was reasonable under the circumstances). See also, F.S. ch 776 (2013). Further, a presumption of good faith attaches to an officer's use of force in making a lawful arrest and an officer is liable for damages only where the force used is clearly excessive." Id.

Additionally, as argued above, there is no record evidence that either Deputy Mangrum or Deputy Robinson acted with the requisite intent necessary to divest them of the protections of Florida's sovereign immunity statute. Accordingly, for the reasons already stated, Defendants Mangrum and Robinson are entitled to summary judgment on Plaintiff's state law battery claims.

The motion should be granted.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **ADAM S. HECHT, ESQUIRE,** Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, ash@searcylaw.com, axs@searcylaw.com; mal@searcylaw.com; jcx@searcylaw.com, **HUGH L. KOERNER, ESQUIRE**, Hugh L. Koerner, P.A., Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021, hlklaw@hughkoerner.com, and **BENJAMIN W. NEWMAN, ESQUIRE,** Wilson Elser Moskowitz Edelman & Dicker, LLP, 111 N. Orange Ave., Suite 1200, Orlando, FL 32801, ben.newman@wilsonelser.com; julie.tyk@wilsonelser.com this **6th** day of October, 2017.

>PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
>Attorneys for Defendants Newman, Mangrum, Robinson, Courtemanche and Sheriff
>2455 East Sunrise Boulevard, Suite 1216
>Fort Lauderdale, Florida 33304
>Telephone (954) 462-3200
>Telecopier (954) 462-3861
>Email: summer@purdylaw.com
>         melissa@purdylaw.com
>
>BY     *s/ Summer M. Barranco*
>         SUMMER M. BARRANCO
>         Fla. Bar No. 984663