UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

CASE NO.: 2:16cv14413

      Plaintiffs,

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as SHERIFF of ST. LUCIE
COUNTY, Florida, JOSE ROSARIO,
individually, and the ST. LUCIE COUNTY
FIRE DISTRICT, an independent special
district,

      Defendants.
_____/

**DEFENDANTS SHERIFF, NEWMAN, MANGRUM, ROBINSON AND COURTEMANCHE'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTIONS FOR SUMMARY JUDGMENT**

      The Defendants, SHERIFF KEN J. MASCARA, in his official capacity as Sheriff of St. Lucie County, CHRISTOPHER NEWMAN, individually, CLAYLAN MANGRUM, individually, CALVIN ROBINSON, individually, and WADE COURTEMANCHE, individually, by and through undersigned counsel, pursuant to Local Rule 56.1(a) and this Court's Order Setting Status Conference, Calendar Call, and Trial Date and Order of Reference to Magistrate [DE 11] files this their Statement of Material Facts in support of their Motions for Summary Judgment as follows:

**STATEMENT OF MATERIAL FACTS**

    1.    Defendant Sheriff Mascara is named in this proceeding in his official capacity only. (Second Amended Compl. ¶s 1,9).

1

2.     Defendants Christopher Newman, Claylan Mangrum, Calvin Robinson, and Wade Courtemanche are named in this proceeding in their individual capacities only. (Second Amended Compl. ¶12).

3.     At all times relevant to this matter, the Defendant Newman was acting within the course and scope of his employment with the Sheriff of St. Lucie County and all actions by him were taken under color of state law. (Second Amended Compl.¶s 5, 51).

4.     At all times relevant to this matter, the Defendant Mangrum was acting within the course and scope of his employment with the Sheriff of St. Lucie County and all actions by him were taken under color of state law. (Second Amended Compl.¶s 6, 51)

5.     At all times relevant to this matter, the Defendant Robinson was acting within the course and scope of his employment with the Sheriff of St. Lucie County and all actions by him were taken under color of state law. (Second Amended Compl.¶s 7, 51).

6.     At all times relevant to this matter, the Defendant Courtemanche was acting within the course and scope of his employment with the Sheriff of St. Lucie County and all actions by him were taken under color of state law. (Second Amended Compl.¶s 8, 51).

7.     On May 11, 2014, Deputies Newman, Mangrum and Robinson responded to a CVS store in Port St. Lucie, Florida in response to a 911 hang-up. ( Exhibit A-Newman depo. 29:9-10; Exhibit B-Robinson depo. 35:23-36:3).

8.     Deputy Robinson rode with Deputy Mangrum, Deputy Robinson's field training officer, while Deputy Newman responded separately. (Exhibit B-Robinson depo. 21: 7-10; Exhibit "C" Mangrum depo. 29:18-30:2).

9.     Deputies Mangrum and Robinson were the first law enforcement officers on the scene and upon pulling into the parking lot of the CVS they observed a black male that fit the description

of the person who made the 911 call provided by the dispatcher. (Exhibit B, 36:10-15; 40:24-41:10; Exhibit C, 31: 11-22).

10. Before either Deputy Robinson or Deputy Mangrum could get out of their vehicle, the Plaintiff, Tavares Docher, approached their vehicle while holding a screwdriver. (Exhibit C, 26: 16-21; 32:6-13).

11. Deputy Mangrum exited the vehicle and made contact with Docher while Deputy Robinson approached the manager of the store, Hardyhal Bhagudas, who was outside of the CVS. (Exhibit B, 36:6-9; 36:16-17).

12. Docher complied with Deputy Mangrum's request to drop the screwdriver which Docher held with a closed fist as he approached the deputies' car. (Exhibit C, 26:18-21; 27:9-10; 32:18-20; 33:10-14).

13. While Deputy Mangrum interacted with Docher, Deputy Robinson spoke with CVS store manager Bhagudas who relayed to Deputy Robinson that Docher, while in the store, was scaring customers, causing a disruption, and felt it was his responsibility to inform the deputies that Docher possessed a screwdriver. (Exhibit B, 36:16-23; Exhibit D, Bhagudas depo. 9:17-21; 13:1-18).

