UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

       Plaintiff

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as SHERIFF of ST. LUCIE
COUNTY, Florida, JOSE ROSARIO,
individually, and the ST. LUCIE COUNTY
FIRE DISTRICT, an independent special
district,

       Defendants.
_____/

CASE NO.: 2:16cv14413

**DEFENDANTS SHERIFF, NEWMAN, MANGRUM, ROBINSON AND
COURTEMACHE'S
DAUBERT MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S
MEDICAL EXPERT DR. JOHN STERBA
(AND MEMORANDUM OF LAW)**

The Defendants KEN J. MASCARA, in his official capacity as Sheriff of St. Lucie County, and DEPUTIES NEWMAN, MANGRUM, ROBINSON and COURTEMANCHE, in their individual capacities, through their undersigned attorneys, pursuant to Rule 702 of the Federal Rules of Evidence, file this their Motion to Exclude Certain Testimony of Plaintiff's Medical Expert Dr. John Sterba (and Memorandum of Law), and as grounds therefore would state as follows:

1. On May 23, 2017, the Plaintiff served her Notice of Serving Plaintiff's Expert Reports, attaching, among others, the expert report of Dr. John Sterba dated May 22, 2017. The initial

report of Dr. Sterba did not contain any opinions related to the actions and/or inactions of the individual law enforcement defendants. (See Exhibit A, pgs. 1-14).

2. During the first part of his deposition on July 19, 2017, Dr. Sterba expressed opinions regarding these individual defendants which were not included in his expert report of May 22, 2017. (See Exhibit B, e.g. pgs. 101, 146, 159/lines 9-10, 185/lines 1-4).

3. On August 1, 2017, the Plaintiff served her second Notice of Serving Plaintiff's expert Report and Addendum, containing an Addendum to Dr. Sterba's initial expert report dated July 25, 2017. (See Exhibit A, pgs. 19-36). Dr. Sterba's Addendum contains his opinions as it relates to the actions and/or inactions of these individual law enforcement defendants in their interaction with Mr. Docher.

4. The continuation to Dr. Sterba's deposition took place on August 8, 2017. (See Exhibit C).

5. In his Addendum to the expert report and his deposition, Dr. Sterba has expressed the following opinions:

   a. "Deputy Mangrum, a former State of Florida EMT, was observed to be in a sudden fit of uncontrollable rage using profanity acting with Reckless Disregard to not protect the life of Tavares Docher, by, more likely than not, asphyxiating (suffocating) Tavares Docher into unconsciousness, "respiratory insufficiency" and hypoxemia (low oxygen in the blood) by using his own improvised, un-approved and non-taught restraining method of stepping on Tavares Docher's chest while simultaneously pulling his handcuffed arms straight up behind his back in a reverse-hanging." (See Exhibit A- pg.31)

   b. "Deputy Robinson and Deputy Newman, individually and collectively, acted with Reckless Disregard to not protect the life of Tavares Docher by not stopping Deputy Mangrum from asphyxiating (suffocating) Tavares Docher into unconsciousness with "respiratory insufficiency" and hypoxemia (low blood oxygen). (See Exhibit A-pg.31). "They did not act to protect the life and well-being of Docher. They are responsible for this as well." (See Exhibit C- pg.239/lns.2-10).

2

    c. "These [Docher's] injuries were a result of excessive force caused directly by the deputies." (See Exhibit C, pg.233/lns.13-14). "[t]here was excessive force applied to asphyxiate the patient into unconsciousness." (id, pg.261/lns.2-4).

6. These opinions are not admissible because: a) they express impermissible conclusions of law; b) they invade the province and function of the jury; and c) they are not reliable.

**WHEREFORE,** for the reasons addressed herein, Defendants respectfully request that the Court (1) strike the portions of Dr. Sterba's report identified herein, and (2) exclude these opinions from presentation at trial.

Further, and in support of this Motion, these Defendants would refer the Court to the Memorandum of Law attached hereto and by reference made a part hereof.

