UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother and
legal guardian,

   Plaintiff(s),

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as Sheriff of St. Lucie County,
Florida, JOSE ROSARIO, individually, and
the ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

   Defendant(s).
_____/

CASE NO.: 2:16cv14413

### DEFENDANTS', JOSE ROSARIO AND THE ST. LUCIE COUNTY FIRE DISTRICT, MOTION TO EXCLUDE CAUSATION OPINIONS BY DR. CRAIG LICHTBLAU AND INCORPORATED MEMORANDUM OF LAW

Defendants, JOSE ROSARIO ("Rosario") and ST. LUCIE COUNTY FIRE DISTRICT ("SLCFD"), by and through their undersigned attorneys, serves this Motion to Exclude Opinions of Craig Lichtblau, M.D., requesting an Order excluding causation opinions of Dr. Craig Lichtblau pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1992). In support states the following:

**INTRODUCTION**

1. On August 11, 2016, Plaintiff filed an Amended Complaint. The twenty count Amended Complaint asserted claims against Rosario and SLCFD. Specifically, Count X

(First Amendment Retaliation against Rosario), Count XI (Fourteenth Amendment Due Process), Count XII (Fourteenth Amendment Deliberate Indifference), Count XIX (Florida State law Negligence against SLCFD) and Count XX (Florida State law Negligence against Rosario). [DE1].

2. On May 5, 2017, Plaintiff filed her Initial Expert Disclosure disclosing five (5) experts, including Dr. Craig Lichtblau. [DE 40]

3. Dr. Craig Lichtblau prepared two Expert Reports pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. A copy of Dr. Lichtblau's December 13, 2016, report is attached hereto as **Exhibit A**. A copy of Dr. Lichtblau's February 18, 2017 report is attached hereto as **Exhibit B**.

4. On June 6, 2017, Plaintiff filed a Second Amended Complaint. The twenty-one count Second Amended Complaint asserted claims against Rosario and SLCFD. Specifically, Count X (First Amendment Retaliation against Rosario), Count XI (Fourteenth Amendment Due Process), Count XII (Fourteenth Amendment Deliberate Indifference), Count XIX (Florida State Law Negligence against SLCFD), Count XX (Florida State Law Negligence against Rosario) and Count XXI (Policy, Custom and Procedure against SLCFD). [DE 60]

5. In his report, Dr. Lichtblau states the following causation opinions[1]:

> 9. History of cardiopulmonary resuscitation with electrocardioversion to a normal sinus rhythm, secondary to the administration of Ativan by Emergency Medical Services during an arrest by law enforcement on 05/11/14.

---

[1] This Motion does not challenge Dr. Lichtblau's diagnoses rather the focus of this Motion is solely as to his causation opinions at the end of each diagnosis (i.e. "secondary to the administration of Ativan").

10. History of endotracheal intubation, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

11. History of rhabodomyolysis diagnosed on 05/11/14, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

12. History of metabolic acidosis, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

13. History of seizures, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

14. History of acute respiratory failure requiring mechanical ventilation, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

15. History of venous line placement on 05/12/14, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

16. History of anoix brain injury, diagnosed on 05/14/14, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

17. History of pneumonia, status-post mechanical ventilation, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

18. History of severe bilateral cerebral edema, demonstrated on MRI of his brain obtained on 05/16/14, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

19. History of persistent vegetative state, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

20. History of global hypoic encephalopathy, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

21. History of diffuse abnormal diffusion restriction involving his cortex, subcortical white matter, cerebral hemispheres, and basal ganglia bilaterally, compatible with diffuse anoxia; persistent diffuse sulcal effacement, basilar cistern effacement and abnormal contour of his mid brain, stable since prior examinations; diffuse leptomenigeal enhancement on post contrast imaging' and bilateral mastoid cell effusions, demonstrated on MRI of the brain with and without contrast performed on 05/17/14, secondary to the cardiac arrest, secondary to

