UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother and
legal guardian,

        Plaintiff(s),

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as Sheriff of St. Lucie County,
Florida, JOSE ROSARIO, individually, and
the ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

        Defendant(s).
_____/

CASE NO.: 2:16cv14413

**DEFENDANTS', JOSE ROSARIO AND ST. LUCIE COUNTY FIRE DISTRICT,
MOTION TO EXCLUDE OPINIONS OF BRIAN G. MCALARY, M.D. AND
INCORPORATED MEMORANDUM OF LAW**

        Defendants, JOSE ROSARIO ("Rosario") and ST. LUCIE COUNTY FIRE DISTRICT ("SLCFD"), by and through their undersigned attorneys, serves this Motion to Exclude Opinions of Brian G. McAlary, M.D., requesting an Order excluding certain opinions of Dr. McAlary pursuant to Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharms, Inc.*, 509 U.S. 579 (1992). In support states the following:

I.    **INTRODUCTION**

        1.    On August 11, 2016, Plaintiff filed an Amended Complaint. The twenty count Amended Complaint asserted claims against Rosario and SLCFD. Specifically, Count X

1

(First Amendment Retaliation against Rosario), Count XI (Fourteenth Amendment Due Process), Count XII (Fourteenth Amendment Deliberate Indifference), Count XIX (Florida State law Negligence against SLCFD) and Count XX (Florida State law Negligence against Rosario). [DE1].

2. On May 5, 2017, Plaintiff filed her Initial Expert Disclosure disclosing five (5) experts, including Dr. Brian McAlary. [DE 40]

3. On May 22, 2017, Plaintiff disclosed Dr. Brian McAlary's Expert Report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. A copy of Dr. McAlary's report is attached hereto as **Exhibit A**.

4. On June 6, 2017, Plaintiff filed a Second Amended Complaint. The twenty-one count Second Amended Complaint asserted claims against Rosario and SLCFD. Specifically, Count X (First Amendment Retaliation against Rosario), Count XI (Fourteenth Amendment Due Process), Count XII (Fourteenth Amendment Deliberate Indifference), Count XIX (Florida State Law Negligence against SLCFD), Count XX (Florida State Law Negligence against Rosario) and Count XXI (Policy, Custom and Procedure against SLCFD). [DE 60]

5. In his report, Dr. McAlary states the following opinions as to Rosario:

> Opinion 1. The administration of four (4) mgm Ativan by intra-muscular injection into the buttocks by Paramedic Rosario some 2-3 minutes prior to noted apena, and without adequate prior assessment of level of consciousness, ability to verbalize, or pulse monitoring to determine if adequately breathing. The four (4) mgm dose of Ativan was as a single bolus without any evidence of pre-injection aspiration or attempts to titrate with incremental administration as called for in the Fire Department Protocol. See Exhibit A page 2.

2

> Opinion 2. The close temporal proximity between the injection of Ativan and the total cessation of breathing was due to a combination of the failure to adequately assess the patient's oxygen level pre-injection, and the failure to administer the Ativan incrementally (i.e. allowing sufficient time between each increment to assess the effect), and the distinct probability of inadvertent and dangerous intravenous injection of part or all of the four (4) mgm dose. See Exhibit A page 2.
>
> Opinion 3. The opinion that there was failure of adequate vigilance and monitoring post bolus injection of Ativan is supported by the non-disputed acknowledgment that the first recognized ventilator insufficient was the total cessation of all breathing, followed shortly thereafter by ECG evidence obtained in the rescue vehicle of a straight line (i.e. asystole), indicating no electrical activity in the heart. The total absence of both of these vital functions at the time of discovery is clear evidence that Mr. Docher was in an unrecognized life compromised status for minutes prior to recognition. Short of a catastrophic event such as a lightning strike, the body does not suddenly deteriorate from a compromised situation to zero breathing and zero electrical activity in the heart.  See Exhibit A page 3.

