UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through                    CASE NO.: 2:16cv14413
JANICE DOCHER-NEELEY, his mother and
legal guardian,

                 Plaintiff(s),

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as Sheriff of St. Lucie County,
Florida, JOSE ROSARIO, individually, and
the ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

                 Defendant(s).

_____/

**DEFENDANT, JOSE ROSARIO'S MOTION FOR SUMMARY JUDGMENT ON
COUNTS X, XI AND XII OF PLAINTIFF'S SECOND AMENDED COMPLAINT AND
INCORPORATED MEMORANDUM OF LAW**

       Defendant, Jose Rosario ("Rosario"), by and through undersigned counsel, and pursuant

to Rule 56, Federal Rules of Civil Procedure, and Southern District of Florida Local Rule

56.1(a), respectfully moves this Honorable Court for an Order entering summary judgment in his

favor as to Counts X, XI and XII of Plaintiff's Second Amended Complaint. The basis for the

Motion is as follows:

       1.     The undisputed facts show that by the time Rosario arrived on the scene to treat

Tavares Docher's ("Docher) injuries, Docher was not speaking or engaging in any non-verbal

acts protected by the First Amendment, nor was he aware of any such speech.  Logically, it

follows that Rosario's act of injecting Docher with Ativan due to his combative nature could not

have been retaliatory, as Docher did not engage in any protected speech throughout their brief

interaction, and Rosario was not made aware of any protected speech prior to sedating Docher. Based on this, Plaintiff's claim for First Amendment Retaliation under Count X of the Second Amended Complaint must fail.

2.      As the undisputed material facts show, Docher was given a sedative due to his combative nature in an emergency situation in order to avoid the risk of further harm to himself or others around him.  There is simply no evidence that Rosario's actions were in any way meant to punish Docher or purposely cause harm in violation of his Due Process rights.  As such, Rosario's motion for summary judgment as to Count XI of the Second Amended Complaint should be granted.

3.      Rosario is entitled to summary judgment as to Count XII of the Second Amended Complaint because the undisputed facts show that that Docher was provided care and treatment by Rosario; Docher's alcohol consumption was not a serious medical need; Rosario was not deliberately indifferent to a serious medical need and Docher was not denied medical treatment.

4.      Rosario incorporates by reference Defendant, Rosario's Statement of Undisputed Material Facts ("Rosario's Undisputed Facts") pursuant to the Court's Order Setting Status Conference, Calendar Call and Trial Date and Order of Reference to Magistrate dated October 17, 2016 [DE 11], filed contemporaneously with this Motion.

## ARGUMENT

### I.      Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides a party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Although a Court must

review the facts drawing all inferences most favorable to the party opposing the motion, the non-movant may not rest on mere allegations or denials in its pleadings. The adverse party's response must set forth specific facts showing that there is a genuine issue for trial. *See Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006). Merely colorable evidence, evidence not significantly probative, or existence of a mere scintilla of evidence "will not defeat a properly supported summary judgment. *See Coghlan v. H.J. Heinz Co.*, 851 F. Supp, 808, 810-11 (N.D. Tex. 1994) *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Issues of fact are genuine only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

## II.     Rosario is Entitled to Qualified Immunity

A central question presented by this Motion is whether Rosario violated clearly established federal law by administering Ativan IM to a combative person who consumed alcohol. The answer to that question—quite clearly—is that he did not violate clearly established federal law. As such, Rosario is entitled to qualified immunity.

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Evans v. Hightower,* 117 F.3d 1318, 1320 (11th Cir.1997) (*quoting Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In addressing claims of qualified immunity, the Eleventh Circuit applies the following two-part analysis: "First, the defendant government official must prove that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. If the defendant meets this burden, the plaintiff must then demonstrate that the defendant violated clearly established law

based upon objective standards." *Evans,* 117 F.3d at 1320 (*citing Hartsfield v. Lemacks,* 50 F.3d 950, 953 (11th Cir.1995). "In order to meet this burden, the plaintiff must demonstrate that the contours of his rights were sufficiently clear so that reasonable officers would have understood that their actions violated his rights." *Evans,* 117 F.3d at 1320 (*citing Swint v. City of Wadley,* 51 F.3d 988, 995 (11th Cir.1995) *and Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful ..., but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson,* 483 U.S. at 640, 107 S.Ct. 3034 *(internal citation omitted); see also Moniz v. City of Fort Lauderdale,* 145 F.3d 1278 (11th Cir.1998). *See Rice-Lamar vs. City of Ft. Lauderdale,* 54 F. Supp.2d 1137, at page 1145 (S.D.Fla. 1998).

