UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  2:16cv14413

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother and
legal guardian,

               Plaintiff(s),

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as Sheriff of St. Lucie County,
Florida, JOSE ROSARIO, individually, and
the ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

               Defendant(s).

_____/

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS, JOSE ROSARIO AND ST. LUCIE COUNTY FIRE DISTRICT'S, MOTION TO EXCLUDE CAUSATION OPINIONS OF CRAIG LICHTBLAU, M.D

The Plaintiff, Tavares Docher, by and through his undersigned attorneys, hereby respectfully files his Response in Opposition to Defendants, Jose Rosario and St. Lucie County Fire Districts's, Motion to Exclude Causation Opinions of Craig Lichtblau, M.D. and, in support thereof, sates as follows:

## INTRODUCTION

Plaintiff hereby responds in opposition to Defendants' motion to exclude the testimony of Plaintiff's physiatry expert, Craig Lichtblau, M.D. Defendants motion to exclude Dr. Lichtblau's opinions on causation, life expectancy, and damages must be rejected as no basis exists to exclude

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

his testimony.[1] Dr. Lichtblau's opinions clearly meet the requirements for admissibility established

by the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579 (1993).

Specifically, Dr. Lichtblau's opinions regarding how lorazepam (Ativan) caused and contributed

to Mr. Docher's respiratory insufficiency and ultimate cardiac arrest are based on accepted medical

science.

## **ARGUMENT**

Medicine is practiced 90% by history, 5% by confirmatory tests, 5% by physical

examination and/or patient observation. Differential diagnosis is needed and is utilized during the

standard practice of medicine. In Mr. Docher's case, a differential diagnosis was performed by his

treating physicians and Dr. Lichtblau's diagnostic impression is straight from the medical records.

Ex. A, Dr. Lichtblau's Re-Evaluation Report, p. 2-6. As the patient had already been diagnosed by

his treating physicians, Dr. Lichtblau is applying standard methodology that has been taught in

every medical school in the United States and around the world, which includes conducting a

history, performing a physical examination and patient observation to confirm the diagnostic

impression that was already stated in the medical records. Ex. A. This is standard medical practice

in performing a forensic report, (with no doctor/patient relationship). This methodology is standard

practice throughout the United States.

---

[1] It should be noted that the Defendants failed to take Dr. Lichtblau's deposition to examine him on his methodology
and the scientific medical principles behind his opinions.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

**a.  Dr. Lichtblau's Causation Opinions are Reliable and Based on Accepted Scientific Principles**

Defendants claim that Dr. Lichtblau's causation opinions regarding the use of Ativan as a cause or substantial contributory factor to his ultimate cardiac arrest and brain damage are unreliable. Defendants' criticisms of Dr. Lichtblau's opinions are unfounded and his causation opinions meet the standards outlined in *Daubert*.

Under *Daubert*, a court assesses the reliability of expert testimony by considering "(1) whether the particular scientific theory can be (and has been) tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; and (5) whether the technique has achieved general acceptance in the relevant scientific or expert community." *United States v. Crisp*, 324 F. 3d 261, 265–66 (4th Cir. 2003) (citing *Daubert*, at 593–94) (internal quotation marks omitted). The analysis should be flexible; not every factor is necessary. *Kumho*, 526 U.S. at 141–42.

The Advisory Committee note to Rule 702 of the Federal Rules of Evidence sets forth other factors the courts have considered to assess the reliability of an expert's testimony including: (1) whether the expert's testimony grows "naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying"; (2) whether the expert has "unjustifiably extrapolated from an accepted premise to an unfounded conclusion; (3) whether the "expert has adequately accounted for obvious alternative explanations"; (4) whether the "expert is being as careful as he would be in his regular professional

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

work outside his paid litigation consulting." Fed. R. Evid. 702 Advisory Committee Note (citations omitted). "All of these factors remain relevant," but the "trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular testimony is reliable." *Id.* (quoting *Kumho Tire,* 526 U.S. at 152)(emphasis added).

Dr. Lichtblau's testimony satisfies 3 of the 4 factors identified in the Advisory Committee Note. First, his testimony grows naturally out of research he has conducted in his own professional practice. Dr. Lichtblau's Rebuttal Report contains over twenty letters from individuals across the country who run programs for people with cerebral palsy providing Dr. Lichtblau with information and statistics regarding the life expectancy of patients in their care. These letters reveal a great number of cerebral palsy patients living into their 40's, 50's and 60's. Furthermore, Dr. Lichtblau's opinions account for alternative explanations by explaining flaws in the medical literature which suggests a shorter life expectancy for these patients. Ex. B, Dr. Lichtblau's Supporting Rebuttal Evidence, Tab #11.

