UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  2:16cv14413

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother and
legal guardian,

        Plaintiff(s),

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as Sheriff of St. Lucie County,
Florida, JOSE ROSARIO, individually, and
the ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

        Defendant(s).

_____/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS, JOSE ROSARIO AND
ST. LUCIE COUNTY FIRE DISTRICT'S, AMENDED MOTION TO EXCLUDE
OPINIONS OF JOHN STERBA, M.D**

The Plaintiff, Tavares Docher, by and through his undersigned attorney, hereby

respectfully files his Response in Opposition to Defendants, Jose Rosario and St. Lucie County

Fire District's (hereinafter "SLCFD"), Amended Motion to Exclude Opinions of John Sterba,

M.D., Ph. D., FACEP, FACFEI and, in support thereof, sates as follows:

**INTRODUCTION**

Plaintiff hereby responds in opposition to Defendants' motion to exclude the testimony of

Plaintiff's emergency medicine expert, John Sterba, M.D. Defendants suggest that Dr. Sterba lacks

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

the qualifications needed to render standard of care opinions against SLCFD and paramedic, Jose Rosario for administering Ativan (lorazepam), but Defendants' motion is unpersuasive and must be denied because Dr. Sterba is a board-certified emergency medicine physician who is clinically trained in the pharmacokinetic and pharmacodynamic properties of Ativan, a benzodiazepine. He personally administers Ativan and other benzodiazepines in his emergency medicine practice and has experience implementing polices on the administration of the drug in emergency and trauma settings.

## ARGUMENT

### a.  Dr. Sterba is Qualified to Render Standard of Care Opinions Against SLCFD and Rosario

John A. Sterba, M.D., Ph.D., FACEP, FACFEI is highly qualified to provide expert opinions on the Emergency Medical Service (EMS) Standards of Care, which medico-legally falls under his acute care specialty of emergency medicine. He is a board-certified emergency medicine physician who has decades of experience of treating patients in emergency settings, and he has personally worked with and trained emergency medical technicians (EMTs) and paramedics throughout his career.

Under Rule 702, experts may be qualified to testify in various ways, including by knowledge, skill, scientific training, education, and experience. *Seamon v. Remington Arms Co*., LLC, 813 F. 3d 983 (11th Cir. 2016). A witness may be qualified as an expert by virtue of any one such factor, or upon a combination of any of the five factors. Specific degrees, certificates of

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

training or membership in a professional organization are not required. *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990). Overall, the court must determine whether testimony by the witness as an expert will assist the trier of fact to understand the evidence or to determine a fact in issue. Liberality and flexibility in evaluating qualifications should be the rule; the proposed expert "should not be required to satisfy an overly narrow test of his own qualifications." *Gardner v. General Motors Corp*., 507 F.2d 525, 528 (10th Cir. 1974); *See also First Tenn. Bank Nat'l Ass'n v. Barreto*, 268 F.3d 319, 333 (6th Cir.2001) (holding that a lending expert's unfamiliarity with 'some aspects' of lender-borrower relationships 'merely affected the weight and credibility of his testimony, not its admissibility').

Since 1994, Dr. Sterba has never been disqualified to expertly testify under oath in depositions and at trial as to whether the standards of care for all EMS providers including EMTs and paramedics were followed, or breached including causation. Ex. A, Dr. Sterba's 7/19/17 Dep., at 67:6-10; Ex. B, Dr. Sterba's CV. Dr. Sterba is a practicing emergency physician providing real-time, face-to-face supervision of paramedics for his patients out-of-the-hospital. Ex. B; Ex. C, Dr. Sterba Affidavit. Paramedics are part of Dr. Sterba's clinical practice as he calls 911 to request paramedic transport after he has diagnosed, treated and stabilized his patients at-home on his Emergency Physician House Calls™ using America's first community-based and Federally-Registered PORTABLE ER® which he invented, tested, and evaluated.[1]  Ex. C.

---

[1] See www.PhysicianHouseCalls.org, Tabs, "Research and Publications" and "History of the Portable ER".