14. At some point after the initial interaction between Deputy Mangrum, Deputy Robinson, and Docher, Deputy Newman arrived at the scene. (Exhibit A; 29: 13-16; Exhibit B, 37:20-21).

15. After speaking with the CVS manager, Deputy Robinson walked towards the area where Deputy Mangrum was talking to Docher, secured the screwdriver and patted down Docher. (Exhibit B, 37:3-7).

16. The deputies conversed with Docher who told them that someone was being held against their will, that he was carrying a screwdriver to protect himself from the Arabs, that Seal

3

Team 6 out of Broward County had cut off someone's head and were now coming to get him, and that he was being followed by black vans and helicopters. (Exhibit A, 30: 12-23; 32: 17-20; Exhibit B, 37:16-19; Exhibit C, 27:12-16; 28:19-21).

17. Docher also volunteered to the deputies that he had been drinking and that he was a registered sex offender. (Exhibit A, 31:1-4; 31:17-24; Exhibit B, 37:11-13; Exhibit C, 29:12-17).

18. Docher was next placed in handcuffs and escorted to the back of Deputy Newman's car without incident. (Exhibit A, 33:3-5; Exhibit B, 38:5-6).

19. Once Docher reached the patrol car, he sat in the back seat again without incident but when it came time for Docher to place his feet inside the car, Docher instead pushed his way out of the car while attempting to bite the deputies and elbowing Deputy Newman in the eye. (Exhibit A, 48:14-24; 49:11-13; Exhibit B, 38:5-17; Exhibit C, 48:17-49:6).

20. As Docher began to flee the back of the patrol car while handcuffed, Deputy Robinson delivered two closed fist strikes to the large muscle mass on Docher's leg in an effort to slow him down. (Exhibit B, 38:13-19; 52:4-11).

21. After Docher fled the back of the patrol car while handcuffed, Docher was able to run a short distance away from Deputy Newman's patrol car towards Prima Vista Boulevard before the deputies were able to take him to the ground. (Exhibit A, 49:2-4; 49:18-20; Exhibit B, 38:17-20; Exhibit C, 49:14-24).

22. Once Docher was on the ground Deputies Newman and Mangrum attempted to control Docher's upper body while Deputy Robinson was positioned at Docher's legs trying to control Docher's lower body. (Exhibit A, 49:24-50:3; Exhibit B, 38:21-22).

23. As the Deputies tried to restrain Docher, Docher was able to slip one of his cuffs up to his elbow permitting him to slip one of his arms underneath him. (Exhibit A, 50:8-13; Exhibit

4

C:51-23-52:5; Exhibit E, Merine Kanhai depo., 9:3-8).

24. With his arm underneath him, Docher attempted to push himself off the ground while the deputies used their weight to keep him on the ground. (Exhibit A, 50:12-14; 50:19-21; Exhibit C, 51:20-23).

25. As Deputies Newman and Mangrum attempted to control Docher's head, Docher bit Deputy Newman in the finger and attempted to bite Deputy Mangrum's fingers. (Exhibit A, 50:23-51:3; Exhibit C, 52:6-20).

26. To combat Docher's bites, Deputy Newman delivered a quick elbow strike to Docher's head. (Exhibit A, 51:2-9).

27. When the first elbow strike failed to stop Docher from attempting to bite the deputies, Deputy Newman delivered a second quick elbow strike to the Docher's head. (Exhibit A, 51:10-19).

28. Deputy Mangrum, also within range of Docher's attempted bites, likewise delivered an elbow strike to Docher's head in an effort to combat Docher's bites. (Exhibit C, 59:18-60:1).

29. During the struggle, Docher repeatedly kicked Deputy Robinson, positioned at Docher's legs, while declaring his intention to get up. (Exhibit C, 56:17-19; Exhibit F, cell phone recording filed conventionally).

30. As seen in the cell phone recording of the incident, immediately after Deputy Robinson is kicked by Docher, Deputy Robinson delivers a closed fist strike to Docher's side to gain compliance from Docher. (Exhibit B, 71:1-9; Exhibit C, 56:19-23; Exhibit F, 00:39-00:45).