## MEMORANDUM OF LAW

### INTRODUCTION

This federal civil rights lawsuit stems from an incident which occurred during the early evening hours of May 11, 2014. Initially, three uniformed St. Lucie County Sheriff's deputies, Christopher Newman, Claylan Mangrum and Calvin Robinson, responded to a 911 call which originated from a CVS store in Port St. Lucie. After making contact with the complainant, Tavares Docher at the CVS store, the deputies attempted to detain Docher. In the process of attempting to detain Docher, a struggle ensued in the parking lot of the CVS. EMS was summoned to medically treat Mr. Docher. EMS arrived and administered an injection of Ativan to sedate Mr. Docher. Shortly thereafter, Docher's heart stopped. Resuscitation efforts were successful but Mr. Docher ultimately suffered from oxygen deprivation to his brain which resulted in him being in a persistent vegetative state. Plaintiff seeks damages from the Defendants as a result.

3

The current operative complaint is the Second Amended Complaint [DE 60] which contains the following counts against the law enforcement defendants:

Count I- §1983 False Arrest/False Imprisonment Claim Against Defendant Newman, Individually;

Count II -§1983 Excessive Use of Force by Defendant Newman, Individually;

Count III -§1983 Excessive Use of Force by Defendant Mangrum, Individually;

Count IV -§1983 Excessive Use of Force by Defendant Robinson, Individually;

Count V- §1983 Supervisory Liability Claim Defendant Mangrum, Individually;

Count VI -§1983 Failure to Intervene Claim Against Defendant Newman, Individually;

Count VII -§1983 Failure to Intervene Claim Against Defendant Mangrum, Individually;

Count VIII -§1983 Failure to Intervene Claim Against Defendant Robinson, Individually;

Count IX -§1983 First Amendment Claims Against Defendant Courtemanche Individually;

Count XIII - False Arrest/False Imprisonment Claim Against Defendant Ken J. Mascara, as Sheriff of St. Lucie County, Florida;

Count XIV -False Arrest/False Imprisonment Claim Against Defendant Newman, Individually;

Count XV -Battery/Unnecessary Force Claim Against Defendant Ken J. Mascara, as Sheriff of St. Lucie County, Florida;

Count XVI -Battery/Unnecessary Force Claim Against Defendant Newman;

Count XVII - Battery/Unnecessary Force Claim Against Defendant Mangrum;

Count XVIII - Battery/Unnecessary Force Claim Against Defendant Robinson.

## THE STANDARD FOR ADMISSIBILITY OF EXPERT EVIDENCE
## UNDER FED. R. EVID. 702

Federal Rule of Evidence 702 provides the framework for determining when expert testimony is admissible. It states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. In addition, expert testimony under Rule 702 must meet the predicate requirements of relevance and reliability. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591 (1993). Further, Daubert recognized that expert testimony can be "both powerful and quite misleading because of the difficulty in evaluating it," thus requiring a more rigorous framework for examining its admissibility, including a concurrent analysis under Rule 403. Daubert, 509 U.S. at 595. Accordingly, the trial judge acts as a gatekeeper.

In short, under Rule 702, the Court must actually engage in two separate but interrelated inquiries. The first inquiry focuses on the overall admissibility of an expert's testimony. The second focuses on the reliability and scientific or technical validity of the proposed testimony. United States v. Abreu, 406 F.3d 1304, 1306 (11th Cir. 2005), to ensure that "an expert's testimony, whether scientific or non-scientific, rests on a reliable foundation and is relevant to the task at hand." Haddad v. Rav Bahamas, Ltd., 2008 WL 5203599 at *3 (S.D. Fla. Nov. 12, 2008) (citing Kumho Tire Co. v. Carmichael, 526 U.S. 137, 141, 148-49 (1999)).