> the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 22. History of tracheostomy, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 23. History of gastrostomy tube insertion, performed on 05/21/14 by Dr. Scott Altschuler, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 24. Status-post exploration of tracheostomy and ligation of bleeder vessels performed by Dr. Adam Kurtin on 05/26/14, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 25. History of chronic respiratory failure, secondary to anoxic brain injury, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 26. History of dysphasia, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 27. History of transaminitis, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 28. History of evidence of diffuse global bilateral cerebral dysfunction, consistent with a toxic metabolic infection or hypoxic condition, demonstrated on electroencephalogram (EEG) performed on 08/12/14, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.
> 29. Acute functional decline requiring dependence on other people for survival in his environment, secondary to severe anoxic brain injury, secondary to the cardiac arrest, secondary to the administration of Ativan during an arrest by law enforcement on 05/11/14.

*See* Exhibit A pages 5-7, Vocational Position Statement pages 1-3, AMA Impairment Rating pages 1-3, Functional Assessment pages 1-3 and Summary Report pages 3-4. *See* Exhibit B pages 4-5 and Updated Summary Report pages 3-5.

6. In his report, Dr. Lichtblau states the following opinion as to life expectancy:

> It is my medical opinion that because of medical advances are progressing each year, it is not probable but is possible that this patient could live greater than 20 years.

*See* Exhibit A page 10 and Summary Report page 7.

7. Dr. Lichtblau states that "it is possible that this patient may progress to a minimally conscious state; however, I cannot say that this is more probable than not. *See* Exhibit A page 10.

8. Finally, in his report Dr. Lichtblau's Continuation of Care contains numerous medical care recommendations without a cost for that item as Dr. Lichtblau states that he is "unable to obtain costs with medical certainty." *See* Exhibit A Continuation of Care – Model I pages 5-6, Continuation of Care – Model II pages 5-6.  *See* Exhibit B Updated Continuation of Care – Model I pages 5-6, Updated Continuation of Care – Model II pages 5-6.

## II. UNDERLYING FACTS

On May 11, 2014, at approximately 6:03 p.m., uniform patrol deputies with the St. Lucie County Sheriff's office were dispatched to the CVS pharmacy located at 301 NW Prima Vista Boulevard in referenced to a 911 hang-up call inside the store. Deputy Newman, Deputy Mangrum and Deputy Robinson, arrived on scene and they began to interact with Tavares Docher ("Docher"). Following their interaction, Docher was handcuffed and placed into the back seat of a marked patrol car. He was seated in the back seat with his feet still outside the car. While attempting to get him completely into the car, he jumped out and attempted to flee. The deputies grabbed Docher and they all fell to the ground.

While on the ground, Docher continued to resist by flailing around, kicking his legs and attempting to bite the deputies. At some point during the altercation, Docher received a laceration over his left eye. Fire Rescue was summoned and back-up was also called. The deputies on scene began to render aid to Docher until fire rescue arrived.

At 18:29:56, the SLCFD received an emergency trauma call to respond to the CVS Drug Store parking lot at 301 NE Prima Vista Boulevard, Port St. Lucie, FL 34983. Rescue 3 was dispatched at 18:30:12. A-Shift Lead Crew Member Rosario and Thomas Sinclair ("Sinclair") were on board. Rosario was the primary paramedic on the call. Rosario and Sinclair arrived on scene at 18:34:00. At 18:36:00, Rosario began assessing the situation and Docher.

Docher was initially assessed by Rosario at 18:36:00. Rosario noted that Docher's breathing quality was fast 20 – 30, the venous hemorrhage controlled by PTA (Prior to arrival), extremities normal, central body color normal, mucous membrane normal, and airway, breathing quality, muscle use, chest rise, skin temp, skin turgor and cap refill were all within normal limits. One deputy reported that alcohol had been involved. However, Rosario denied smelling alcohol on Docher at the scene and was not sure if Docher had been drinking. Docher had a laceration on the right side of his head with minimal to no bleeding. Docher's nose and mouth had fresh blood on them. He was lying on his side with his head surrounded by a pool of blood and deputies subduing him. Docher was still active while the deputies were on him.

At 18:38 Rosario noted that Docher had a pulse of 110 regular and rapid, respirations 28, respiratory effort normal and Docher responsive to painful stimuli.