6. In addition to Dr. McAlary's standard of care opinions aimed at Rosario, he also states the following causation opinion:

> The above findings allow the author of this report to state that Mr. Docher sustained a preventable respiratory arrest due to the summation of head trauma, airway obstruction, compression of ventilator bellow, all secondary to physical restraint by the Sheriff deputies as well as pharmacologic respiratory depression secondary to Ativan, in the setting of previously ingested alcohol. See Exhibit A page 2.

## II. UNDERLYING FACTS

On May 11, 2014, at approximately 6:03 p.m., uniform patrol deputies with the St. Lucie County Sheriff's office were dispatched to the CVS pharmacy located at 301 NW Prima Vista Boulevard in reference to a 911 hang-up call inside the store. Deputy Newman,

3

Deputy Mangrum and Deputy Robinson, arrived on scene and they began to interact with Tavares Docher ("Docher"). Following their interaction, Docher was handcuffed and placed into the back seat of a marked patrol car. He was seated in the back seat with his feet still outside the car. While attempting to get him completely into the car, he jumped out and attempted to flee. The deputies grabbed Docher and they all fell to the ground.

While on the ground, Docher continued to resist by flailing around, kicking his legs and attempting to bite the deputies. At some point during the altercation, Docher received a laceration over his left eye. Fire Rescue was summoned and back-up was also called. The deputies on scene began to render aid to Docher until fire rescue arrived.

At 18:29:56, the SLCFD received an emergency trauma call to respond to the CVS Drug Store parking lot at 301 NE Prima Vista Boulevard, Port St. Lucie, FL 34983. Rescue 3 was dispatched at 18:30:12. A-Shift Lead Crew Member Rosario and Thomas Sinclair ("Sinclair") were on board. Rosario was the primary paramedic on the call. Rosario and Sinclair arrived on scene at 18:34:00. At 18:36:00, Rosario began assessing the situation and Docher.

Docher was initially assessed by Rosario at 18:36:00. Rosario noted that Docher's breathing quality was fast 20 – 30, the venous hemorrhage controlled by PTA (Prior to arrival), extremities normal, central body color normal, mucous membrane normal, and airway, breathing quality, muscle use, chest rise, skin temp, skin turgor and cap refill were all within normal limits. One deputy reported that alcohol had been involved. However, Rosario denied smelling alcohol on Docher at the scene and was not sure if Docher had been drinking. Docher had a laceration on the right side of his head with minimal to no bleeding. Docher's nose and

4

mouth had fresh blood on them. He was lying on his side with his head surrounded by a pool of blood and deputies subduing him. Docher was still active while the deputies were on him.

At 18:38 Rosario noted that Docher had a pulse of 110 regular and rapid, respirations 28, respiratory effort normal and Docher responsive to painful stimuli.

At 18:39 Rosario and Sinclair attempted to place Docher on a backboard. However, Docher was very combative and would not stay on the backboard. Docher kicked Rosario causing him to fall backwards. At 18:40:00, due to the Docher's combative nature, he was administered 4 mg of Ativan intramuscular in his right buttocks. The SLCFD's policy allows for sedation of combative patients. The policy allows for Ativan 1 mg increments to a max of 4 mg without physician consult. Alcohol is not one of the contraindications listed on the FDA approved Package Insert for Ativan. Rosario testified that that he was not aware of alcohol being a contraindication to Ativan.

At 18:43:00, it was determined that Docher had no pulse, was not breathing and was in cardiac arrest (asystole). CPR was begun. A King Airway was used for immediate airway control. An IV was placed in Docher's jugular and he was given 1 mg of Epi and 50 mEq of Sodium Bicarb. Docher was successfully defibrillated and more CPR administered. At 18:47:45, Docher was transported in Rescue 3 to St. Lucie Medical Center.

Docher had return of spontaneous circulation before being turned over to St Lucie Medical Center Emergency Room staff at 18:56:10. Laboratory testing at St. Lucie Medical Center revealed that Docher had a blood alcohol level of .038. A Brain CT without contrast was negative (no depressed skull fracture).