The *Taylor v. Adams*, 221 F.3d 1254, 1259 (11th Cir. 2000) case is illustrative of qualified immunity in the context of paramedic emergency medical care. In *Taylor,* firemedics were called to the scene of a shoplifting arrest and asked the arrestee if he required medical help and received a negative response. *Id*. at 1256. The firemedics did not take the decedent's vital signs before leaving the arrest location even though a policeman told a firemedic the decedent complained of stomach pain and a bystander told the firemedics that the decedent had a history of seizures and it appeared that he was about to seize at that very moment. *Id*. at 1258. The arrestee suffered an apparent seizure en route to jail and ultimately died while being transported to the hospital. *Id*. at 1256. On those facts, this Court found that the plaintiff failed to show a punitive intent in the form of deliberate indifference, and granted qualified immunity to the firemedics. *Id*. at 1258.

It is beyond dispute that Rosario was acting within the scope of his discretionary authority as a paramedic at the time he engaged in the actions that gave rise to Plaintiff's claims against him. The conduct at issue here involved the treatment and transportation decisions of paramedics providing emergency medical care and basic life support services. This is not an area of law where the courts have readily provided guidelines establishing the parameters as to unconstitutional conduct. On the contrary, the courts have consistently avoided this potential quagmire and have held that mere medical negligence does not rise to the level of a constitutional violation. Rosario should be granted qualified immunity because he had no fair warning that treating a patient under the influence of alcohol with Ativan was unconstitutional.

### III.      Plaintiff has Failed to Prove Any Constitutional Violations

### A.  Burden to Establish Liability Under a First Amendment Retaliation Claim

In order to state a viable First Amendment claim against the government, an individual must prove that the government took action against him in retaliation for his exercise of First Amendment rights. *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 283-284, 97 S. Ct. 568, 50 L.Ed.2d 471 (1977).  A plaintiff who brings a retaliation claim predicated on the First Amendment must show: (1) his/her speech was constitutionally protected; (2) he/she suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech. *Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011); *see also, Bennett v. Hendrix*, 423 F. 3d 1247, 1250 (11th Cir. 2005); *Ziegler v. Martin Cnty. Sch. Dist.*, 831 F.3d 1309, 1328 (2016 U.S. App. LEXIS 13745). To establish a causal connection, "the plaintiff must show that the defendant was subjectively motivated to take the adverse action

*because of the protected speech*." *Castle v. Appalachian Tech. Coll.*, *supra*, 631 F.3d at 1197

(emphasis added); *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

### B. Plaintiff's First Amendment Retaliation Claim Fails as a Matter of Law Because Rosario was Unaware of Docher's Prior Comment

Plaintiff's First Amendment retaliation claim fails because the undisputed evidence

shows that Docher did not engage in any constitutionally protected speech during Rosario's brief

interactions with him.  In fact, Docher never spoke at all during the six minutes that elapsed from

the time Rosario arrived on the scene until the time he administered the Ativan to Docher. *See*

(Rosario's Undisputed Facts ¶¶ 45-6). The undisputed evidence shows Rosario did not know

Docher had said, "They gonna kill me" before administering the Ativan. *See* (Rosario's

Undisputed Facts ¶¶ 45-6).

Even if Plaintiff could show Docher engaged in constitutionally protected speech, which

she cannot, her claims would fail under the second and third prongs of the test because (1)

Rosario's actions in injecting a hostile individual would not deter a person of ordinary firmness

from engaging in protected speech; and (2) Rosario was unaware of Docher's earlier cries of

"Don't kill me!" and thus that could not have motivated Rosario's actions.

### 1. Rosario's Actions Would Not Deter a Person of Ordinary Firmness from Protected Speech.

In order to determine whether a defendant's retaliatory conduct adversely affected the

protected speech, the courts use the ordinary firmness test. *See Garcia v. City of Trenton*, 348 F.