As of the time Rule 702 was amended to codify *Daubert,* "caselaw after *Daubert* show[ed] that the rejection of expert testimony is the exception rather than the rule." Fed. R. Evid. 702 Advisory Committee Note (citations omitted). The courts recognize that an expert's point of view may be in dispute, but that is the function of cross-examination, and does not render the expert's testimony inadmissible. *Id.* (citations omitted).

Dr. Lichtblau arrived at his opinions through his understanding and experience as a board-certified physical medicine and rehabilitation physician with over 30 years of experience in the field. Ex. C, Dr. Lichtblau's Curriculum Vitae. The effects of Ativan on the cardiovascular system

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

as a depressant are well-known throughout the medical community and, as will be discussed in

further detail below, the principles medical science in arriving at Dr. Lichtblau's opinions meet

the *Daubert's* standards of reliability.

The package insert provided by Valeant Pharmaceuticals International, Inc., which

produces Ativan, state in their package insert the usual range of administration is 2 to 6 mg per

day given in divided doses. Ex. B, at Tab #1. During the time of Dr. Lichtblau's initial evaluation

on 12/13/14, he was told by the patient's mother that Tavares was held on the ground by deputies

for approximately 15 minutes. Ex. D, Dr. Lichtblau's Updated Summery Report dated 2/18/17, at

p.1-3. The patient had alcohol in his system (.038) and was in a compromised position on the

ground, which made him respiratory deficient, and EMS administered 4 mg (intramuscular

injection) of Ativan to her son. *Id.* at p.1-2. Immediately after the paramedics gave him the shot of

Ativan they realized he was not breathing. *Id.* Cardiopulmonary resuscitation was then

administered by the emergency technicians all the way to the hospital. *Id.* The Plaintiff's mother

stated that her son never woke up. *Id.* Testing was performed and it was found that the Plaintiff

had blood in his urine and he was having constant seizures in the emergency room. *Id.* The Plaintiff

was then transported to Palms West Hospital, where he was evaluated for his continuous seizures.

*Id.* The Plaintiff remained in Palms West Hospital for approximately two days. *Id.* The Plaintiff

was then transferred back to St. Lucie Medical Center in Port St. Lucie. *Id.* The patient had some

movement in his arms and legs; however, he did not know what was going on and he did not

communicate. *Id.* The patient remained in St. Lucie Medical Center until May 27, 2014. *Id.* The

patient was then transferred to Kindred Hospital in Fort Lauderdale, Florida, where he remained

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

for approximately 30 days. *Id.* On July 3, 2014, the patient was transferred to Unity Health and Rehabilitation Nursing Home in Miami, Florida, where he remains at the present time. *Id.* The Plaintiff was never unconscious or in a persistent vegetative state until after EMS gave him a loading dose of 4 mg as an intramuscular injection when he then went into cardiopulmonary arrest. *Id.*  As a result of the cardiopulmonary arrest, the patient experienced a global anoxic brain injury. *Id.*

The methodology Dr. Lichtblau used for causation has been peer reviewed, published, and accepted in American Academy of Physical Medicine and Rehabilitation, October of 2009. The three prongs of causation that have been utilized in the United States as a result of this peer reviewed article are: (1) biological plausibility; (2) temporality; and (3) ruling out other extraneous causes. Dr. Lichtblau's opinions are based on the peer reviewed, published, accepted three prongs of causation. The Plaintiff did not have a cardiopulmonary arrest and a global anoxic brain injury until he received a loading dose of 4 mg of Ativan at the scene of the incident. He had alcohol on board (.038) and was on the ground held by the deputies making it difficult for him to breath. Ex. B, at Tab #5. He then received a 4 mg intramuscular dose of Ativan. The usual dose is 2 to 6 mg, given in divided doses. It is Dr. Lichtblau's medical opinion that the three factors that caused his cardiopulmonary arrest, which led to his global anoxic brain injury are as follows:

(1)   He was respiratory deficient because he was being held on the ground in a compromised position by law enforcement; Ex. B, at Tab #5.
(2)   He had alcohol on board (.038); *Id*., at Tab #6.
(3)   He received a 4 mg intramuscular dose of Ativan. *Id*., at Tab #6 & Tab #7, p. 4.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

These three factors combined together meet the three prongs of causation: (1) biological plausibility; (2) temporality; and (3) ruling out other causes. This causation methodology that Dr. Lichtblau utilized is peer reviewed, published, and accepted.