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

From 2009-present, over 4,200 Emergency Physician House Calls™ have been done by Dr. Sterba in western New York State using the PORTABLE ER®. Ex C. From 2004-2008, over 4,300 emergency patients were treated by Dr. Sterba overseas, some requiring ambulance transport, using the Medical Missionary Portable ER, which he invented, tested, and evaluated. *Id.* Dr. Sterba supervised EMS, registered nurses, and physicians traveling long distances on these transports. In 1989, 150 patients were treated by Dr. Sterba using the Military Portable ER on the High Arctic Icepack of the North Pole Region (U.S. Navy, 1989) with Dr. Sterba supervising U.S. Navy specialized Corpsman (Independent Duty Technicians). Ex. B at p. 10.

Dr. Sterba throughout his career has routinely determined whether or not paramedic standards of care were being followed, or not.  Infrequently, Dr. Sterba needed to diplomatically intervene with paramedics and EMTs when it was medically necessary. Dr. Sterba's expert determination of the paramedic and EMT standards of care and his on-scene medical direction of EMS paramedics are not only justified by Dr. Sterba education, training and experience, but through his direction under the U.S. Standard of Care of Emergency Medicine and EMS supervising and teaching paramedics and EMTs regularly, in accordance with two American College of Emergency Physicians (ACEP) official Clinical & Practice Management Policies, below, *italicized* for clarity:

1. "ACEP Medical Direction of Emergency Medical Services (Reaffirmed April 2012)":

    i. *As an adjunct to this policy statement, ACEP's EMS Committee has prepared a Policy Resource and Education Paper (PREP) entitled "Medical Direction of Prehospital Emergency Medical Services" (also cited below).*

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

    ii.   *The American College of Emergency Physicians (ACEP) believes that all aspects of the organization and provision of basic (including first responder) and advanced life support emergency medical services (EMS) (i.e. paramedics) require the active involvement and participation of physicians. ACEP also believes that EMS must have an identifiable physician medical director at the local, regional, and state level.*

    iii.   *The primary role of the medical director is to ensure quality patient care. Responsibilities include involvement with the ongoing design, operation, evaluation and revision of the EMS system from initial patient access to definitive patient care.*

    iv.   *Each EMS system should ensure that the medical director has authority over patient care, authority to limit immediately the patient care activities of those who deviate from established standards or do not meet training standards, and the responsibility and authority to develop and implement medical policies and procedures.*

2. "Medical Direction of Emergency Medical Services – PREP, Policy Resource and Education Paper"[2]:

    i.   "*ACEP EMS Committee.  All aspects of the organization and provision of basic (including first responder) and advanced life support emergency medical services (EMS) (i.e. paramedics) require the active involvement and participation of physicians.*"

    ii.   "*OFF-LINE (PROSPECTIVE AND RETROSPECTIVE) MEDICAL DIRECTION.  Off-line medical direction includes the administrative promulgation and enforcement of accepted standards for out-of-hospital care.*

Ex. D, ACEP Medical Direction of Emergency Services.

Dr. Sterba conducts Off-Line Medical Direction of the paramedic and EMT standards of care on-scene on a routine, frequent basis in patients' homes and on-site at critically emergent

---

[2]See https://www.acep.org/Clinical---Practice-Management/Medical-Direction-of-Emergency-Medical-Services---PREP/#sm.001gt8x6o1dyef5nwn62mljxjs0gv

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

medical and trauma situations in throughout the rural area of Western New York State.  Dr. Sterba

follows U.S. standards of care in emergency medicine and EMS ensuring continuity of patient

*care* by always giving his full emergency medicine report to the paramedic and EMT to assist them

to facilitate and expedite patient care and safe transport.  Using his cell phone, Dr. Sterba then calls

ahead giving a full report to the emergency physician on-duty at the receiving hospital's emergency

department (ED, ER) including any orders or advice he officially gave to the paramedics as an

Off-Line Medical Director, or Medical Control. All of this experience and teamwork with EMS,

paramedics, and EMTs is documented in Dr. Sterba's medical records for Emergency Physician

House Calls™ using the PORTABLE ER®.[3]

Critical to this case, and briefly testified by Dr. Sterba in his first Deposition although not

explored by Defense counsel, Dr. Sterba's Off-Line (face-to-face) Medical Direction of EMS

paramedics included Dr. Sterba ordering the paramedic to inject the same drug used on Mr.