31. While Deputy Robinson struggled with Docher's legs, Deputy Mangrum placed his foot on Docher's upper back while lifting his arms to prevent any further movement of Docher's arms and upper body. (Exhibit C, 80:12-81:2; 81:17-20; Exhibit F, 00:39-01:19).

32. Once it appeared that Deputies Mangrum and Robinson could maintain a certain

amount of control of Docher, Deputy Newman used towels to clean Docher's face. (Exhibit A, 51:23-52:4; Exhibit F, 01:00-01:19).

33. At some point during the struggle and prior to the arrival of the paramedics, Deputy Courtemanche arrived at the CVS and directed the civilian witnesses to a safe distance away from the deputies at the request of Deputy Mangrum who was concerned that civilian onlookers were getting too close and could potentially interfere with the deputies' ability to control Docher. (Exhibit C, 63:10-25, Exhibit G, Courtemanche depo., 8:12-19; 9:25-10:6).

34. Soon after Deputy Newman cleaned Docher's face, paramedics Defendant Jose Rosario and Tom Sinclair of the St. Lucie County Fire District arrived at the behest of the deputies who had requested rescue at the beginning of the struggle with Docher. (Exhibit A, 52:5-6; Exhibit B, 38:23-24).

35. When the paramedics arrived, they observed the Plaintiff kicking, spitting blood and pushing himself off the ground despite the fact that three deputies were trying to restrain him. (Exhibit H, Thomas Sinclair depo., 10:2-24).

36. When the paramedics and the deputies attempted to place Docher on a backboard, he attempted to kick one of the paramedics and continued spitting blood. (Exhibit H, 12:22-13:8).

37. Because the paramedics determined it was unsafe to move Docher due to his violent combative behavior, the paramedics decided to chemically sedate Docher. (Exhibit H, 13:22-14:4; Exhibit I, Jose Rosario depo., 37:12-15).

38. Because of his extreme combativeness, Paramedic Jose Rosario administered a single dose of 4 mg of Ativan, the maximum amount within Rosario's discretion as per the St. Lucie Fire District protocols. (Exhibit H, 38:20-39:6; 44:13-45:18; Exhibit I, 37:15-38:18).

39. After the shot of Ativan was administered, Docher continued to struggle for a short

period of time before becoming calm which allowed the deputies to lift him onto the stretcher without incident. (Exhibit H, 16:10-13; Exhibit I, 63: 18-20).

40. Once Docher was safely on the stretcher, the paramedics reassessed Docher and found he was not breathing and did not have a pulse. (Exhibit H, 16:16-18; Exhibit I, 63:20-21).

41. While being transported to St. Lucie Medical Center, Deputy Robinson and one of the paramedics performed CPR on the Plaintiff and were eventually able to restore Docher's pulse. (Exhibit B, 39:21-40:23).

42. Since the incident, Plaintiff remains in a persistent vegetative state. (Second Amended Compl. ¶ 50).

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **ADAM S. HECHT, ESQUIRE,** Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, ash@searcylaw.com, axs@searcylaw.com; mal@searcylaw.com; jcx@searcylaw.com, **HUGH L. KOERNER, ESQUIRE**, Hugh L. Koerner, P.A., Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021, hlklaw@hughkoerner.com, and **BENJAMIN W. NEWMAN, ESQUIRE,** Wilson Elser Moskowitz Edelman & Dicker, LLP, 111 N. Orange Ave., Suite 1200, Orlando, FL 32801, ben.newman@wilsonelser.com; julie.tyk@wilsonelser.com this **6th** day of October, 2017.

> PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
> Attorneys for Defendants Newman, Mangrum, Robinson, Courtemanche and Sheriff
> 2455 East Sunrise Boulevard, Suite 1216
> Fort Lauderdale, Florida 33304
> Telephone (954) 462-3200
> Telecopier (954) 462-3861
> Email: summer@purdylaw.com
>         melissa@purdylaw.com
>
> BY     _s/ Summer M. Barranco_
>        SUMMER M. BARRANCO
>        Fla. Bar No. 984663