The Eleventh Circuit has indicated that the admissibility test focuses on three elements: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue. United States v. Frazier, 387 F.3d 1244, 1260 (11th Cir. 2004), cert. denied, 544 U.S. 1063 (2005). The burden of laying a proper foundation for the admission of expert testimony is placed upon the party offering the expert. Daubert, 509 U.S. at 592 n.10; Allison v. McGhan Medical Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Admissibility must also be proven by a preponderance of the evidence. Id. Furthermore, the Eleventh Circuit has stated that even though there is overlap between the basic requirements of qualification, reliability and helpfulness, each requirement remains distinct and "the courts must take care not to conflate them." Frazier, 387 F.3d at 1260; see also Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.., 326 F.3d 1333, 1341 (11th Cir. 2003).

Moreover, Rule 702 specifically mandates expert testimony to have a foundation "based upon sufficient facts or data." Fed. R. Evid. 702. This requires an expert's opinion to be supported by "more than subjective belief and unsupported speculation." Daubert, 509 U.S. at 590. Essentially, the sufficiency of the expert's basis "cannot be divorced from the ultimate reliability of the expert's opinion." Fed. R. Evid. 702 Advisory Committee Notes. To overcome an objection on expert testimony, the expert opinion must be based on a sufficient factual foundation substantiated with facts in the record. Cook v. Sheriff of Monroe County, Florida, 402 F.3d 1092, 1111 (11th Cir. 2005). The testimony proffered "must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590 (citations omitted).

**A.     Dr. Sterba's opinions as the actions and/or inactions of the individual law enforcement defendants should be excluded as he offers inadmissible legal conclusions, and his opinions invade the province of the jury**

While Rule 704(a) allows expert testimony *about facts* that "embrace[] an ultimate issue to be decided by the trier of fact," opinion testimony that "states a *legal* standard or draws a *legal* conclusion by applying law to the facts is generally inadmissible." United States v. McIver, 470 F.3d 550, 561-62 (4th Cir. 2006) (emphasis added; citations omitted). The Eleventh Circuit has been particular rigorous in enforcing this rule. See e.g., Cook v. Sheriff of Monroe County, Florida, 402 F.3d 1092, 1112 n. 8 (11th Cir. 2005) ("an expert witness may not substitute for the court in charging the jury regarding the applicable law" and holding that the plaintiff's doctor expert's testimony that the Monroe County Detention Center "was deliberately indifferent to [the plaintiff] was 'a legal conclusion that does little more than tell the jury what result should be reached' ") (citation omitted); Montgomery v. Aetna Casualty & Surety Co., 898 F.2d 1537, 1541 (11th Cir. 1991) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law") (citations omitted). An expert's testimony violates this principle when the opinion is expressed in words that " 'have a separate and distinct and specialized meaning in the law different from that present in the vernacular.' " McIver, 470 F.3d at 562, quoting United States v. Barile, 286 F.3d 749, 760 (4th Cir. 2002). For example, an expert cannot testify that a defendant's actions constituted "extortion", Dibella v. Hopkins, 403 F.3d 103, 121 (2nd Cir. 2005), or that a dog's bite constituted "deadly force." Miller v. Clark County, 340 F.3d 959, 963 n.7 (9th Cir. 2003).

For the Plaintiff to prevail on Counts II, III and IV, the jury must find that the force used by Deputies Mangrum, Newman and/or Robinson was excessive or unreasonable. See 11th Circuit

7

pattern jury instruction (2.2 Civil Rights 42 U.S.C.§1983 Claims 4th Amendment Claim - Excessive Force). Here, Dr. Sterba, admittedly who is not a law enforcement or a police practices expert (see Exhibit C, pg.227/ln.22-pg.228/ln.2), has opined that Mr. Docher's injuries were the result of excessive force caused directly by the deputies, (See Exhibit C, pg.233/lns.13-19), and that "there was excessive force applied to asphyxiate the patient into unconsciousness." (Id., pg.261/lns.2-4). Excessive force is a legal term and not a medical term. His opinion that the force used was excessive amounts to a legal conclusion. If Dr. Sterba is permitted to so testify, he will undoubtedly instruct the jury what it should find as to Counts II, III and IV. This is testimony which is not admissible, and his opinion should be stricken.