At 18:39 Rosario and Sinclair attempted to place Docher on a backboard. However, Docher was very combative and would not stay on the backboard. Docher kicked Rosario causing him to fall backwards. At 18:40:00, due to the Docher's combative nature, he was administered 4 mg of Ativan intramuscular in his right buttocks. The SLCFD's policy allows

for sedation of combative patients. The policy allows for Ativan 1 mg increments to a max of 4 mg without physician consult. Alcohol is not one of the contraindication listed on the FDA approved Package Insert for Ativan. Rosario testified that that he was not aware of alcohol being a contraindication to Ativan.

At 18:43:00, it was determined that Docher had no pulse, was not breathing and was in cardiac arrest (asystole). CPR was begun. A King Airway was used for immediate airway control. An IV was placed in Docher's jugular and he was given 1 mg of Epi and 50 mEq of Sodium Bicarb. Docher was successfully defibrillated and more CPR administered. At 18:47:45, Docher was transported in Rescue 3 to St. Lucie Medical Center.

Docher had return of spontaneous circulation before being turned over to St Lucie Medical Center Emergency Room staff at 18:56:10. Laboratory testing at St. Lucie Medical Center revealed that Docher had a blood alcohol level of .038. A Brain CT without contrast was negative (no depressed skull fracture).

### III. MEMORANDUM OF LAW

#### A. Standards for Admissibility

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the produce of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court held that district courts must act as gatekeepers, admitting expert testimony only if it is both reliable and relevant. 111 S. Ct. 2786, 2799 (1993); *Finestone v. Florida Power and Light Co.*, 272 Fed. Appx. 761 (11th Cir. 2008). *Daubert*'s gatekeeping function requires "rigorous" analysis and its importance "cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The court's gatekeeper role "inherently require[s] the trial court to conduct an exacting analysis" of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702. *Id*. Each step of the expert's analysis must be demonstrated to be reliable; if any step fails the *Daubert* test, the entire testimony is inadmissible. *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). *Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). This gatekeeping role is significant because an expert's opinion can be both powerful and quite misleading. *Payne v. C.R. Bard, Inc.*, 606 Fed. Appx. 940 (M.D. Fla. 2014) (*quoting United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court expanded *Daubert* to all expert testimony and found *Daubert* allows the court to exclude evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157. See also *McDowell v. Brown*, 392 F.3d 1283, 1301-02 (11th Cir.2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions…."). The party offering the expert opinion testimony bears the

burden of establishing, by a preponderance of the evidence, the expert's qualifications, reliability and helpfulness. *Payne*, 606 Fed.Appx. at 940.

The Eleventh Circuit has set forth a "three part inquiry to determine the admissibility of expert testimony under Fed. R. Evid. 702." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333 (11th Cir. 2003):

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Additionally, the courts have developed a non-exclusive list of inquiries to assess reliability. These include whether the expert's theory can be tested, has been tested, and has been subjected to peer review; the known or potential rate of error; whether the theories are generally accepted; whether an expert has properly accounted for alternative explanations; whether the conclusions grow out of the expert's own research; whether the opinions were prepared with the same care as they would have been outside of litigation; and whether the opinions would assist the trier of fact. *Daubert*, 509 U.S. at 593-94; *Kumho*, 526 U.S. at 154-55.

The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies the requirements for admissibility. *See Daubert*, 509 U.S. at 592 n.10; *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). An expert for one purpose is not an expert for all purposes. "Even where a

witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony." 29 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6265 (3rd ed.); *see Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (Stating "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."); *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) (stating "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.")

This burden must be met a preponderance of proof that the reasoning or methodology underlying testimony is scientifically valid and applicable to the facts at issue. *Oddi v. Ford Motor Co.*, 234 F.3d 136 (3rd Cir. 2000).

Moreover, a trial court is not required to admit opinion evidence "that is connected to existing data only by the *ipse dixit* of the expert;" it's "gate keeping function requires more than simply 'taking the expert's word for it." *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005). *See also U.S. v. Frazier*, 387 F. 3d 1244, 1261 (2004).