### III. MEMORANDUM OF LAW

#### A. Standards for Admissibility

Rule 702 of the Federal Rules of Evidence governs the admission of expert testimony and provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the produce of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

In *Daubert*, the Supreme Court held that district courts must act as gatekeepers, admitting expert testimony only if it is both reliable and relevant. 111 S. Ct. 2786, 2799 (1993); *Finestone v. Florida Power and Light Co.*, 272 Fed. Appx. 761 (11th Cir. 2008). *Daubert*'s gatekeeping function requires "rigorous" analysis and its importance "cannot be overstated." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). The court's gatekeeper role "inherently require[s] the trial court to conduct an exacting analysis" of the foundations of expert opinions to ensure they meet the standards for admissibility under Rule 702. *Id*. Each step of the expert's analysis must be demonstrated to be reliable; if any step fails the *Daubert* test, the entire testimony is inadmissible. *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1245 (11th Cir. 2005). *Daubert* requires that trial courts act as "gatekeepers" to ensure that speculative, unreliable expert testimony does not reach the jury. *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002). This gatekeeping role is significant because an expert's opinion can be both powerful and quite

misleading. *Payne v. C.R. Bard, Inc.*, 606 Fed. Appx. 940 (M.D. Fla. 2014) (*quoting United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Court expanded *Daubert* to all expert testimony and found *Daubert* allows the court to exclude evidence "that is connected to existing data only by the *ipse dixit* of the expert." *Id.* at 157. *See also McDowell v. Brown*, 392 F.3d 1283, 1301-02 (11th Cir.2004) ("[A]n expert opinion is inadmissible when the only connection between the conclusion and the existing data is the expert's own assertions…."). The party offering the expert opinion testimony bears the burden of establishing, by a preponderance of the evidence, the expert's qualifications, reliability and helpfulness. *Payne*, 606 Fed.Appx. at 940.

The Eleventh Circuit has set forth a "three part inquiry to determine the admissibility of expert testimony under Fed. R. Evid. 702." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.,* 326 F.3d 1333 (11th Cir. 2003):

> (1) [T]he expert is qualified to testify competently regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

Additionally, the courts have developed a non-exclusive list of inquiries to assess reliability. These include whether the expert's theory can be tested, has been tested, and has been subjected to peer review; the known or potential rate of error; whether the theories are generally accepted; whether an expert has properly accounted for alternative explanations;

7

whether the conclusions grow out of the expert's own research; whether the opinions were prepared with the same care as they would have been outside of litigation; and whether the opinions would assist the trier of fact. *Daubert*, 509 U.S. at 593-94; *Kumho*, 526 U.S. at 154-55.

  The burden is on the party offering the proposed expert opinion testimony to prove by a preponderance of the evidence that the testimony satisfies the requirements for admissibility. *See Daubert*, 509 U.S. at 592 n.10; *U.S. v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). An expert for one purpose is not an expert for all purposes. "Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony." 29 Charles A. Wright & Victor J. Gold, Federal Practice and Procedure § 6265 (3rd ed.); *see Berry v. City of Detroit*, 25 F.3d 1342, 1351 (6th Cir. 1994) (Stating "The issue with regard to expert testimony is not the qualifications of a witness in the abstract, but whether those qualifications provide a foundation for a witness to answer a specific question."); *Carroll v. Otis Elevator Co.*, 896 F.2d 210, 212 (7th Cir. 1990) (stating "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony.")