3d 726, 728 (8th Cir. 2003); *Bailey v. Wheeler*, 843 F.3d 473 (2016 U.S. App. LEXIS 21194).

The courts use this objective standard because it provides notice to government officials of when

their retaliatory actions violate an individual's First Amendment rights. *Bennett v. Hendrix*,

*supra*, 423 F.3d at 1251. Consequently, such an effect must be "more than a *de minimis*

inconvenience." *Bethel v. Town of Loxley,* 221 F. App'x 812, 813 (11th Cir. 2006) (internal quotation marks omitted). This element requires "a fact intensive inquiry that focuses on the status of the speaker, the status of the retaliator, the relationship between the speaker and the retaliator, and the nature of the retaliatory acts." *Bennett v. Hendrix*, *supra*, 423 F.3d at 1252 (internal quotations omitted).

Here, Plaintiff has not, and indeed cannot, set forth any evidence that Rosario's action would deter a person of ordinary firmness from the exercise of his or her First Amendment rights. Paramedics are permitted to work under a set of guideline established by a medical physician as well as administer medications during emergency situations. The record evidence is undisputed that paramedics, such as Rosario, are able to give benzodiazepines, such as Ativan, when a patient is being combative. *See* (Rosario's Undisputed Facts ¶¶ 32-3).  Alcohol is not an absolute contraindication to the administration of Ativan. *See* (Rosario's Undisputed Facts ¶¶ 34-5).  It is equally clear that Rosario and Thomas Sinclair ("Sinclair') were unable to secure Docher on the stretcher due to his combative nature. *See* (Rosario's Undisputed Facts ¶¶ 28-30). Rosario, the lead paramedic, followed St. Lucie County Fire District's Sedation Guideline and used his training, experience, and knowledge as a paramedic to inject Docher with Ativan in order to safely transport him to the hospital. *See* (Rosario's Undisputed Facts ¶¶ 15-36).

## 2. Plaintiff Has Presented No Material Evidence to Support a Causal Connection Between Docher's Protected Speech And Rosario's Actions.

"In order to establish a causal connection, the plaintiff must show that the defendant was subjectively motivated to take the adverse action <u>because of the protected speech</u>." *Keeton v. Anderson-Wiley,* 664 F.3d 865, 868 (11th Cir. 2011) (quoting *Castle v. Appalachian Tech. Coll.,* 631 F.3d 1194, 1197 (11th Cir. 2011)(emphasis added).  Once the plaintiff shows that the protected conduct was a motivating factor, the burden shifts to the defendant to show that he

would have taken the same action in the absence of the protected conduct, in which case the defendant cannot be held liable. *Appalachian Tech.,* 631 F.3d at 1197.  To establish a causal connection, the plaintiff must allege that his protected conduct was a "motivating factor" behind the alleged misconduct.  *See Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008).

In *Smith v. Mosley*, 532 F. 3d 1270 (11th Cir. 2008), an inmate sought relief on the grounds the wardens retaliated against him for engaging in protected speech – i.e. for complaining about the conditions of confinement at the prison. With regard to the causal connection inquiry, the court asked the questions, "What motivated Assistant Warden Jones to prepare the Incident Report and submit it to Warden Mosley? What motivated Mosley to authorize Jones to file the rule violation charges? What motivated Lieutenant Sconyers to affirm Corrections Officer Davis's decisions recommending the discipline?" *Id.* at 1278.

Defendant respectfully urges the Court to consider the same question in this case. "What motivated Rosario to inject Docher with Ativan?" It could not have been Docher's protected speech.  The record is clear that Rosario was unaware of Docher's prior comments and Docher did not speak at all during the brief 6-minute interaction. *See* (Rosario's Undisputed Facts ¶¶ 45-6). Rather, when Rosario first encountered Docher, he was lying on his side with his head surrounded by a pool of blood.  *See* (Rosario's Undisputed Facts ¶¶ 25). He was not speaking, screaming or yelling and he did not respond to Rosario when he attempted to engage Docher verbally to assess his condition. *See* (Rosario's Undisputed Facts ¶¶ 45-6). Moreover, the undisputed facts show Rosario was not aware of any prior protected speech at the time he administered the Ativan. *See* (Rosario's Undisputed Facts ¶¶ 45-6).