It is Dr. Lichtblau's medical opinion as a Board Certified Physiatrist with over 100,000 hours of clinical practice experience, over 6,500 admissions to a Level I trauma hospital, and over 35,000 outpatients, that this 4 mg loading dose of Ativan, combined with the two other risk factors, was the major contributing cause to this patient's cardiopulmonary arrest and subsequent global anoxic brain injury. Ex. C, Dr. Lichtblau's CV. It is well-known medical science that patients suffer from global anoxic brain injuries after cardiopulmonary arrest.

**b.  Dr. Lichtblau's Causation Opinions on Life Expectancy and Damages are based on a Reasonable Degree of Medical Certainty**

The Defendants are attempting to argue that Dr. Lichtblau has no substantiated scientific opinions within a reasonable degree of medical probability that (1) Docher will live greater than 20 years; (2) Docher will progress to a minimally conscious state or (3) medical costs contained within his Continuation of Care Models I & II will be incurred. The Defendants are factually incorrect in their assertions and have taken Dr. Lichtblau's conclusions in his report out of context. It should be understood that Dr. Lichtblau evaluated this patient on 12/13/14 and then again on 02/18/17 and in both of his reports he relied heavily on peer reviewed published literature. Ex. B, at Tabs #3 & #4.

7

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

Federal courts applying *Daubert* with respect to opinions on life expectancy have concluded that such opinions are admissible. For example, in *Wells v. Allergan Inc.,* 2013 WL 7208337 (W.D. Oklahoma 2013), the defendant challenged a physician's testimony regarding life expectancy and future needs as being inadmissibly speculative. The court noted that there will almost always be great uncertainty about the life expectancy of a severely injured child or that child's future needs and held that rather than seeking to exclude testimony on life expectancy or future needs, the appropriate counter-measure for the defendant is competing expert testimony. *Id.* at *4.

In *Bowman v. United States,* 2003 WL 25695252 (W.D. Tex. 2003), plaintiff's expert opined that the plaintiff had a life expectancy of 82 years based on the national vital statistics report. The defendant challenged this testimony as unreliable because it did not consider an abundance of literature establishing that the brain injured population has a reduced life expectancy. *Id.* at *1. Plaintiff's expert testified that no specific formula exists with regard to life expectancy and that the literature does not address every situation. *Id.* The District Court ruled that plaintiff's expert should be permitted to testify and noted that the defendants would have an opportunity to cross examine him and present their own expert. *Id.* The court further noted that evidence of life expectancy may be helpful but is not necessary. *Id.*

In *Arroyo v. United States,* 2010 WL 1437925 (N.D. Ill. 2010), a malpractice case involving a birth related brain injury, the defendant challenged the testimony of plaintiff's expert concerning the minor plaintiff's life expectancy. The plaintiff's expert, a physician in the area of

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

physical medicine and rehabilitation, opined that the minor plaintiff would have a normal life expectancy if given proper care and treatment. *Id.* at *10, *12. Before rendering this opinion the expert had reviewed various medical, rehabilitation, school records, medical bills, a day in the life video, and the federal life expectancy tables. *Id.* at *12. He also saw the plaintiff and the plaintiff's family on two occasions. *Id.* The court held that the opinion satisfied the requirements of *Daubert* because it was based on the physician's medical experience with brain injured patients as well as a review of the plaintiff's medical records and a visit with the plaintiffs. *Id.* Additionally, the court noted that the expert's opinion was supported by his testimony concerning the care that the plaintiff had received, as well as the absence of significant health problems and his related experience with other patients. *Id.* The expert also testified that since the time period covered by the life expectancy studies relied upon by the defendant, ventilator technology, pulmonary care and NG tube feeding capability had improved. *Id.* at *13.

The plaintiff's expert also pointed out that based upon the studies relied upon by the defendant, the plaintiff should have already died. *Id.* Furthermore, the *Arroyo* Court would not exclude the expert's testimony on the basis that it was couched in terms of possibilities rather than probability. *Id.* at *13. Like the expert in *Arroyo,* Dr. Lichtblau has examined and evaluated the Plaintiff on two (2) separate occasions and has had the benefit of examining his medical records and speaking with his family and other treating physicians. Ex. A. Dr. Lichtblau has extensive experience working with severely brain injured patients, including those in a persistent vegetative state. Dr. Lichtblau has been a consultant for the State of Florida's Children's Medical Services, since 1989, providing care to children with severe neurological injuries. Ex. C, at p. 4. Also, like

9

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

the expert in *Arroyo,* Dr. Lichtblau testified that the life expectancy studies do not take into account the improvements in care which are allowing patients to live longer. Ex. D, Dr. Lichtblau's 2/18/17 Updated Summary Report at p. 7.