Docher, Ativan® (lorazepam).   Ex. D, Dr. Sterba's 8/8/17 Dep., at 285:15-23; 286:1-14.  In

addition, and not mentioned at his depositions, Dr. Sterba received specific Emergency Medicine

training to conduct EMS paramedic determination of Standards of Care.   Portions of his

Curriculum Vitae (CV) are highlighted below:

    1. EDUCATION AND TRAINING:
        a) Emergency Department Administration Training. The Management
           Academy, American College of Emergency Physicians, Chicago, IL.
           Ex. B., at p. 3.

---

[3] Due to HIPPA privacy concerns, such documentation could not be attached as an exhibit; however, such supportive evidence can be produced in redacted form for an in-camera inspection should the Court find it necessary.

Docher, Tavares vs. SLCFD
Case No.: 2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

    2.  WORK EXPERIENCE:
        b)  Resident, Department of Emergency Medicine, Wright State University School of Medicine, Dayton, OH.
        c)  Conducted Independent Studies (IS) on: 1) Quality Assurance (QA) and Quality Improvement (QI) for patient care and laboratory testing in the Emergency Department, 2) Medical Advisor and Physiology Instructor of hospital-based helicopter EMS systems, 3) COBRA, 4) Risk Management (RM). Ex. B., at p. 7.

Regarding Dr. Sterba's Continuing Medical Education (CME) in Emergency Medical Services (EMS). Dr. Sterba is currently board-certified with the American Board of Emergency Medicine (ABEM), which periodically examines and certifies his EMS fund of knowledge. Ex. B., at p. 1. Dr. Sterba is required to pass yearly Life Long Self-Assessment (LLSA) examinations to maintain his board-certification, which includes EMS standards of care issues. Dr. Sterba is a current Fellow of the American College of Emergency Physicians (FACEP), based upon three areas of expertise, 1) clinical Emergency Medicine and EMS, 2) Emergency Medicine and EMS research, and 3) Emergency Medicine and EMS administration. *Id.*

It is clear based on Dr. Sterba's education, training, and vast experience in all areas of acute and critical care emergency medicine, including his role as a clinical instructor, that he is qualified and competent to render standard of care opinions against St. Lucie County Fire District and Rosario.

    **b.  Dr. Sterba is Qualified to Testify as to the Pharmacokinetic Properties of Ativan and its Effects on the Human Body**

The Defense claims that Dr. Sterba's opinions regarding the pharmacokinetic properties of Ativan should be excluded merely because he admitted that he is not an "expert" on

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

pharmacokinetic properties of Ativan. While he may not hold himself put specifically as an expert in the field of pharmacokinetics, the branch of pharmacology concerned with the movement of drugs within the body, he is nonetheless still qualified based on his training, education, and experience as a clinical emergency physician to render opinions as to the physiological effects of the drug Ativan.

"Determining whether a witness is qualified to testify as an expert 'requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony.'" *Clena Inv., Inc. v. XL Specialty Ins. Co*., 280 F.R.D. 653, 660 (S.D. Fla. 2012) (quoting *Jack v. Glaxo Wellcome, Inc*., 239 F. Supp. 2d 1308, 1314-16 (N.D. Ga. 2002)). "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise [go] to credibility and weight, not admissibility." *Id.* (citing *Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co*., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009) (citations and internal quotation marks omitted; alteration in original).

Experts may be qualified in various ways. "While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F. 3d at 1260-61. Indeed, Fed. R. Evid. 702 provides that expert status may be based on "knowledge, skill, experience, training, or education." Fed. R. Evid. 702 advisory committee's note (2000 amends.) ("Nothing in this amendment is intended to suggest that experience alone … may not provide a sufficient foundation for expert testimony."). Thus, "there is no mechanical checklist for measuring whether an expert is qualified to offer opinion

8

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

evidence in a particular field." *Santos v. Posadas de Puerto Rico Assocs. Inc.*, 452 F.3d 59, 63 (1st

Cir. 2006).