For the Plaintiff to prevail on Counts VI, VII and VIII which contain claims for failure to intervene against Defendants Newman, Mangrum and Robinson, the jury must find that they were present at the scene and failed to take reasonable steps to protect Mr. Docher from another officers' use of excessive force. See Priester v. City of Riviera Beach, Florida, 208 F.3d 919 (11th Cir. 2000); Fundiller v. City of Cooper City, 777 F.2d 1436 (11th Cir. 1985). Here, Dr. Sterba will attempt to testify at trial that deputies used excessive force on Mr. Docher, hence violating his constitutional rights, and that Deputy Robinson and Deputy Newman, individually and collectively, acted with reckless disregard to not protect the life of Tavares Docher by not stopping Deputy Mangrum from asphyxiating (suffocating) Tavares Docher into unconsciousness with "respiratory insufficiency" and hypoxemia (low blood oxygen).  (See Exhibit A, pg.31). He is further expected to testify that "they did not act to protect the life and wellbeing of Docher. They are responsible for this as well." (See Exhibit C, pg.239/lns.2-10). If permitted, Dr. Sterba will also tell the jury that deputy Robinson failed in the line of duty to protect the life of Tavares Docher by not stopping Deputy Mangrum from

8

asphyxiating Docher. (See Exhibit A, pg.22; exhibit C, pg.252, lns.11-15). Such testimony from this medical expert, who is not a police procedures expert, and is not qualified to testify regarding law enforcement actions, would undoubtedly instruct the jury what its finding should be on these counts. Such testimony is not admissible and it should not be permitted.

For the Plaintiff to prevail on Counts XVI, XVII and XVIII, which contain state law battery claims against Defendants Newman, Robinson and Mangrum, the jury will necessarily have to find that the defendants acted in bad faith or with malicious purpose or in a manner exhibiting wanton and reckless disregard of human rights, safety, or property." Fla. Stat.768.28(9)(a). Dr. Sterba should not be permitted to testify that the deputies acted with reckless disregard to Mr. Docher's life, as this is clearly a finding that needs to be reached by the jury from the evidence presented.

Dr. Sterba's testimony mentioned above "does little more than tell the jury what result should be reached" and, therefore, far exceeds the range of permissible expert "medical" testimony. Cook, 402 F.3d at 1112, n.8. Therefore, the Court should bar Dr. Sterba from rendering such opinions.

**B. Dr. Sterba's opinion that Deputy Mangrum asphyxiated Mr. Docher by using an "unapproved, non-taught restraining method" should be excluded because his opinions are not reliable.**

"Qualifications alone do not suffice. A supremely qualified expert cannot waltz into the courtroom and render opinions unless those opinions are reliable and relevant under the test set forth by the Supreme Court..." Clark v. Takata Corp., 192 F.3d 750, 759 n.5 (7th Cir. 1999). Reliability is based upon scientific validity. Daubert, 509 U.S. at 590 n.9. Thus, "an expert's bald assertion of validity is not enough. Rather, the party presenting the expert must show that the expert's findings are based on sound science, and this will require some objective, independent validation of the expert's methodology." Daubert v. Merrill Dow Pharmaceuticals, 43 F.3d 1311, 1316 (9th Cir. 1995).

9

"A Daubert analysis on an expert's methodology, therefore, focuses on the expert's method in forming opinions and asks the question is the expert's method reliable? In other words, are the expert's opinions trustworthy?" J&V Dev., Inc. v. Athens-Clarke County, 387 F.Supp.2d 1214, 1224 (M.D.Ga. 2005); see also McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253 (11th Cir. 2002). Therefore, "an expert may not testify where [his] testimony rests on faulty assumptions." Total Containment, Inc. v. Dayco Products, Inc., 2001 WL 1167506 *4 (E.D.Pa. Sept.6, 2001).