> Something doesn't become 'scientific knowledge' just because it's uttered by a scientist; nor can an expert's self-serving assertion that his conclusions were ' derived by the scientific method' be deemed conclusive… the experts bald assurance of validity is not enough. Rather, the party presenting the expert must show that the expert' s findings are based on sound science, and this will require some objective, independent validation of the expert' s methodology.

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315-16 (9th Cir. 1995) (hereinafter, "Daubert II").

Pursuant to *Kilpatrick v Breg, Inc.*, 613 F. 3d 1336 (11th Cir. 2010), the methodology used to find specific causation is differential diagnosis. *Id*. The method requires a process of compiling, or ruling in, a comprehensive list of possible causes that are generally capable of causing the illness or disease at issue, and then systematically and scientifically ruling out specific causes until a final, suspected cause remains. *Id*. See also *Hendrix*, 609 F. 3d at 1197 (indicating that "an expert must provide reasons for rejecting alternative hypotheses using scientific methods and procedures and the elimination of those hypotheses must be founded on more than subjective beliefs or unsupported speculation").

"The determination of general causation involves medical and scientific literature review and the evaluation of epidemiological data, toxicological data, and dose– response relationships." John B. Wong et al., *Reference Guide on Medical Testimony, in* Reference Manual on Scientific Evidence, 735 (Federal Judicial Center, 3d ed. 2011) (herein after "Reference Manual").

### B. Dr. Lichtblau's Causation Opinions are Unreliable under *Daubert*, Rule 702 and Case Law

Plaintiff attempts to admit the testimony of Dr. Craig Lichtblau in order to establish causation as to Docher's various medical diagnoses and the Ativan injection by Rosario on May 11, 2014. However, Dr. Lichtblau's causation opinions cannot be admitted because they are unreliable. Dr. Lichtblau offers no basis for his opinions that the Ativan injection on May 11, 2014, caused or contributed to any of Docher's medical diagnoses.

An expert must reliably apply the science to the facts of the case and specifically explain how and why he reached his conclusions; otherwise, the opinions should not be admitted. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1226 (10th Cir. 2003). An expert opinion is not admissible when the only connection between the conclusion and the existing data is the expert's own assertion. *McDowell v. Brown*, 392 F.3d. 1283, 1300 (11th Cir. 2004). (*citing General Electric v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512 (1997)); *see Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) (holding that nothing in either Daubert or the Federal Rules of Evidence requires a District Court to admit opinion evidence which is connected only to existing data only by the *ipse dixit* of the expert). To warrant admissibility, the expert's testimony must be derived from his/her scientific, technical, or otherwise specialized knowledge, and "the word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. Moreover, the party offering the expert testimony carries the burden of laying the proper foundation, and admissibility must be shown by a preponderance of the evidence. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999).

"An expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient." *McClain.*, 401 F. 3d at 1253. The court in *Black v. Food Lion, Inc.*, 171 F. 3d 308, 314 (5th Cir. 1999), stated "the underlying predicates of any cause and effect medical testimony are that medical science understands the physiology process by which a particular disease or syndrome develops and knows what factors cause the process to occur." Dr. Lichtblau has not offered any explanation of the physiological process by which Ativan caused or

contributed to any one of the Docher's medical diagnoses. There is no evidence of any research, studies, comprehensive lists of alternative cases, and/or tests done by Dr. Lichtblau. In this case, Dr. Lichtblau has employed no methodology in rendering any of his causation opinions with respect to Ativan as a cause of Docher's various medical diagnoses.

Courts have repeatedly cautioned that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Id*. Expert's testimony in the form of conclusory statements without any factual or analytical support is insufficient to carry the proponent's burden. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1113 (11th Cir. 2005). Dr. Lichtblau may not rely on his experience alone to form opinions based solely on his own *ipse dixit*. This type of expert testimony is inadmissible under Rule 702. *See Kumho Tire*, 526 U.S. at 157.