  Accordingly, not all opinions that happen to be held by an expert are "expert opinions." *See U.S. v. Benson*, 941 F.2d 598, 604 (7th Cir. 1991). Opinions falling outside the expert's area of expertise are inadmissible. *See, eg., Watkins v. Schriver*, 52 F.3d 769, 771 (8th Cir. 1995) (holding neurologist's testimony "that the [plaintiffs neck] injury was more consistent with being thrown into a wall than with a stumble into the corner" excluded

8

because doctor had no experience in accident reconstruction or forensic medicine); E*dmonds v. Illinois Central Gulf Railroad*, 910 F.2d 1284, 1287 (5th Cir. 1990) (holding trial court erred in permitting clinical psychologist to testify that stress worsened plaintiffs preexisting heart condition since this was medical, not psychological, issue); *Mid-State Fertilizer Co. v. Exchange Nat'l Bank*, 877 F.2d 1333, 1339-40 (7th Cir. 1989) (rejecting economist's opinion that defendant's conduct was contrary to good faith and fair dealing because such "insights are no part of an economist's armamentarium").

### B. Dr. McAlary is Not Qualified to Render Standard of Care Opinions Against Rosario

Dr. McAlary is a medical doctor board certified in anesthesiology. A copy of Dr. McAlary's curriculum vitae is attached hereto as **Exhibit B**. He retired at the end of 2013 from clinical practice (McAlary Dep. 9:22-10:2, August 4, 2017). A copy of Dr. Brian McAlary's deposition is attached hereto as **Exhibit C**. Dr. McAlary is not board certified in emergency medicine. *See* Exhibit B. He is not board certified in the subspecialty of emergency medical services. *See* Exhibit B. Dr. McAlary has never been a paramedic and as such has no personal experience as a paramedic in the field. *See* Exhibit B. *See* Exhibit C (McAlary Dep. 68:21-69:5). He has never been trained as a paramedic *See* Exhibit B. *See* Exhibit C (McAlary Dep. 69:6-8). Dr. McAlary has never served as a medical director for any emergency medical services organization. *See* Exhibit C (McAlary Dep. 11:18-5). Over twenty years ago, from 1989 to 1994, he held a faulty position through the University of Maryland as an instructor for the pre-hospital community. *See* Exhibit C (McAlary Dep. 11:18-12:18). He has never author any emergency medical services articles, manuals,

textbooks or other similar publications. *See* Exhibit B. None of the cases listed on his deposition and trial testimony list from 2013 to 2016 involved the provision of emergency medical services. *See* Exhibit A page 5. *See* Exhibit C (McAlary Dep. 13:1-6). He has never authored policies, procedures, or protocols for any medical emergency service operation. *See* Exhibit B. Likewise, he has never authored training manuals utilized in any manner by emergency medical services operations for the training and education of their emergency medical services personnel. *See* Exhibit B. It is therefore clear that while Dr. McAlary holds himself out as an expert witness, his actual training, education, and experience as to emergency medical services professionals is extremely limited, if not non-existent, and demonstrates his lack of qualifications to address standard of care opinions as to Rosario as set forth in his Expert Report.

    Not only does Rule 702 as interpreted by *Daubert* seek to insure the reliability of the expert's testimony, it also seeks to verify the qualifications of the expert. *In Re: Polypropylene Carpet Antitrust Litigation*, 93 F. Supp. 2d. 1348, 1352 (N.D. Ga. 2000). Many Courts have excluded the opinions and expert testimony of experts under *Daubert* and is progeny and Rule 702 based on the expert's lack of qualifications. *In Re: Polypropylene Carpet Antitrust Litigation*, 93 F. Supp. 2d. 1348 (N.D. Ga. 2000); *City of Tuscaloosa v. Harcros Chemc., Inc.*, 158 F. 3d 548 (11th Cir. 1998); Joiner v. GE, 78 F. 3d 524 (11th Cir. 1996); *Everett v. Georgia-Pacific Corp.*, 949 F. Supp. 856 (S.D. Ga. 1996); *McLendon v. Georgia Kaolin Co.*, 841 F. Supp. 415 (M.D. Ga. 1994); *Wheat v. Sofamaf, S.N.C.*, 46 F. Supp. 2d. 1351 (N.D. Ga. 1999). It is clear therefore from a careful review of Dr. McAlary's

training, education, and experience that he is not qualified to render the opinions set forth in his Rule 26 Report regarding standard of care (opinions 1-3) as to Rosario.