Rosario was simply doing his job and was trying to safely secure his patient for transport due to his combative nature, but was unable to do so without sedating him.  None of Docher's

communications to the deputies on scene were ever overheard by Rosario.  Witnesses confirmed that Docher never spoke while Rosario was on scene and that the statement "Don't let them kill me" was not made in Rosario's presence. *See* (Rosario's Undisputed Facts ¶¶ 45-6). Rosario simply was not aware of this statement when he made the decision to sedate Docher. The record is void of any evidence that even hints that Rosario's actions were motivated by previous statement made by Docher.  The undisputed record evidence establishes Docher cannot create a genuine issue of material fact sufficient to defeat summary judgment.  As such, Plaintiff's claim must fail.

### C.  Plaintiff's Due Process Claims

In Count XI of Plaintiff's Second Amended Complaint, Plaintiff alleges Rosario violated Docher's "clearly established right" to liberty under the due process clause of the Fourteenth Amendment on two grounds: (1) because Docher had the right to be free from the forced administration of psychotropic medication unless the treatment was in his medical interest; and (2) because Docher had the right to be free from the forced administration of psychotropic medication as a form of punishment.[1] (2d Am. Compl. ¶¶ 104-105).

As an initial matter, it must be noted that the Supreme Court has always been reluctant to expand the concept of substantive due process "because guideposts for responsible decision-making in this unchartered area are scarce and open-ended. The doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field." *Collins v. City of Harker Heights*, 503 U.S. 115, 117, (1992) (internal citation omitted). However, that is exactly what Plaintiff attempts to do in this action.  While there are numerous cases discussing the due process rights of inmates and other individuals in custodial settings with

---

[1] We analyze these issues under substantive due process as the vague facts supporting Plaintiff's cause of action do not appear to implicate any issues related to procedural due process.

regard to the unwanted administration of antipsychotic drugs, there is virtually no guidance as to the administration of non-antipsychotic drugs, like Ativan, to non-custodial individuals.  Plaintiff is attempting to morph what is essentially a state law negligence case into a constitutional law matter and thus avoid section 401.445(1) of the Florida Statutes[2].

The undisputed facts of this case show that when Rosario first arrived on the scene of the incident, he found Docher lying in a pool of blood with fresh blood on his nose and mouth. *See* (Rosario's Undisputed Facts ¶¶ 24-5). Docher was not responding verbally. *See* (Rosario's Undisputed Facts ¶¶ 45-6). As multiple plaintiff experts have stated, this constituted a medical emergency. *See* (Sterba Dep. 105:8-12, July 19, 2017). A copy of the relevant portions of Dr. Sterba's July 19, 2017, deposition transcript is attached hereto as **Exhibit A**. *See* Expert Report by Plaintiff's Exhibit Mel Tucker (page 6) attached hereto as **Exhibit B**.

As Rosario attempted to secure him for transport to the hospital, Docher became combative, kicking Rosario to the ground and struggling as Rosario and fellow paramedic Sinclair placed him on a backboard. *See* (Rosario's Undisputed Facts ¶¶ 28-30). The undisputed evidence shows Docher was not speaking or shouting when Rosario arrived and Rosario never heard Docher say "They gonna kill me" or any other variation of that statement. *See* (Rosario's Undisputed Facts ¶¶ 45-6). In order to safely transport Docher to the hospital without causing further harm to him or others, Rosario made the decision to administer 4 mg of Ativan, consistent with SLCFD's guideline allowing for sedation of combative patients. *See* (Rosario's Undisputed Facts ¶¶ 31-33).

---

[2] Section 401.445(1) of the Florida Statutes, provides protection from recovery in any action brought for treating a patient without his or her informed consent, if the patient, at the time of examination or treatment is experiencing an "emergency medical condition." This statute extends such protection to "any emergency medical technician, **paramedic**, or physician …". Section 401.445(1), Fla. Stat. (emphasis added).