Dr. Lichtblau's medical opinions that predict a life expectancy for patients in a persistent vegetative state of no more than 2 to 5 years was based on medical research that was authored in 1994, which in his opinion is outdated. Ex. B, at Tab #3.There have been advances in medicine that help healthcare providers provide early detection and early intervention for the complications of the secondary effects of immobility and brain injury, which includes but is not limited to deep vein thrombosis, pulmonary embolus, pneumonia, seizures, hydrocephalus and sepsis. According to updated research, patients in a permanent vegetative state with no purposeful motor or cognitive function that require a feeding tube can live from 7-12 years depending upon their age. This was published in Brain Medicine Principles and Practice 2006, page 253. Ex. B, at Tab #4.

As a result of his evaluations and research, it was and remains Dr. Lichtblau's medical opinion as a Board Certified Physiatrist that it is more probable than not that this patient will live between 7 and 12 years from the time of his brain injury, which occurred on 05/11/14. Ex. D, at p. 7. It is his medical opinion that because medical advances are progressing each year, it is not probable but is possible that this patient could live greater than 20 years. *Id.* It was also Dr. Lichtblau's final opinion that according to the peer reviewed published literature it was more probable than not this patient would live somewhere between 7 and 12 years from the time of his original brain injury, which occurred on 05/11/14. *Id.* at p. 2-6. The statement, "It is my medical opinion that because medical advances are progressing each year, it is not probable but is possible

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

that the patient could live greater than 20 years," will not be and has never been more probable than not, and/or with medical certainty. *Id.* Again, Defense Counsel has taken this statement out of context and does not consider the exponential advances in medical science and technology which may make those opinions more probable than not in the near future and which a jury has the right to determine based on the testimony presented at trial.

Under Florida law, there must be "evidence in the record from which the jury could, with reasonable certainty, determine the amount of medical expense [the plaintiff] would be likely to incur in the future." *DeAlmeida v. Graham,* 524 So. 2d 666, 668 (Fla. 4th DCA 1987); *see also Walt Disney World Co. v. Blalock,* 640 So. 2d 1156, 1159 (Fla. 5th DCA 1994). As stated in *Loftin v. Wilson,* 67 So. 2d 185 (Fla.1953), "only medical expenses which are reasonably certain to be incurred in the future are recoverable. There must also be an evidentiary basis upon which the jury can, with reasonable certainty, determine the amount of those expenses." The jury is tasked with evaluating the evidence presented to make a determination whether the Plaintiff will live a certain number of years and what treatment will be necessary based on a reasonable degree of medical certainty. Therefore, regardless of the evidence presented it is within the purview of the jury to determine if the damages were established within a reasonable degree of medical certainty.

Regarding Dr. Lichtblau's opinions regarding medical costs contained within his Continuation of Care Models I & II, Dr. Lichtblau has over 6,500 admissions to a Level I trauma hospital, over 35,000 outpatients, and has been practicing medicine in excess of 100 hours a week for the past 28 years. Ex. C. He is currently the medical director of an inpatient pediatric rehabilitation unit at a Level I trauma hospital and is the medical director of a 236 bed transitional

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

living facility, specializing in the long-term care and treatment of traumatic brain injury and spinal cord injury patients. *Id.*

The methodologies utilized to produce the Continuation of Care plan require a three stage process, which consists of collecting facts, formulating opinions, and producing conclusions. This methodology requires sample data from sources that are geographically proximate to the patient's primary residence or location of probable care. This three stage methodology has been documented in peer reviewed journal articles published in 2014 and 2015 by the American Academy of Physical Medicine and Rehabilitation, Volume 6, 184-187, February 2014 and PM&R February of 2015, 68 through 78.[2] The Continuation of Care portion of this report was produced following the exact Continuation of Care methodology that has been peer reviewed, published, and accepted in February 2014 and 2015 by the American Academy of Physical Medicine and Rehabilitation. The need and frequency for future medical treatment and care is based on Dr. Lichtblau's own medical knowledge, training, and clinical practice experience, which exceeds 28 years and over 100,000 hours, as well as the above stated peer reviewed literature. Ex. C.