The Defendants cite to *In re Trasylol Prods. Liab. Litig.,* No. 1:08-md-1928, 2010 WL

4053756, at *4-7 (S.D. Fla. May 17, 2010) in support of its suggestion that if an expert admits to

not being an expert in a certain field then that expert must be excluded; however, the case discusses

the many factors that must be examined to determine whether an expert is qualified and able assist

the trier of fact. In the *Trayslol* matter, the Court was tasked to determine whether a medical expert

was qualified to render causation opinions regarding the drug Trasylol and its adverse effects

under Rule 702 and *Daubert. The Court analyzed many factors to determine whether the medical

expert had sufficient knowledge and experience to render such opinions.*  It evaluated the expert

qualifications or foundation to opine on the adverse effects associated with Trasylol by looking at

the following: whether the expert has ever reviewed its label; ever prescribed it; ever read any

medical literature concerning Trasylol prior to her retention as an expert; or whether the expert

was familiar with any publications concerning Trasylol. *In re Trasylol* at *4-7. The Court ruled

that since the expert did not have the background or experience in the above-referenced areas prior

to becoming an expert concerning the drug at issue that she did not have a sufficient foundation to

render an opinion on causation. The expert's acknowledgement of not being an expert was hardly

a consideration and, as discussed below, Dr. Sterba has sufficient knowledge and experience with

the administration of Ativan, the FDA warning label, all relevant publications, and the

physiological effects (pharmacodynamics) and properties of Ativan. Ex. B.

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

The fact that Dr. Sterba personally does not hold himself out exclusively as an expert in pharmacokinetics is irrelevant since he has sufficient knowledge, training, and experience with the pharmacokinetic properties of Ativan and its effect on human body physiology. Since July of 1999, long before this case, Dr. Sterba has taught at Buffalo General Hospital that injecting Ativan when contra-indicated can cause extreme sedation, hypotension respiratory and cardiac arrest and death. Ex. B, at p. 4. He has also been an Advanced Cardiovascular Life Support (ACLS) instructor and medical director for over ten (10) years. Ex. B, at p. 4-10. Dr. Sterba continues to teach the medically appropriate indications to safely administer Ativan by injection, plus the contra-indications and warnings to never administer Ativan, most recently as September 14-15, 2017 to physicians, nurses and occasionally paramedics, as he testified at his deposition. Ex. A, at 31:1-5; 35:19-23; 37:1-10.

Before Dr. Sterba was asked at his deposition if he was an expert on the pharmacokinetics on intramuscular Ativan Dr. Sterba *was first asked*:

> Q. "Do you hold yourself out as an expert on the physiological effects of Ativan?"
> A: "Yes."
> Q. "And what is the basis of that?"
> A. "M.D., Ph.D., Board Certified in Emergency Medicine and clinical experience using Ativan in numerous clinical settings."

Ex. D, at 282:14-20.

> Dr. Sterba was thereafter asked,
>
> Q. "What is the difference between onset of action and peak –"
> A. "Peak effect?"
> Q. "Yes."

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

> A. "Peak effect is when the drug effect reaches its maximum physiological (*not physical*) effect, onset of action (is) when it first starts to affect (*not effect*) the patient. And that depends on a number of factors.  If the patient is unable unstable (see Errata Sheet) or has any contraindications or physiological reasons to be highly sensitized to the Benzodiazepine such as respiratory insufficiency, respiratory depression, alcohol, possibly other drugs on board, head trauma and metabolic disturbance, acidosis and hypercapnia and I did mention lactic acid.  It is the $CO_2$ that builds up and then anaerobic lactic acidosis.  All those things were in play with Docher."
> Q. "How do you define severe respiratory insufficiency?"
> A. "Inability to adequately ventilate."

Ex. D, at 283:1-19.

Dr. Sterba will testify that when contra-indications, warnings, and certain physiological conditions exist, as they all did in Mr. Docher, who was an unstable, critical patient, then the onset of action for Ativan to sedate is well-known to be physiologically *much faster* than what has been studied and reported in patients unlike Mr. Docher.  Ex. A, at 168:3-23. The quoted controlled studies by pharmacists and others on the onset of action of Ativan are well-known to Dr. Sterba and apply to patients in the hospital setting, even in patients in the ER who have had alcohol. Dr. Sterba is an experienced emergency physician who orders and administers Ativan himself. Ex. A, at 192:7-11; Ex. C. In order to administer a powerful drug such as Ativan to a patient in an emergency situation, an emergency physician *must* know how the drug will react in a patient's body with clinical judgment determining all possible contra-indications, warnings and risks for that specific patient. Such information is necessary to every physician who administers drugs to their patients, especially emergency physicians such as Dr. Sterba. Ex. C.