While Daubert dealt with scientific evidence, in Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), the Supreme Court expanded the Daubert analysis to include non-scientific expert testimony. The Court stressed that "the importance of Daubert's gatekeeping requirement ... is to ensure the reliability and relevancy of expert testimony ... [and] make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." Id at 152. Thus, with respect to any kind of expert testimony, the court must "ensure that speculative, unreliable expert testimony does not reach the jury." McCorvey, 298 F.3d at 1256. In addition, "[r]elevant expert testimony is admissible only if an expert knows of facts which enable him to express a reasonably accurate conclusion. U.S. v. City of Miami, Fla., 115 F.3d 870, 873 (11th Cir. 1997). Thus, if an expert's opinion is based upon conjecture or speculation, or an assumption that is not supported by the record, it may be stricken. Fedorcyzk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 75 (3rd Cir. 1996).

The Plaintiff cannot satisfy the reliability element here as to his opinion that Deputy Mangrum asphyxiated (suffocated) Mr Docher into unconsciousness, "respiratory insufficiency" and hypoxemia by using his own improvised, un-approved and non-taught restraining method of stepping

on Mr. Docher's chest while simultaneously pulling his handcuffed arms straight up behind his back in a reverse-hanging. (See Exhibit A, pg.31; Exhibit C, pg.246/lns.8-15). To support his opinion that this was what he calls "reverse hanging", Dr. Sterba provided several pictures illustrating reverse hanging. (See Exhibit 5 to Exhibit C). He testified that the entire point to reverse hanging is that there is actually hanging of the body from objects as depicted in the pictures, and admitted that there was no hanging in Mr. Docher's incident. (See Exhibit C, pg.206/lns. 2 - 7, pg. 206/ln. 17 - pg. 207/ln. 1). Nonetheless, he maintains his opinion that this was reverse hanging by resorting to speculation that had Mangrum not stepped on Mr. Docher's chest he would have been lifted off the ground. (See Exhibit C- pg.208/lns.19-22). This opinion is based upon conjecture and speculation, and is clearly an assumption not supported by the record and therefore should be stricken. Regardless of what he believes *would have* happened, Mr. Docher was *in fact* not hanging off the ground at any point while his handcuffed arms were lifted behind his back.

While Dr. Sterba testified that he has personal experience with reverse hanging (See Exhibit C- pg.246/lns.17-20), he claims that he is not permitted to testify as to what that personal experience is which led him to opine that what Deputy Mangrum did was reverse hanging. (See Exhibit C- pg.247/lns. 3-10). Thus, as the jury will not have the benefit of hearing about Dr. Sterba's personal experience on reverse-hanging, and the pictures he uses to support his positions do not illustrate what occurred with Mr. Docher, Dr. Sterba's opinion is not reliable, and it will stand only to confuse the jury. Thus, the Defendants request that the Court prohibit Dr. Sterba from testifying that Deputy Mangrum asphyxiated (suffocated) Mr. Docher into unconsciousness, "respiratory insufficiency" and hypoxemia by using his own improvised, un-approved and non-taught restraining method of stepping

11

on Mr. Docher's chest while simultaneously pulling his handcuffed arms straight up behind his back in a reverse-hanging."

C.     **The Court should exclude Dr. Sterba's testimony since it is based on assumptions contradicted by record evidence.**

In evaluating an expert opinion's relevance, Daubert's gatekeeping function requires that there be an analytical "fit" between an expert's offered opinions and the facts of the case. Daubert at 591. An expert witness may not ignore inconvenient facts or base opinions on assumptions contradicted by record evidence:

> Trained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the ipse dixit of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.

General Electric Co. v. Joiner Electric Co. v. Joiner, 522 U.S. 136, 147 (1997); see also Chikovsky v. Ortho. Pharm. Co., 832 F.Supp. 341, 345-46 (S.D.Fla. 1993) (excluding expert testimony for failure to base opinion on sufficient facts or data); Elock v. Kmart Corp., 233 F.3d 734, 755 (3rd Cir. 2000) (excluding expert testimony based on assumption without factual predicate as a "castle made of sand"); Tyger Constr. Co. v. Pensacola Constr. Co., 29 F.3d 137, 142 (4th Cir. 1994) ("An expert's opinion should be excluded when it is based on assumptions which are speculative and are not supported by the record").