**C. Dr. Licthblau's Opinions on Damages and Life Expectancy Must Be More Probable Than Not**

When it comes to medical opinion evidence, it is well settled that same may not be speculative, must be more probable than not, and must be based upon a reasonable degree of medical probability. *Free v. Baker*, 469 Fed.Appx. 786, 791 (11th Cir. 2012); *Mann v. Taser International, Inc.*, 588 F.3d 1291, 1304 (11th Cir. 2009); *see also Truelove v. Blount*, 954 So.2d 1284 (Fla. 2nd DCA 2007); *Kloster Cruise Ltd. v. Grubbs*, 762 So.2d 552 (Fla. 3rd DCA 2000).

It is well-settled in Florida law that damages for future medical expenses must be proven with reasonable certainty. *Loftin v. Wilson*, 67 So. 2d 185, 188 (Fla. 1953) ((emphasis

added)); *see also Auto-Owners Ins. Co. v. Tompkins*, 651 So. 2d 89, 91 (Fla. 1995); *Grainger v. Fuller*, 72 So. 462 (Fla. 1916).

This is consistent with the standard for imposing future economic damages:

> [A]n award of future economic damages ... is appropriate only when such damages are established with *reasonable certainty*.
>
> In every case, plaintiff must afford a basis for a reasonable estimate of the amount of his loss and only medical expenses which are reasonably certain to be incurred in the future are recoverable. It is a plaintiff's burden to establish that future medical expenses will more probably than not be incurred. That burden may only be met with competent substantial evidence. There must be evidence in the record from which the jury could, with reasonable certainty, determine the amount of medical expense [plaintiff] would be likely to incur in the future. A mere possibility that certain treatment might be obtained in the future cannot form the basis of an award of future medical expenses.

*Fasani v. Kowalski,* 43 So.3d 805, 812 (Fla. 3d DCA 2010) (internal citations and quotation marks omitted).

Here, Dr. Lichtblau provides no substantiated scientific opinions within a reasonable degree of medical probability that (1) Docher will live greater than 20 years; (2) Docher will progress to a minimally conscious state or (3) medical costs contained within his Continuation of Care Models I & II will be incurred.

## IV. CONCLUSION

Dr. Craig Lichtblau, has failed to employ the kind of methodology required by *Daubert* for his causation opinions. Dr. Lichtblau's causation opinions are inadmissible as they failed to use competent and reliable facts and data. His opinions as to life expectancy

and damages are not more probably than not but rather mere possibilities and should therefore be excluded.

WHEREFORE, Defendants, JOSE ROSARIO and ST. LUCIE COUNTY FIRE DISTRICT, respectfully request this Court grant their motion and prevent Dr. Lichtblau from offering his causation opinions regarding Ativan at trial as it does not meet the admissibility standards if section Rule 702 and *Daubert* and exclude his opinions as to life expectancy and damages that are mere possibilities as contained within his Expert Reports and any other relief the Court deems proper and just.

### 7.1(a)(3) STATEMENT

Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and Plaintiff thereby objects.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 6th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system to the following: **Adam Hecht, Esq.,** *(Attorneys for Plaintiff)* ash@searcylaw.com, axs@searcylaw.com, mal@searcylaw.com, jcx@searcylaw.com, lewisteam@searcylaw.com, Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, FL 33409  Florence@cushniemcmahonlaw.com, Cushnie & McMahon, PL, 543 NW Lake Whitney Place, Suite 106, Port St. Lucie, FL 34986; **Summer M. Barranco, Esq.,** *(Attorneys for Christopher Newman, Claylan Mangrum, Calvin Robinson, Wade*

*Courtemanche,* and Ken J. Mascara, as Sheriff of St. Lucie County, Florida) summer@purdylaw.com; Melissa@purdylaw.com; Law Offices of Purdy, Jolly, Giuffreda & Barranco, P.A., 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, FL 33304.

        ***/s/BENJAMIN W. NEWMAN***
BENJAMIN W. NEWMAN, ESQUIRE
Florida Bar No.: 0011223
JULIE A. TYK , ESQUIRE
Florida Bar No.: 84493
Wilson Elser Moskowitz Edelman & Dicker, LLP
111 N. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 203-7599
Fax: (407) 648-1376
Ben.Newman@wilsonelser.com
Julie.Tyk@wilsonelser.com

Counsel for Defendants, JOSE ROSARIO and ST. LUCIE COUNTY FIRE DISTRICT