### C. Dr. McAlary's Testimony Should be Limited to Only the Opinions Included in His Expert Report

The trial of this matter is set on the Court's trial docket beginning January 22, 2018. On May 5, 2017, Plaintiff filed her Initial Expert Disclosure disclosing five (5) experts, including Dr. Brian McAlary. [DE 40]  On May 22, 2017, Plaintiff disclosed Dr. Brian McAlary's Expert Report pursuant to Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure. Dr. McAlary has not supplemented his May 22, 2017, Expert Report.

On August 4, 2017, Dr. McAlary was deposed in this matter. *See* Exhibit C. During the deposition, he testified for the first time as to several opinions not contained within his May 22, 2017, Expert Report. Dr. McAlary testified that in addition to the criticisms contained in his Expert Report concerning the pre-injection assessment he added that "no vital signs were obtained" and that the assessment should have included "auscultation of the chest". *See* Exhibit C (McAlary Dep. 24:11-25:3; 28:11-16). In his deposition, he also testified that it is likely that Docher "became hypercapnic, hypoxic and acidotic with associated medical derangement, making him very vulnerable, along with his antecedent alcohol ingestion, to the respiratory depressant effects of Ativan. . . ." *See* Exhibit C (McAlvary Dep. 28:11-22). Dr. McAlary also testified that the combination of Docher's position (prone) and the restrain maneuvers applied by the deputies would have cause asphyxia. *See* Exhibit C (McAlary Dep. 27:13-28:5). Furthermore, Dr. McAlary testified for the first time that there was a very high probability of concussion when Docher was tackled

11

onto the parking lot surface. *See* Exhibit C (McAlary Dep. 80:2-20). Lastly, for the first time he also testified that it is his opinion that Docher was not taking synthetic cathinones on May 11, 2014. *See* Exhibit C (McAlary Dep. 82:3-21).

The law is well settled that an expert witness cannot testify at trial regarding opinions which were not previously disclosed as part of the expert's written report. Federal Rule of Civil Procedure 26(a)(2)(B)(i) provides that an expert witness's written report *"must contain ... a complete* statement of *all* opinions the witness will express and the basis and reasons for them."* Similarly, S.D. Fla. L.R. 16.1.K requires that an expert witness's written report contain, among other things, "the substance of the facts and all opinions to which the expert is expected to testify...." As the Seventh Circuit observed in *Salgado by Salgado v. General Motors Corporation,* 150 F.3d 735 (7th Cir. 1998):

> Rule 26(a) expert reports must be "detailed and complete." A complete report must include the substance of the testimony which an expert is expected to give on direct examination together with the reasons therefor. The report must be complete such that opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and moreover the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources. Expert reports must not be sketchy, vague or preliminary in nature .... Expert reports must include "how" and "why" the expert reached a particular result, not merely the expert's conclusory opinions .... The "incentive for total disclosure" is the threat that expert testimony not disclosed in accordance with the rule can be excluded pursuant to Rule 37(c)(1). The availability of this sanction "put[s] teeth into the rule."

*Id.* at 746 n. 6 (citations omitted).

Based on these Rules and principles, it is well settled that an expert witness may not testify at trial regarding opinions which were not included or disclosed in the expert's written