Plaintiff's claim in this lawsuit that Rosario injected Docher with Ativan as some sort of "punishment" in violation of his Constitutional rights is spurious. Rosario was at the chaotic scene attempting to treat Docher for a total of only *six minutes* before he administered the Ativan. *See* (Rosario's Undisputed Facts ¶¶ 21-31). Rosario never heard Docher speak, much less state "They gonna kill me." *See* (Rosario's Undisputed Facts ¶¶ 45-6). In this high stress, high pressure situation, Rosario relied on his education, training and experience to make the decision. As the undisputed material facts show, Docher was given a sedative due to his combative nature in an emergency situation in order to avoid the risk of further harm to himself or others around him. There is simply no evidence that Rosario's actions were in any way meant to punish Docher or purposely cause harm in violation of his Due Process rights. As such, Rosario's motion for summary judgment as to count XI should be granted.

### D. Summary Judgment is Proper Because Rosario's Actions Were Not Arbitrary and Fail to Shock the Conscious

Even assuming, for purposes of this motion only, that Docher had a protectable liberty interest in avoiding the forced administration of a sedative under the Due Process Clause, this does not end the inquiry. Such conduct will rise to the level of a substantive due process violation <u>only</u> if the act can be characterized as "arbitrary or conscience shocking in a constitutional sense." *Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1305 (11th Cir. 2003). Only the most egregious conduct will be viewed as "arbitrary in the constitutional sense." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1716, (1998). Conduct which is grossly negligent, reckless, or deliberately indifferent fails to constitute a constitutional violation. *Id.; see also County of Sacramento v. Lewis,* 523 U.S. 833, 849 (1999) (It is well-settled "[t]hat . . liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process.").

Page **11** of **21**

Furthermore, the Supreme Court also explained that there is a higher standard in instances when government actors are called upon to act "in haste, under pressure, and . . . without the luxury of a second chance.'" *County of Sacramento v. Lewis*, *supra*, 523 U.S. at 853 (quoting *Whitley v. Albers*, 475 U.S. 312, 320 (1986)). In such circumstance and in order to meet the required threshold, a plaintiff must establish a purpose to cause harm. *Id.* at 854; *see also Purvis v. City of Orlando*, 273 F.Supp.2d 1321, 1327 (M.D. Fla. 2003).

Here, there is simply no factual support for Plaintiff's claim that Rosario acted arbitrarily or with intent to cause harm when he administered Ativan in order to calm a combative patient. The record evidence is undisputed that paramedics are permitted to give benzodiazepines (Ativan[3]) when a patient is being combative. *See* (Rosario's Undisputed Facts ¶¶ 32-3).  *See* Exhibit A (Sterba Depo. 120:15-22). Rosario, the lead paramedic, followed protocol and used his training, experience, and knowledge as a paramedic when he administered Ativan in order to safely transport Docher to the hospital.  *See* (Rosario's Undisputed Facts ¶¶ 32-3).

Rosario's actions in performing his job duties fall far short of the requirement that such conduct "shock the conscious."  As the Supreme Court has repeatedly stated, in order to "shock the conscious," conduct must be so brutal and offensive that it does not comport with traditional ideas of fair play and decency.  *Whitley v. Albers*, 475 U.S. 312, 327 (1986); *see also United States v. Salerno*, 481 U.S. 739, 746 (1987) ("So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience,' . . . or interferes with rights 'implicit in the concept of ordered liberty.'") (quoting *Rochin v. California,* 342 U.S. 165, 172, and *Palko v. Connecticut*, 302 U.S. 319, 325-326 (1937)).  The record does not support such a finding here.

---

[3] Ativan is a not an antipsychotic medication. Rather Ativan is a benzodiazepine used to treat anxiety and certain types of seizures.

Plaintiff likewise cannot show Rosario intended his actions as a form of "punishment" for Docher's purported protected speech or for any other reason. Docher did not speak at all during the six minutes that elapsed between Rosario's arrival on scene and the time he administered the Ativan. *See* (Rosario's Undisputed Facts ¶¶ 45-6). As Rosario was unaware of the alleged protected speech, it logically follows that the act of administering Ativan cannot be viewed as a form of punishment.

In sum, the record is void of any facts to support Plaintiff's claim that Rosario's actions constituted a violation of Docher's constitutional due process rights. Accordingly, Rosario's motion for summary judgment should be granted.

### E. Burden to Establish Liability for Deliberate Indifferent Under the Fourth and Fourteenth Amendments

The Due Process Clause of the Fourteenth Amendment entitles anyone who is arrested and detained under state law to necessary medical care. Deliberate indifference to a prisoner's serious medical needs is a violation of the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). The standards under the Fourteenth Amendment are identical to those under the Eighth. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County, Fla.*, 402 F.3d 1092, 1115 (11th Cir.2005).