## CONCLUSION

The Eleventh Circuit has explained that (experts may be qualified in various ways), including by training or education or experience in a particular field. *United  States vs. Frazier*, 387 F. 3d 1244, 1260-61, (11th Cir. 2004).  The *Daubert* challenge produced by defense counsel

---

[2] See http://www.aapmr.org. Physical Medicine and Rehabilitation (PM&R) physicians, also known as physiatrists, treat a wide variety of medical conditions affecting the brain, spinal cord, nerves, bones, joints, ligaments, muscles, and tendons. PM&R physicians evaluate and treat injuries, illnesses, and disability, and are experts in designing comprehensive, patient-centered treatment plans.

12

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

in this case is an effort to set up an artificial legal bar that would be rejected among peers in the real world of medicine. It must be understood that doctors using the same methodology may reach differing conclusions, but for *Daubert* reliability purposes, it is the process that counts, not the conclusion. *Daubert*, 509 U.S. at 595 (The inquiry must focus solely on the principles and methodology of the experts, not on the conclusions that they generate).

There is no threshold requirement under *Daubert* that a medical expert be impervious to cross examination, despite defense counsel's advocacy for the court to apply such a rule. Dr. Lichtblau has testified either by trial and/or deposition in over 31 states, District of Columbia, and Puerto Rico over his career. Ex. B, at Tab #10. Since 2010, he has testified in over 522 trials and given over 2,273 depositions. *Id.* Dr. Lichtblau has never testified in a court of law and had his testimony stricken. The methodology that utilized by Dr. Lichtblau is consistent with accepted scientific methods that are employed throughout the United States. Dr. Lichtblau has been ruled competent to testify in numerous jurisdictions. Ex. B, at Tabs #11 & #12. There have been two (2) *Daubert* challenges in federal court in regards to Dr. Lichtblau's methodology and both federal judges have found his methodology to be sound, utilizing a scientific method, these challenges were denied. Ex. B, at Tab #9. Dr. Lichtblau is highly qualified, follows peer reviewed, published standard practices in the United States and has never had a *Daubert* challenge granted by any court.

WHEREFORE, based on the foregoing, the Plaintiff respectfully requests that this Court enter an Order denying Defendants, Jose Rosario and St. Lucie County Fire District's, Motion to Exclude Causation Opinions of Craig Lichtblau, M.D.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

### REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiff believes that, before excluding any portion of the expert testimony of Dr. Lichtblau, an evidentiary hearing would be appropriate to clarify any of the issues before the Court. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F. 3d 1092, 1113 (11th Cir.2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc*., 158 F. 3d 548, 564 n. 21 (11th Cir.1998)) ("*Daubert* hearings are not required, but may be helpful in 'complicated cases involving multiple expert witnesses'" ).

### 7.1(a)(3) STATEMENT

Plaintiff's counsel has conferred with all defense counsel in a good faith effort to resolve the issues raised in this motion and has been unable to do so.

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and sent via electronic filing using the CM/ECF system with the Clerk of the Court, which sends e-mail

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

notification of such filing to all CM/ECF participants in this case, on this 26th day of October,

2017.

/s/ DARRYL L. LEWIS
DARRYL L. LEWIS
Florida Bar No.: 818021
Attorney E-Mail(s):  dll@searcylaw.com and
axs@searcylaw.com
Primary E-Mail: _lewisteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:     (561) 383-9485
Attorney for Plaintiff(s)

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants Rosario and
St. Lucie County Fire District's Motion to Exclude Causation
Opinions of Craig Lichtblau, M.D.

## COUNSEL LIST

Summer M. Barranco, Esquire
summer@purdylaw.com; melissa@purdylaw.com
Purdy Jolly Giuffreda & Barranco, P.A.
2455 E Sunrise Boulevard, Suite 1216
Fort Lauderdale, FL  33304
Phone: (954)-462-3200
Fax: (954)-462-3861
Attorneys for Ken Mascara

Benjamin W. Newman, Esquire
Ben.Newman@wilsonelser.com; Leah.Rover@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker, LLP
111 N Orange Avenue, Suite 1200
Orlando, FL 32801
Phone: (407) 203-7592
Fax: (407) 648-1376
Attorneys for Port St. Lucie Fire Rescue

Hugh L. Koerner, Esquire
hlklaw@hughkoerner.com
Hugh L. Koerner, P.A.
3475 Sheridan Street, Suite 208
Hollywood, FL  33021
Phone: (954)-522-1235
Fax: (954)-522-1176
Attorneys for Tavares Docher