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

Dr. Sterba will medically and physiologically explain why, with medical certainty, this rapid sedation was directly observed to happen to Mr. Docher.  He will medically and physiologically explain, unlike a pharmacist or toxicologist, but as an experienced emergency physician who directly handles the use of the drug Ativan in this clinical setting, why recklessly giving Ativan 4mg by rapid intra-muscular (IM) injection is contra-indicated, meaning could cause severe harm or death. Dr. Sterba will medically and physiologically explain why administering Ativan 4 mg by paramedic Rosario was observed and proven on-scene to have an onset of action that was *faster* to sedate Mr. Docher (about 1 minute) vs. other published pharmacokinetic data Dr. Sterba referenced in his expert report, which is further evidence of his knowledge and clinical experience with this drug's effect on the human body in emergency situations. Ex. E, Report of May 22, 2017 with Attached Addendum of July 25, 2017 at p.9-14.

   **c.  Dr. Sterba's Opinion Regarding an IV Injection of Ativan Should Not Be Excluded**

The Defendants contend that Dr. Sterba is precluded from testifying that the Ativan was administered intravenously because he did not qualify his statements on such facts in terms of reasonable medical certainty.   Dr. Sterba's testimony taken in its entirety is sufficient to conclude that the injection of Ativan was a contributory factor to Mr. Docher suffering a cadrio-pulmonary arrest because the issue if causation is not how the Ativan was administered but rather how and why it interacted with Mr. Docher's body under the conditions he was experiencing.

Dr. Sterba stated in his Initial Report:

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

> "In addition, there was no documentation that José Rosario, EMT-P ever aspirated after inserting the needle into the buttocks muscle by first pulling back on the syringe plunger to confirm he had not inadvertently inserted the needle into a vein, or artery.  This was not only his training, it was critically medically necessary plus it is the EMS Standard-of-Care.  With such a rapid deterioration of Mr. Docher's unstable critical condition into cardio-pulmonary arrest three minutes after injection of the high 4 mg dose of lorazepam (Ativan®), more likely than not, this attempted IM injection was actually an IV injection in the buttocks, which would have produced a fast onset of action.  ***However, even if José Rosario, EMT-P did aspirate finding no venous or arterial blood, his IM injection of such a high-dose (4 mg) under these conditions would still have caused cardio-pulmonary arrest***.

Ex. E, at p. 9-14.

Dr. Sterba's ultimate opinion is that more likely than not the Ativan was a substantial factor in causing Mr. Docher's cardiopulmonary arrest and his opinion is supported by the rapid onset of the drug which suggests the drug was administered intravenously. His reference the site of injection and rapid onset of the drug supports his opinion of an IV injection as part of the rapid effects of Ativan. There is sufficient evidence to conclude that the drug was administered through an IV injection which forms part of the basis of Dr. Sterba's ultimate opinion which is to a certain degree of medical probability. An expert must "express some basis for both the confidence with which his conclusion is formed, and the probability that his conclusion is accurate." *Schulz v. Celotex Corp.*, 942 F. 2d 2014 citing *Hullverson, Reasonable Degree of Medical Certainty: A Tort et a Travers*, 31 St. Louis U.L.J. 577, 582 (1987).

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

There is sufficient evidence of an IV injection for which Dr. Sterba relies upon and which he bases his ultimate opinion on with medical certainty that should not preclude him from commenting on the issue. *See generally, Shearon v. Sullivan*, 821 So. 2d 1222, 1225 (Fla. 1st DCA 2002) (Where the expert opined on direct examination that future medical care and costs would be necessary to a reasonable degree of medical probability, then "whatever qualification [wa]s placed on the opinion ... goes to the *weight* of the opinion, and not its *admissibility.*" Where there is sufficient evidence from which a jury could infer a need for future medical treatment with reasonable certainty, an award of future medical expenses is proper"). Whether the drug was administered intravenously or not, such a fact is not what the ultimate issue that is to be decided by the jury and is merely evidence to support Dr. Sterba's ultimate opinion that the negligent actions of Rosario, taken in their entirety, more likely than not led to Mr. Docher's cardio-pulmonary arrest. Any factual determination whether the rapid onset of Ativan was administered intravenously falls solely within the jury analysis of all the evidence when evaluating Dr. Sterba's opinion to decide the ultimate issue.