In reaching his opinions, Dr. Sterba created a timeline of the events by solely using CVS store surveillance video with the vantage point of looking out to the parking lot, and the cell phone video of a civilian who was in the parking lot. (See Exhibit C-pg.211/ln.6 - pg. 213/ ln.10). However, he admitted that the timeline he created is strictly based on his observations and interpretations, and

while he suspects the times reflected on both videos match up, he does not know if the time on the CVS store's video or the cell phone was calibrated with the actual time. (See Exhibit C-pg.227/lns.4-18). Further, he admits that he does not have expertise in video enhancement. (Id. pg.214/lns.4-6). Thus, the timeline he created to support his opinions is not reliable.

Dr. Sterba's timeline also contains entries such as Docher "groans", "gasps", "shallow gasping breath sounds", however he admits that this is solely his interpretation that Docher was groaning and gasping. (See Exhibit C-pg.216/lns.20-22). He attributes the statement "F***ing stop moving!" to being said by Deputy Mangrum. (See Exhibit C, pg. 256/lns. 3 -11). However, Dr. Sterba admits that at times in the video there are background voices that can be heard, that at times one cannot see the deputies' mouths or Mr. Docher, that depending on how the deputies are positioned one is not able to see what everyone is doing every second. (See Exhibit C-pg.217/lns.9-20).Dr. Sterba's testimony that it was deputy Mangrum that made that statement, and that he exhibited uncontrollable rage as he said that, is simply speculation. Allowing him to testify to such, would only confuse and improperly influence the jury. The video evidence speaks for itself, and the jury will be able to view the videos, and listen to the audio and make its own finding as to who said what.

In his timeline, Dr. Sterba also notes that Docher said "I can't brr…". (See Exhibit A- pg.34). Dr. Sterba's opinion is that Mr. Docher tried to say "I can't breathe" but ran out of air and all he got out is "I can't brr..". (See Exhibit C-pg.220/lns.3-9). However, he did admit and noted in his timeline that after saying "I can't brr…", Docher said other one word sentences such as "Help", "Alright", "Ok". (Id., pg.221/lns.1-12). Just like his opinion as to the statement allegedly made by deputy Mangrum, his opinion as to what Docher wanted to say is pure speculation and should not

13

be permitted, especially when the jurors will be able to make their own determination as to what was said and what it meant. Dr. Sterba does not have any expertise in video enhancement, and so his view and interpretation of what is seen and heard is in no way more superior to the ability of the juror to do just that, and his interpretation will in no way assist the jury in understanding what they are looking at and hearing in the video.

The motion should be granted.

## LOCAL RULE 7.1(a)(3) CERTIFICATION

Counsel for the Defendants has conferred with Plaintiffs' counsel regarding the issues raised in the instant motion and it is opposed by the Plaintiff.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **ADAM S. HECHT, ESQUIRE,** Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, ash@searcylaw.com, axs@searcylaw.com; mal@searcylaw.com; jcx@searcylaw.com, **HUGH L. KOERNER, ESQUIRE**, Hugh L. Koerner, P.A., Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021, hlklaw@hughkoerner.com, and **BENJAMIN W. NEWMAN, ESQUIRE,** Wilson Elser Moskowitz Edelman & Dicker, LLP, 111 N. Orange Ave., Suite 1200, Orlando, FL 32801, ben.newman@wilsonelser.com; julie.tyk@wilsonelser.com this **6th** day of October, 2017.

                                             PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
                                             Attorneys for Defendants Newman, Mangrum, Robinson, Courtemanche and Sheriff
                                             2455 East Sunrise Boulevard, Suite 1216
                                             Fort Lauderdale, Florida 33304
                                             Telephone (954) 462-3200
                                             Telecopier (954) 462-3861
                                             Email: summer@purdylaw.com
                                                               melissa@purdylaw.com

                               BY        ___*s/ Summer M. Barranco*___
                                                      SUMMER M. BARRANCO
                                                     Fla. Bar No. 984663