12

report. *See, e.g., Osterhouse v. Grover,* 2006 WL 2051301, at *2 (S.D. Ill. July 20, 2006) (because "[a]ll opinions to be expressed must be contained in an expert report .... any opinion that any of the plaintiffs' experts would express at trial is limited to only those opinions found in their respective expert report"); *Dairy Farmers of America, Inc. v. Travelers Ins. Co.,* 391 F.3d 936, 943-44 (8th Cir. 2004) (district court properly excluded opinion of expert that was not disclosed in expert's report); *Nurtrasweet Company v. X-L Engineering Co.,* 227 F.3d 776, 786 (7th Cir. 2000) (approving district court ruling that limited an expert's testimony to the opinions outlined in the original expert report as no supplemental report was filed prior to the expert report deadline); *Bailey v. U.S. Dept. of Transp.,* 2008 WL 918717, at *1 (C.D. Cal. Jan. 10, 2008) (granting motion in limine to prevent expert witness from "offer[ing] opinions at trial that were not contained in his expert report"); *Beller ex rel. Beller v. U.S.,* 221 F.R.D. 689, 695 (D.N.M. 2003) (limiting expert witness's testimony at trial to opinions timely disclosed in original expert report); *see also Cooper v. Southern Co.,* 390 F.3d 695, 728 (11th Cir. 2004) (approving district court's exclusion of plaintiffs' expert's declaration in opposition to summary judgment motion where plaintiffs failed to provide a report containing the expert's opinions). As succinctly stated by the court in *Coles v. Perry,* 217 F.R.D. 1 (D.D.C. 2003):

> The interest served by requiring the disclosure of expert opinions is self evident. It is to prevent unfair surprise at trial and to permit the opposing party to prepare for the expert's cross examination. By "locking" the expert witness into what Fed. R. Civ. P. 26(a)(2)(B) calls "a complete statement of all opinions to be expressed and the basis and reasons therefor," the opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and how to prepare for cross examination and rebuttal. When the expert

> supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified. [The court], therefore, [is] obliged by these rules to strike [any supplemental opinions].

*Id.* at 4.

## IV.   CONCLUSION

Defendants Rosario and SLCFD respectfully request the Court to exclude the standard of care opinions as to Rosario of Plaintiff's proffered expert, Dr. Brian McAlary. Dr. McAlary does not meet the minimum requirements under Rule 702 and *Daubert*, and further, he is simply not qualified to render opinions regarding standard of care, as set forth in his Expert Report in this case. However, if the Court permits Dr. McAlary to testify, the Court should nevertheless limit his testimony to opinions contained within his Expert Report.

WHEREFORE, Defendants, JOSE ROSARIO and ST. LUCIE COUNTY FIRE DISTRICT, respectfully request this Court grant their motion and prevent Dr. McAlary from offering his standard of care opinions as to Rosario at trial as it does not meet the admissibility standards if section Rule 702 and *Daubert* or in the alternative limit his testimony to opinions contained within his Expert Report and any other relief the Court deems proper and just.

### 7.1(a)(3) STATEMENT

Counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in the motion in a good faith effort to resolve the issues raised in the motion and Plaintiff thereby objects.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Clerk of Court using the CM/ECF on this 6th day October, 2017, and furnished a copy to: **Adam Hecht, Esq.,** *(Counsel for Plaintiff)* ash@searcylaw.com, axs@searcylaw.com, mal@searcylaw.com, jcx@searcylaw.com, lewisteam@searcylaw.com, Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, FL 33409; **Summer M. Barranco, Esq.,** (*Counsel for Christopher Newman, Claylan Mangrum, Calvin Robinson, Wade Courtemanche, and Ken J. Mascara, as Sheriff of St. Lucie County, Florida)* summer@purdylaw.com; Melissa@purdylaw.com; Law Offices of Purdy, Jolly, Giuffreda & Barranco, P.A., 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, FL 33304.

*/s/BENJAMIN W. NEWMAN*
BENJAMIN W. NEWMAN, ESQUIRE
Florida Bar No.: 0011223
JULIE A. TYK, ESQUIRE
Florida Bar No.: 84493
Wilson Elser Moskowitz Edelman & Dicker, LLP
111 N. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 203-7599
Fax:    (407) 648-1376
Ben.Newman@wilsonelser.com
Julie.Tyk@wilsonelser.com

Counsel for Defendants, JOSE ROSARIO and ST. LUCIE COUNTY FIRE DISTRICT