"To prevail on a deliberate indifference to serious medical need claim, Plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir.2009). A plaintiff can demonstrate deliberate indifference by establishing the defendant (1) had a subjective knowledge of a risk of serious harm, (2) disregarded that risk, and (3) engaged in conduct that is more than mere negligence. *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir.2004).

A claim for deliberate indifference has three components: a subjective component, an objective component, and conduct that rises above mere negligence. *Id*; *see McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Subjectively, the Court must determine whether the defendant acted with a sufficiently culpable state of mind regarding his knowledge of a substantial risk of harm. *Farmer v. Brennan*, 511 U.S. 825 (1994); *see Hill v. DeKalb County*, 40 F.3d 1176 (11th Cir. 1994). Objectively, the Court must determine whether the treatment was "so grossly incompetent, inadequate, or excessive as to shock conscience or to be intolerable to fundamental fairness." *See Engelleiter*, 290 F. Supp. at 1307; *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). To establish the objective component, the plaintiff must prove that the defendant "purposefully ignore[d] or fail[ed] to respond to a prisoner's pain or medical need..." *Engelleiter*, 290 F. Supp. at 1307. Finally to establish a claim of deliberate indifference under the Eighth and Fourteenth Amendments, the plaintiff must show that the defendant's actions rose to more than mere negligence. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Deliberate indifference exists if the medical personnel provide an easier and less efficacious course of treatment[4]. *See Ancata v. Prison Health Ser.*, 769 F.2d 700, 704 (11th Cir. 1985). Alternatively, deliberate indifference can be shown if there is a substantial and inordinate delay in treatment[5]. *See Farrow*, 320 F.3d at 1246-47. Finally, deliberate indifference can be shown where the care is so cursory that it amounts to no treatment at all[6]. *See Mandel v. Doe*, 888 F.2d 783, 788 (11th Cir. 1989). If, however, the plaintiff's allegations are only that the medical personnel made a mistake or that they were negligent, then deliberate indifference has not been shown. *Estelle*, 429 U.S. at 104.

---

[4] Plaintiff does not allege that Rosario provided an easier and less efficacious course of treatment.
[5] Plaintiff does not allege a delay in treatment.
[6] Plaintiff does not allege that the care provided by Rosario was so cursory as to amount to no treatment at all.

**F.  Plaintiff Has Failed To Establish That Rosario Was Deliberately Indifferent To A Serious Medical Need**

Plaintiff's Second Amended Complaint alleges that "the laceration to [Docher's] right temporal region was bleeding profusely and constituted a serious medical need, and which left unattended, posed a substantial risk of serious harm to [Docher]." *See* (2d Am. Compl. ¶ 113). There is no evidence that Rosario acted with deliberate indifference to this need. The undisputed evidence shows that when Rosario arrived at the scene the right temporal laceration had minimal to minimal to no bleeding. *See* (Rosario's Undisputed Facts ¶ 27). The undisputed evidence also shows that Rosario arrived on scene at 18:34 and that contact was made with Docher at 18:36. *See* (Rosario's Undisputed Facts ¶¶ 19-22). At 18:47 Docher was transported from the scene to the hospital and by 18:56 Docher arrived at St. Lucie Medical Center. *See* (Rosario's Undisputed Facts ¶¶ 41-2). Additionally, there is no evidence that the laceration to Docher's right temporal region caused or contributed to Docher's cessation of breathing, cardiac arrest or persistent vegetative state. *See* (2d Am. Compl. ¶ 114). In fact it is Plaintiff's theory that the 4 mg Ativan injection caused or contributed to Docher's cessation of breathing, cardiac arrest or persistent vegetative state. *See* (2d Am. Compl. ¶ 114).