###    d.   The Court Should Not Exclude Dr. Sterba's Timeline As It is Based On Facts Relied Upon by Experts in the field of Emergency Medicine

Defense criticizes Dr. Sterba's scientific ability to accurately watch a CVS Surveillance parking lot video that was timed and dated and watch the close-up, eye witness's cell phone video to then accurately link them together by the same event (white pick-up truck slowly going by Mr. Docher) to create an accurate timeline of events. Ex. E, at p. 34. Dr. Sterba's timeline is an exact

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

illustration of the factual basis and methodology used in arriving at his opinions and that the *Daubert* standard seeks to validate in its analysis. *Id* The words and actions exhibited in the CVS surveillance video and cell phone video lay the foundation for which Dr. Sterba assesses Tavares Docher's compromised physical state and cardiopulmonary condition which is at issue in this case. *Id*. The video evidence is the direct evidence that any emergency physician expert would use to evaluate a patient's symptoms which Dr. Sterba has done in the past by personally reviewing by-stander's or family member's cell phone videos.

As the Defense cites in its case law, expert testimony must be based on the proper factual foundation. *Eclock v. Kmart Corp*., 233 F. 3d 734, 755 (3d Cir. 2000). In *Eclock*, the courts cites two cases as the basis of its holding - *Benjamin v. Peter's Farm Condominium Owners Ass'n.,* 820 F. 2d 640, 643 (3d Cir.1987) and *Gumbs v. International Harvester, Inc.,* 718 F. 2d 88, 98 (3d Cir.1983). In both *Benjamin* and *Gumbs,* the Court held that an expert's lost future earnings opinion was too speculative to be presented to the jury. The Court looked to the underlying facts the experts relied upon in forming a proper predicate for post-injury earing capacity. In *Benjamin,* the expert relied solely on the plaintiff's personal assessment of his ability to re-enter the work force in assuming that the injured plaintiff would make only $10,000 a year as a result of the injuries he sustained. *Benjamin*, 820 F.2d at 642–43. We held that this assumption, absent "sufficient factual predicates," was a "castle made of sand," *Id*. at 642-643 (internal quotation marks omitted).

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

In this case, the timeline is merely an accurate depiction of events evidenced by the video footage from the cell phone, CVS surveillance cameras, and Deputy Mangrum's own deposition testimony that form the factual predicate for Dr. Sterba's opinions. There is no dispute as to what is evidenced in the videos besides Dr. Sterba's interpretation of Tavares' verbal sounds which was assessed based on his education, training, and experience in evaluating patients experiencing cardiopulmonary distress in trauma and medical settings, and from Dr. Sterba's Institutional Review Board (IRB)-approved human medical and physiological research investigating cardiopulmonary distress and shortness of breath during simulated asphyxiation in civilian and U.S. Navy Diver experimental subjects. Ex. C.

Dr. Sterba's visual and auditory observations of Mr. Docher are clinical evaluations of Mr. Docher becoming more and more short of breath, with groaning, gasping with a final loss of consciousness. Those observation are based on Dr. Sterba's expertise diagnosing and treating thousands of patients with respiratory insufficiency. Ex. A, at 13:7-11; Ex. B; Ex. C. Dr. Sterba is most qualified to listen and watch how Tavares became rapidly asphyxiated into unconsciousness using his accurate timeline and both the CVS surveillance video and the close-up eye-witness cell phone video.  Dr. Sterba's testimony coupled with his timeline are critical to understanding what medically and physiologically happened to Mr. Docher and how he became rapidly asphyxiated into unconsciousness in a critically unstable condition.

**e.  All of Dr. Sterba's Opinions Rendered to Date Are Admissible**

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

As the Defendants referenced in their motion, trial of this matter is set on the Court's trial docket beginning January 22, 2018. On May 5, 2017, Plaintiff filed his Initial Expert Disclosure disclosing five (5) experts, including Dr. John Sterba. [DE 40] Plaintiff disclosed Dr. Sterba's Expert Report and Addendum pursuant to Fed. R. Civ. P. 26(a)(2)(B). On July 19, 2017 and August 8, 2017, Dr. Sterba was deposed in this matter. During the depositions, Dr. Sterba rendered several opinions that were not specifically addressed within his Initial Expert Report, but were fully assessed by Defense counsel.