Docher's alcohol consumption did not constitute a serious medical need and did not create a substantial risk of serious harm. The laboratory results from St. Lucie Medical Center show that Docher had a blood alcohol level of .038. *See* (Rosario's Undisputed Facts ¶¶ 43). A blood alcohol level of .038 is below the legal limit in Florida of .08. *See* § 316.193, Fla. Stat. There is no evidence to support that a blood alcohol level of .038 if left unattended would pose a substantial risk of serious harm. *See Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009); *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (internal citation and quotation marks omitted), *overruled in part on other grounds by Hope v. Pelzer*, 536

U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Nor would a delay in treating a blood alcohol level of .038 worsen Docher's condition. *See Mann*, 588 F.3d at 1307. In fact, Plaintiff does not even allege in her Second Amended Complaint that Docher's alcohol consumption constituted a serious medical need. *See* (2d Am. Compl. ¶¶ 111-117).

Even if one assumes, for the sake of argument, that (1) Docher's alcohol consumption constituted a serious medical need, and (2) this caused to Docher's vegetative state (both of which are highly debatable), Plaintiff nonetheless cannot establish the second and third elements of the "deliberate indifference" claim—that is, that Rosario was subjectively aware of this risk, and that he responded in an objectively unreasonable way.

First, with regard to Rosario's subjective awareness of the risk, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference" *Purcell ex rel. Estate of Morgan v. Toombs County*, 400 F.3d 1313, 1320 (11th Cir. 2005) (emphasis added). *See also Farmer v. Brennan,* 511 U.S. 825, 837 (1994). In other words, "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not[.]'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (emphasis added) (quoting *Farmer v. Brennan*, 114 S. Ct. 1970, 1979(1994)). To act with "deliberate indifference," a [individual] must both know of and disregard an excessive risk to [person's] health or safety. This requires showing a sufficiently culpable state of mind, such as reckless disregard to a substantial risk of serious harm, The deliberate indifference standard is a stringent standard that requires more than mere negligence or medical malpractice to satisfy. *Id.* at 835. *See also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (finding that "inadvertent failure to provide adequate medical care cannot be said to constitute an

unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind" to trigger constitutional liability (internal quotes omitted)).

The "deliberate indifference" standard is not to be confused with a negligence standard:

> The plaintiff must prove that the official had subjective knowledge of a risk of serious harm and disregarded that risk by conduct that constituted more than mere negligence. Deliberate indifference requires that the defendant deliberately disregard a **strong likelihood** rather than a mere possibility that the ... harm will occur.

*Gish v. Thomas*, 516 F.3d 952, 954 (11th Cir. 2008) (citations omitted) (emphasis added). "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir. 2001).

Plaintiff fails to establish this "extremely high standard." In this case, the undisputed material facts show that Rosario was not aware of any facts sufficient to indicate that a substantial risk of serious harm to Docher existed as to his consumption of alcohol; nor did Rosario actually draw that inference. *See* (Rosario's Undisputed Facts ¶¶26, 36). Indeed, the contrary is true. First, it is undisputed that no rule or policy of the SLCFD department prohibited Rosario from administering Ativan to combative patients who have consumed alcohol. *See* (Rosario's Undisputed Facts ¶¶ 32, 34). *See also* Exhibit A (Sterba Dep. 120:15-22). The FDA package insert for Ativan does not list alcohol as a contraindication. *See* (Rosario's Undisputed Facts ¶ 35). While the deputies mentioned that Docher had consumed alcohol, Rosario denied smelling alcohol and was unaware if in fact Docher had been drinking alcohol. *See* (Rosario's Undisputed Facts ¶ 26). As such, there were no objective facts that would have caused Rosario to infer that Docher was being subjected to "a substantial risk of serious harm" by administering Ativan. Furthermore, there is no objective fact to support that Rosario knew of and disregarded a risk of administering Ativan to Docher because of alcohol consumption. This evidence is

uncontroverted. So even if it could be argued that Rosario should have perceived a substantial risk of serious harm to Docher, the undisputed evidence is that he did not—and this destroys the element that he be subjectively aware of the risk. *Cottrell*, 85 F.3d at 1491. Accordingly, there is no evidence to show that Rosario acted with the requisite state of mind to make out a deliberate indifference claim. *Gish*, 516 F.3d at 954.