Dr. Sterba's opinions which were all disclosed at his deposition are permitted to be presented at trial as they are not excluded by The Federal Rules of Civil Procedure and were timely disclosed to the Defendants as to not prejudice them in any way. The Federal Rules of Civil Procedure require parties to file reports of expert witnesses they intend to use at trial. *See* Fed. R. Civ. P. 26(a)(2). If a party does not timely file his reports, the district court may exclude the party's expert from testifying at trial on the matters the party was required to disclose. *See* Fed. R. Civ. P. 37(c)(1). The sanction of exclusion is "automatic and mandatory unless the party to be sanctioned can show that its violation of Rule 26(a) was either justified or harmless." *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir.1996).

First, under Fed. R. Civ. P. Rule 26(a)(2)(e), a party is required to supplement expert disclosures in accordance with Fed. R. Civ. P. Rule 26(e). Rule 26(e)(2) pertaining to expert witnesses states in pertinent part, "for an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report and

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

to information given during the expert's deposition. Any additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due." The parties are required to submit their disclosures at least 30 days before trial. Fed. R. Civ. P. 26(3)(B).

Dr. Sterba has already disclosed all his opinions at both of his depositions which were almost 5 months before trial. Any newly proffered opinions at his deposition will be disclosed in the supplemental reports that will be served in a timely fashion in accordance with Fed. R. Civ. P. Rule 26(a)(2)(e) & Rule 26(e)(2). Further, the Defendants have suffered no prejudice by being made aware of Dr. Sterba's opinions many months before trial and having the benefit to examine Dr. Sterba under oath on his opinions. They will have also have all of his opinions memorialized in a supplementary report submitted with the pre-trial disclosures.

WHEREFORE, based on the foregoing, the Plaintiff respectfully requests that this Court deny Defendants, Jose Rosario and St. Lucie County Fire District's, Amended Motion to Exclude Opinions of John Sterba. M.D., Ph. D., FACEP, FACFEI as he is sufficiently qualified as an expert and his opinions satisfy the standards set forth in *Daubert*.

## **REQUEST FOR HEARING**

Pursuant to Local Rule 7.1(b)(2), Plaintiff believes that, before excluding any portion of the expert testimony of Dr. Lichtblau, an evidentiary hearing would be appropriate to clarify any of the issues before the Court. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla.*, 402 F. 3d 1092, 1113 (11th Cir.2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

F.3d 548, 564 n. 21 (11th Cir.1998)) ("*Daubert* hearings are not required, but may be helpful in

'complicated cases involving multiple expert witnesses'" ).

### 7.1(a)(3) STATEMENT

Plaintiff's counsel has conferred with all defense counsel in a good faith effort to resolve

the issues raised in this motion and has been unable to do so.


I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and sent via

electronic filing using the CM/ECF system with the Clerk of the Court, which sends e-mail

notification of such filing to all CM/ECF participants in this case, on this 26th day of October,

2017.


/s/ DARRYL L. LEWIS
DARRYL L. LEWIS
Florida Bar No.: 818021
Attorney E-Mail(s):  dll@searcylaw.com and
axs@searcylaw.com
Primary E-Mail: _lewisteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9485
Attorney for Plaintiff(s)

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.

## **COUNSEL LIST**

Summer M. Barranco, Esquire
summer@purdylaw.com; melissa@purdylaw.com
Purdy Jolly Giuffreda & Barranco, P.A.
2455 E Sunrise Boulevard, Suite 1216
Fort Lauderdale, FL  33304
Phone: (954)-462-3200
Fax: (954)-462-3861
Attorneys for Ken Mascara

Benjamin W. Newman, Esquire
Ben.Newman@wilsonelser.com; Leah.Rover@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker, LLP
111 N Orange Avenue, Suite 1200
Orlando, FL  32801
Phone: (407) 203-7592
Fax: (407) 648-1376
Attorneys for Port St. Lucie Fire Rescue

Hugh L. Koerner, Esquire
hlklaw@hughkoerner.com
Hugh L. Koerner, P.A.
3475 Sheridan Street, Suite 208
Hollywood, FL  33021
Phone: (954)-522-1235
Fax: (954)-522-1176
Attorneys for Tavares Docher

Docher, Tavares vs. SLCFD
Case No.:  2:16-cv-14413
Response in Opposition to Defendants Rosario
St. Lucie County Fire District's Amended Motion to Exclude
Opinions of John Sterba, M.D.