Plaintiff's claim also fails the third prong of the deliberate indifference test—that is, showing that Rosario responded to the risk in an "objectively unreasonable way." *Cottone*, 326 F.3d at 1358. As discussed at length above, Rosario took reasonable actions based on the circumstances with which he was confronted. Rosario could not place Docher on a backboard for transport, Docher was combative, Docher kicked Rosario causing him to fall to the ground and Rosario could not use certain medical monitoring equipment because of Docher's combativeness. *See* (Rosario's Undisputed Facts ¶¶ 28-30). So Rosario determined that he would administer Ativan to calm Docher to allow transport to hospital for the safety of Docher and the deputies. *See* (Rosario's Undisputed Facts ¶ 31). Under the circumstances, this cannot be said to have been constitutionally unreasonable.

This is not a case in which paramedics failed to give any medical attention whatsoever to a person. It might have been a different story, for example, had Rosario done nothing to aid Docher. But there is no evidence to indicate that anything like this occurred. As such, it cannot be said that Rosario responded in an "objectively unreasonable way."

There is no evidence that Rosario's alleged acts were committed with a culpable state of mind regarding a risk of substantial harm and that his conduct rose to a level above mere negligence. Therefore, Plaintiff cannot support her conclusory theories contained in the Count

XII of the Second Amended Complaint and Rosario is entitled to summary judgment. *See Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999).

### G. Disagreements over treatments do not constitute deliberate indifference

Medical treatment violates the Fourth and Eighth Amendments only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle*, 429 U.S. at 106, 97 S.Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice "not sufficient" to constitute deliberate indifference); *Waldrop*, 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop*, 871 F.2d at 1033 (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir.1977)). There is no deliberate indifference if an inmate challenges the appropriateness of the treatment rather than whether treatment was provided at all. *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995). The Constitution "does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries. . . . We have previously rejected reasoning that would make of the Fourteenth a font of tort law to be superimposed upon whatever systems may already be administered by the States."); *Kelley v. Hicks*, 400 F.3d 1282, 1285 (11th Cir. 2005) *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001).

In this matter, it is undisputed that Rosario provided medical treatment to Docher. *See* (Rosario's Undisputed Facts ¶¶ 19-42). *See Bass v. Sullivan*, 550 F.2d 229, 232 (5th Cir.), cert.

denied, 434 U.S. 864, 98 S.Ct. 195, 54 L.Ed.2d 138 (1977); *see also Waldrop*, 871 F.2d at 1035 (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir.1985) (evidence showed that plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986); *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir.1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.").

This matter can be characterized as a case concerning the appropriateness of the treatment that was given by Rosario rather than whether certain treatment was given at all. Plaintiff's allegations against Rosario are nothing more than mere negligence "not sufficient" to constitute deliberate indifference. "[W]hether governmental actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability" under § 1983 for deliberate indifference. *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1316 (S.D. Fla. 2008) (internal quotes omitted) (noting that "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

WHEREFORE, Defendant, JOSE ROSARIO, prays for the entry of an Order for summary judgment on Counts X, XI and XII of Plaintiff's Second Amended Complaint and any other relief the Court deems proper and just.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 6th day of October, 2017, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system to the following: **Adam Hecht, Esq.,** *(Attorneys for Plaintiff)* ash@searcylaw.com, axs@searcylaw.com, mal@searcylaw.com, jcx@searcylaw.com, lewisteam@searcylaw.com, Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, FL 33409 Florence@cushniemcmahonlaw.com, Cushnie & McMahon, PL, 543 NW Lake Whitney Place, Suite 106, Port St. Lucie, FL 34986; **Summer M. Barranco, Esq.,** (*Attorneys for Christopher Newman, Claylan Mangrum, Calvin Robinson, Wade Courtemanche, and Ken J. Mascara, as Sheriff of St. Lucie County, Florida)* summer@purdylaw.com; Melissa@purdylaw.com; Law Offices of Purdy, Jolly, Giuffreda & Barranco, P.A., 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, FL 33304.

*/s/BENJAMIN W. NEWMAN*
BENJAMIN W. NEWMAN, ESQUIRE
Florida Bar No.: 0011223
JULIE A. TYK , ESQUIRE
Florida Bar No.: 84493
Wilson  Elser Moskowitz Edelman &
Dicker, LLP
111 N. Orange Ave., Suite 1200
Orlando, FL 32801
Phone: (407) 203-7599
Fax:    (407) 648-1376
Ben.Newman@wilsonelser.com
Julie.Tyk@wilsonelser.com
*Counsel for Defendants, Jose Rosario and*
*St. Lucie County Fire District*