UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.:  2:16cv14413

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother and
legal guardian,

        Plaintiff(s),

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as Sheriff of St. Lucie County,
Florida, JOSE ROSARIO, individually, and
the ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

        Defendant(s).

_____/

**PLAINTIFF'S RESPOSNE IN OPPOSITION TO DEFENDANTS, SHERIFF, NEWMAN, MANGRUM, ROBINSON, AND COURTEMACHE'S, *DAUBERT* MOTION TO EXCLUDE CERTAIN TESTIMONY OF PLAINTIFF'S MEDICAL EXPERT, JOHN STERBA, M.D.**

The Plaintiff, Tavares Docher, by and through his undersigned attorneys, hereby respectfully files his Response in Opposition to Defendants, Sheriff, Newman, Mangrum, Robinson, and Courtemache's, *Daubert* Motion to Exclude Certain Opinions of Plaintiff's medical expert, John Sterba, M.D., Ph. D., FACEP, FACFEI and, in support thereof, sates as follows:

**INTRODUCTION**

Plaintiff hereby responds in opposition to Defendants' motion to exclude the testimony of Plaintiff's emergency medicine expert, John Sterba, M.D., Ph. D., FACEP, FACFEI, who is a

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

medical scientist with two National Institutes of Health (NIH) Ph. D. Post-Doctoral Fellowships. Dr. Sterba's opinions and assessment of facts outlined in his Addendum to his Initial Report to support his opinions are medically necessary and relevant to his ultimate opinions. Ex. A, Dr. Sterba's Initial Report with Addendum dated July 25, 2017. Dr. Sterba's methodology and opinions are based on sound scientific principles which incorporate well-established medical science. Defendants' motion is without merit and must be denied because Dr. Sterba is a board-certified emergency physician who is clinically trained and Ph. D research trained to identify causes, signs and symptoms to identify causes of respiratory deficiency and asphyxiation in emergency medical and trauma settings.

## UNDERLYING FACTS

Dr. Sterba's Initial Report of May 22, 2017 was 18 pages. Ex. A at p.1-18. As noted in Dr. Sterba's Initial Report, the depositions of law enforcement officer Defendants were not included because they had not been taken or submitted to Dr. Sterba for his expert review. Ex. A at p. 15, 19-20. Unknown to Dr. Sterba on the date of his Initial Report dated May 22, 2017, there were additional depositions taken in this case that were relevant to his opinions and, thus, submitted to his review for his forensic examination. As mentioned by Dr. Sterba, under oath in his sworn testimony during his deposition taken on July 19, 2017, if there was any additional information for his forensic examination including my requested information and documentation (e.g. medication and equipment lists carried on-board the ambulance that transported Mr. Docher, whether or not there was a refrigerator used to refrigerate the Ativan® (lorazepam) on this ambulance, any CVS

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

Parking Lot Surveillance Video, or other Depositions, etc.) Dr. Sterba may change his expert

opinions in this case and thus modify his Report of May 22, 2017 with an Addendum(s). Ex. B,

Sterba First Dep., at 68:20-23.

After Dr. Sterba's Initial Report of May 22, 2017, he received the following depositions

which were reviewed and listed in his Addendum dated July 25, 2017 and labeled "Exhibits (and

References) that will be used to summarize or support them":

1.    Deposition, Captain Brian Gonzalez taken May 22, 2017
2.    Deposition, Calvin Robinson taken May 25, 2017
3.    Deposition, Christopher Erik Newman taken May 31, 2017
4.    Deposition, Clay Mangrum taken May 31, 2017
5.    Deposition, Samantha Gilewski taken June 6, 2017
6.    Deposition, Marc Wayne Brown taken June 6, 2017
7.    Deposition, Hardyal Bhagudas taken June 6, 2017
8.    Deposition, Mohamad Nasar, M.D. taken June 26, 2017

Ex. A, at p. 19.

As Dr. Sterba testified in his second deposition on August 8, 2017, the Addendum dated

July 25, 2017 *did not change any opinions* in the Initial Report of May 22, 2017. Ex. C, Sterba

Second Dep., at 260:13-14; 279:10-14. Dr. Sterba clearly stated in his first deposition that the

Initial Report of May 22, 2017 *did not* contain all of his opinions in this matter. Ex. B, at 51:18,

51-52:21-23. Plaintiff's counsel also advised opposing counsel at Dr. Sterba's first deposition,

"And if we do file an amended report, we will provide it to you." Ex. B, at 54-55: 23-1.

Furthermore, as Dr. Sterba stated in his first deposition, he reserved the right to submit an amended

Report. Ex. B, at 98:5-10.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.: 2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

## <u>ARGUMENT</u>

Defendants stated in their motion that Dr. Sterba's opinions, supported by the facts and assertions outlined in his Initial Report and Addendum, are inadmissible because: a) they express impermissible conclusions of law; b) they invade the province and function of the jury; and c) they are not reliable. [DE 94]. Such complaints are incorrect representations of the information and opinions provided in Dr. Sterba's Report including his Addendum.

Under Fed. R. Evid. 703, in addition to the scientific, technical or other specialized knowledge forming the bases of the witness' expertise, an expert may base his opinion or inference (1) on firsthand observation of facts, data, or opinions perceived by him before trial, (2) on facts, data or opinions presented at trial as by the familiar hypothetical question or by having the expert attend the trial and hear the testimony establishing the facts, data, and opinions relied on, and (3) on facts, data or opinions presented to the expert outside of court other than by his own direct perception. Such facts, data or opinions presented to the expert out of court need not be admitted or even admissible in evidence in order for the opinion or inference to be admitted if and only if of a type reasonably relied upon by experts in the field. *See* Fed. R. Evid. 703; *Head v. Lithonia Corp., Inc.*, 881 F. 2d 941, 943 (10th Cir. 1989).

In his Addendum, Dr. Sterba's offered further factual basis for his ultimate opinions based on information and facts he received after he authored his Initial Report. Such facts, which include the actions of the officers, are the type which are relied upon by medical experts in determining

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

the cause of a patient's symptoms in an emergency situation. Those facts led to his conclusions

and are the factual basis for which he formed his opinions.

> **a. Dr. Sterba's opinions are not impermissible conclusions of law and are based on facts that are reasonably relied upon by experts in emergency medicine**

Dr. Sterba's Initial Report and his Addendum are both necessary and do not contain

impermissible conclusions of law.  In addition, all the opinions discussed in both of Dr. Sterba's

depositions are essential to assist Dr. Sterba medically and physiologically explain what happened

to Mr. Docher.

Dr. Sterba is an emergency physician (board-certified American Board of Emergency

Medicine-ABEM), a Fellow of the American College of Emergency Physicians (FACEP), a

Forensic Examiner (board-certified American Board of Forensic Examiners-ABFE) and a Fellow

of the American College of Forensic Examiners Institute (FACFEI).  Ex. D, Dr. Sterba's CV. Dr.

Sterba has 32 years of clinical experience as an emergency physician frequently recognizing signs

and symptoms and treating patients with impaired ventilation (i.e. asphyxiation or suffocation)

very similar to Mr. Docher's case. *Id.* Dr. Sterba has clinically witnessed excessive force resulting

in many injuries caused by various people of all backgrounds including law enforcement officers.

Before medical school, Dr. Sterba had considerable field experience recognizing signs and

symptoms and treating asphyxiation over 8 years (1973-1981) as an Emergency Medical

Technician-Ambulance (EMT-A) on four ambulance services and with a Sheriff's Office as a

Deputy/EMT-A.  Ex. D & Ex. B, at 20:21-23; 21:1-7.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.: 2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

The Defendants unpersuasively cite to Fed. R. Evid. 704(a) and *United States v. McIver*, 470 F. 3d. 550, 561-562 (4th Cir. 2006) as their basis for excluding Dr. Sterba's opinions as to the force used by the officers to cause Mr. Docher's asphyxiation and respiratory distress. Fed. R. Evid. 704(a) allows the admission of expert testimony that "embraces an ultimate issue to be decided by the trier of fact." In other words, questions of fact that are committed to resolution by the jury are the proper subject of opinion testimony. Fed. R. Evid. 704(a). Identification of improper legal conclusions are determined by whether "the terms used by the witness have a separate, distinct and specialized meaning in the law different from that present in the vernacular." *McIver,* 470 F. 3d at 562, *quoting United States v. Barile,* 286 F.3d 749, 760 (4th Cir. 2002).

In *McIver*, the medical expert testified that certain patients were treated outside the course of legitimate medical practice by the Appellant. On the issue of whether Appellant acted "outside the bounds of his professional medical practice and for other than legitimate medical purposes," the Court ruled that although the expert used terms similar to that which this court has employed to express the underlying issue, none were sufficiently specialized to render his testimony inadmissible. Rather, the language the medical expert employed fell within the limited vernacular that is available to express whether a doctor acted outside the bounds of his professional practice. Terms used by experts that are similar to that which the court has employed to express the underlying issue are not sufficient enough to render an experts testimony inadmissible. *McIver,* 470 F. 3d at 562.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

When Dr. Sterba explained the forces used by the officer as "excessive" it is not the same as testifying that the force used by the officers was "unreasonable" or that degree of force that a reasonable and prudent law enforcement officer would have applied under the same circumstances as is the 4th Amendment standard. His description of the actions of the officers explains the force used to cause the asphyxiation, deprivation of oxygen, and respiratory insufficiency that Mr. Docher experienced.   The term 'excessive force' is not precisely defined and has medical significance. It is used frequently by laypersons and physicians. In 2014, the year of the subject indecent, in the medical practice of emergency medicine, if an injury was found in a patient that was clinically determined by the emergency physician to be caused by a law enforcement officer(s) on their suspect(s), the common medical term "excessive force" was used.

"Excessive force" is also medically termed "manhandling", which was a coding and billing term in 2014 used in Emergency Medicine for reimbursement by all medical insurances and Medicare/Medicaid as authorized by the American Medical Association's (AMA) International Classification of Disease, Revision 9 (ICD-9) as such:

    i.   ICD-9-CM Diagnosis Code **E975**, Injury due to legal intervention by other specified means, including "Blow and **Manhandling**"[1]
    ii.  In 2017, the new ICD-10-CM Diagnosis Code **Y35.813A** replaced the previous 2014 ICD-9 Diagnosis Code, **E975**, as such: "Legal intervention involving **manhandling**, suspect injured, initial encounter."[2]

---

[1] Ingenix ICD-9-CM for Physicians - Volumes 1 & 2
[2] http://www.icd10data.com/ICD10CM/Codes/V00-Y99/Y35-Y38/Y35-/Y35.813A

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

It is appropriate for Dr. Sterba to use the common knowledge and medical term "excessive force", which was synonymous in 2014, and now in 2017, with the medical billing code "manhandling" the cause of an injury to a suspect by a law enforcement officer. [3] Dr. Sterba justifiably analyzed the mechanism of injury (asphyxiation) in Mr. Docher with two opposing forces applied to Mr. Docher by Deputy Mangrum. Ex. E, Mangrum Dep, at 80:5-25. The two forces used by the officers were described by Deputy Mangrum. *Id.* He testified he first pulled up Mr. Docher's hand-cuffed arms to vertical and then secondarily, he stepped on Mr. Docher's back. *Id.* These two opposing forces were excessive ("excessive force") causing rapid asphyxiation and deterioration of Mr. Docher into unconsciousness with severe respiratory insufficiency, hypoxemia (low blood oxygen) and limited pulmonary reserve as explained by Dr. Sterba. Ex. B, at 167:1-16.

Dr. Sterba, a former high ranking medical officer (Commander, Medical Corps, USNR) has diagnosed injuries and illnesses for civilians, servicemen and servicewomen on duty at the base or elsewhere, in the line of duty, or off-duty.  As an emergency physician, Dr. Sterba is trained and has the clinical responsibility to determine if an injury occurred in-the-line-of duty or off-duty for policemen and policewomen, and many other occupations, just as when it relates to being a Workman's Compensation case, or not. Dr. Sterba is qualified to render medical opinions regarding the significance of the life-threatening actions that require immediate intervention to

---

[3] Please note, Dr. Sterba never used the term, "police brutality", or "constitutional rights", nor did Dr. Sterba ever testify he was using the term, "excessive force" as a legally-defined term.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

prevent lethal harm to an individual, which includes the actions of law enforcement officers to

determine if someone failed to act (an Act of Commission) or acted with reckless disregard to

prevent someone from asphyxiating somebody else.


**b.  Dr. Sterba opinions that the Plaintiff was asphyxiated by the actions of Defendant Mangrum are reliable and based on an emergency physician's role to determine the underlying cause of an individual's compromised cardiovascular system in an emergency setting**

Defendants claim Dr. Sterba's opinion that Deputy Mangrum asphyxiated Mr. Docher by

using an "unapproved, non-taught restraining method" should be excluded because his opinions

are not reliable. The Defense argues that Dr. Sterba should be precluded from describing the

actions of the officers which amounted to a "reverse hanging" in explaining how Mr. Docher was

asphyxiated and put into respiratory distress. These arguments lack merit as Dr. Sterba relied on

the video evidence and own testimony of Deputy Mangrum which illustrate Dr. Sterba's analysis

of multiple "reverse hanging" scenarios, which lead to respiratory insufficiency.

Dr. Sterba accurately summarized Deputy Mangrum's own sworn deposition testimony

(**bolded** for emphasis) justifying his opinions that an "unapproved, non-taught restraining method"

caused the Plaintiff to suffer respiratory insufficiency and asphyxiation. Ex. E, 80:7-25. The

following is the exact testimony from Defendant Mangrum:

> Q.  In this video did you see your foot being applied to what appears to be either Tavares Docher's back or neck?
> A.  His back, yes. Ex. E, at 79:-23.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

Q. So in this video you saw your foot being applied to Tavares Docher's back, correct?
A. Yes. Ex. E, at 79: 25, 1-2.

Q. And what is that technique known as?
A. **It doesn't have a name.** Ex. E, at 80:3-4.

Q. Why were you placing your foot on Tavares Docher's back in this video?
A. …the only thing I could think of to **improvise at that time** was to hold his arms out straight.  Now, if I hold his arms out straight without applying counterpressure to keep his body still, he's going to be able to flail about still… So I applied some pressure – counterpressure with my foot to keep his arms out straight and his body still. Ex. E, at 80-81:18-22, 24-25, 1.

Q. Did you learn that in the police academy or during your training at the St. Lucie County Sheriff's Office?
A. …, **that was improvised** to gain control over him (Mr. Docher). Ex. E, at 81:12-14, 18-19.

Q. That was an **improvised maneuver**, correct?
A. Yes. Ex. E, at 81: 22-23.

Q. That's not something you learned in your training, correct?
A. **Not that I specifically recall**. Ex. E, at 81-82:24-25, 3.

Accordingly, Dr. Sterba accurately described this un-named, improvised method of restraint that was never trained to Deputy Mangrum, which Dr. Sterba testified caused Mr. Docher's ventilation (breathing) to be restricted, which is the medical dictionary and Webster's dictionary definition of asphyxiation, also termed suffocation.

In *Jones v. Webb*, 516 Fed. Appx. 762, 765 (11th Cir. 2013), the Appellant argued that under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993), and its progeny by allowing the emergency room physician expert to testify that, if Appellant's description of the assault was accurate, he would have expected to see lacerations to the scalp, skull fractures, torn blood vessels,

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

and brain tissue damage, as well as some damage to the trachea and larynx. The Appellant argued

that the expert did not sufficiently describe the methodology he used to reach his opinion, thus

rendering the opinion unreliable. The Court in *Jones* disagrees because the expert was an

experienced emergency room physician who had treated hundreds of patients with blunt

force trauma to the head caused by objects of one kind or another, and he was using that

experience, combined with the Appellant's medical records, to render his opinion.  That opinion

was determined to be nothing more than an opinion as to what types of injuries would normally

result from certain types of blows to, and force exerted on, the face, head, and neck. *Id.* The district

court concluded that the opinion was reliable because emergency room doctors have to "make

evaluations as to whether or not there are internal injuries, whether or not it's child abuse ..., so

they have to evaluate how things occurred from time to time." *Id.* As is the case with Dr. Sterba's

testimony, as an emergency room physician he is tasked at evaluating how injuries occur and what

forces or trauma is involved in determining how someone received their injuries, suffered

asphyxiation, or became respiratory insufficient.

    With regard to Dr. Sterba's contention that the Plaintiff suffered asphyxiation from a

"reverse hanging" scenario, Dr. Sterba provided ample evidence and illustrations depicting the

forces involved in a "reverse hanging" and how such forces applied to Plaintiff's body were the

same.  Ex. B, at 57-59; 20-23, 1-23, 1-19. As the Defendants noted in their motion, Dr. Sterba

provided several pictures illustrating reverse hanging. [DE 94]. He explained the reasons for these

pictures and the need for him to use them to explain to forces placed upon the Plaintiff to restrict

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.: 2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

his breathing. Dr. Sterba clearly stated Deputy Mangrum was not torturing Mr. Docher. Ex. B at

101:1-3. Dr. Sterba testified that these pictures were essential to help him explain *one force* that

was applied to Mr. Docher, when his arms were pulled up to vertical. Ex. B, at 57-59; 20-23, 1-

23, 1-19.   After that, Deputy Mangrum, who testified he weighed 315 pounds at the time, stepped

on Mr. Docher's back, as Dr. Sterba testified below:

> Q. So you would agree with me then that the reverse hanging strappado/corda
> is not what happened to Mr. Docher in this case, correct?
> A. **Part of it did happen**.  **Being that the arms pulled up behind the back
> bound together does produce asphyxiation.**
>
> Q. But isn't the whole point of the reverse hanging that there is actually a
> hanging of the body from some object? A. Yes.
> Q. And that didn't happen to Mr. Docher?
> A. No.
>
> Q: So what is the purpose of you providing those documents to counsel in
> regards to this case involving Mr. Docher?
> A. It explains the two physiological processes that were in play caused by
>     Deputy Mangrum, and that is pulling the arms up, and the second method
>     was stepping on his chest into the pavement so you have two methods that
>     combine to produce rapid asphyxiation.

Ex. C, at 205-206:19-23, 1-16.

Dr. Sterba further testified:

> Q. And it doesn't involve anybody laying prone on the ground either, does it?
> A. No.  It describes half of what Mangrum did to Mr. Docher.
>
> Q. Half of what he did?
> A. Yes.  The half of pulling the arms up not suspending him above the ground.
> He stepped on his chest so he was not hanging.  He was stepped back down into
> the pavement by Deputy Mangrum's left foot between the shoulder blades, so
> he did not pull him up.  He actually stepped on his chest pushing him down
> while he pulled up, which are more asphyxiating than strappado or corda.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

> Q. How would you know that?
> A. By directly observing it on the cell phone video by the chest not being able to rise and fall adequately, the respiratory distress, the respiratory insufficiency and the respiratory depression that I directly observed.

Ex. C at 206-207:22-23, 1-17.

The Defendants contend that Dr. Sterba is unable to explain his personal experience with "reverse hanging" and its effects to a jury, but such information was only withheld due to his obligations to protect classified information entrusted to him by the United States government. Dr. Sterba participated in an Institutional Review Board (IRB)-approved human medical research in hypothermia prevention and treatment as the Research Medical Officer and Experimental Diving Medical Officer, U.S. Navy Experimental Diving Unit, Panama City, FL. Ex. D at 12-13, 16. Dr. Sterba reviewed highly sensitive original transcripts of the Nuremburg Trials including all unethical, tortuous so-called medical experiments by Nazis on humans in cold ice-water. In this review, Dr. Sterba studied various other forms of torture documented at the Nuremberg Trials including reverse-hanging with slow tortuous asphyxiation and the final cause of death from unconsciousness, shock and cardio-pulmonary arrest in prisoners of war and civilians being lifted up with hands and arms bound behind their back, some of which had weights applied to the chest or were stepped upon, which hastened the asphyxiation to unconsciousness, which could be reversed preventing the impending respiratory arrest and cardiac arrest.

Pictures of these prisoners at Nazi concentration camps were submitted to both Defense and Plaintiff attorneys to help explain how reverse-hanging not only asphyxiates people, pulling

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

up the arms and either stepping on the chest or applying weights to the victim's chest accelerates asphyxiation, unconsciousness and respiratory and cardiac arrest. Dr. Sterba explained he was debriefed that he should not discuss details of the torture victims due to the worldwide sensitivity of these inhumane, non-controlled so-called medical experiments by Nazis. In addition, Dr. Sterba does have clinical historical experience in reverse-hanging having reviewed case histories and medical outcomes of reverse-hanging in U.S. Servicemen.  Ex. D at 12-13, 16.

Dr. Sterba also learned first-hand how reverse-hanging (without his feet leaving the ground) rapidly reduced his ability to breathe (asphyxiation) during specialized medical officer training. *Id.* Dr. Sterba has conducted successful and unsuccessful resuscitations of victims of crimes including reverse-hanging and hog-tying, with or without strangulation, throughout his clinical practice of emergency medicine and over eight years working in the filed with paramedics. Ex. F, Dr. Sterba Affidavit.

**c.  Dr. Sterba's testimony is based on facts and evidence relied upon by expert witnesses in formulating their opinions and is not based on any assumptions**

Defense criticizes Dr. Sterba's scientific ability to accurately watch a CVS Surveillance parking lot video that was timed and dated and watch the close-up, eye witness's cell phone video to then accurately link them together by the same event (white pick-up truck slowly going by Mr. Docher) to create an accurate timeline. Dr. Sterba's timeline is an exact illustration of the factual basis and methodology used in arriving at his opinions the Daubert standard seeks to validate in its analysis. The words and actions exhibited in the CVS surveillance video and cell phone video lay the foundation for which Dr. Sterba assesses Mr. Docher's compromised physical state and

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

cardiopulmonary condition which is at issue in this case. The video evidence is the direct evidence

that an emergency physician would evaluate in assessing a patient's signs and symptoms, which Dr.

Sterba has done in the past by personally reviewing by-stander's or family member's cell phone videos.

       As discussed above, facts, data or opinions presented to the expert out of court need not be

admitted or even admissible in evidence in order for the opinion or inference to be admitted if and

only if of a type reasonably relied upon by experts in the field. See Fed. R. Evid. 703. Reasonable

reliance requires that the facts be sufficiently trustworthy for the reliance to be reasonable.  Fed.

R. Evid. 703.

       This was done on Dr. Sterba's Addendum of July 25, 2017:
  i.   TIME LINE showing the Actual Time [A.] using the CVS Pharmacy Surveillance
       Video Recorded as Actual Time (hr:min::secs) as PM time, the  Elapsed Time
       [B.] using the Cell-Phone Video Elapsed Time (video duration 1 minute, 18
       seconds, as 0:01::18), thus allowing Dr. Sterba to make an accurate Calculated
       Time [C.] combining CVS Actual Times & Cell-Phone Elapsed Times with first-
       hand audio and visual Clinical Observations of rapidly progressive
       asphyxiation into unconsciousness. Ex. A, at p.34.

  ii.  Dr. Sterba's expert visual observations and hearing Mr. Docher becoming more
       and more short of breath, with groaning, gasping with a final loss of
       consciousness are based on Dr. Sterba's expertise diagnosing and treating
       thousands of patients with respiratory insufficiency. [4] Ex. D & Ex. F.

       Dr. Sterba is qualified like any layperson to listen, watch and evaluate what is seen on the

videos to draw medical conclusions and render an accurate timeline to assist in illustrating the

---

[4] Dr. Sterba's previous field work in EMS for eight years on ambulance, Dr. Sterba's 32 years in Emergency Medicine, Dr.
Sterba's five years in his Ph.D. studying simulated asphyxiation sponsored by the U.S. Navy Office of Naval Research (ONR),
and Dr. Sterba's four years as Research Medical Officer and Experimental Diving Medical Officer tasked with clinically
investigating asphyxiation in divers for the U.S. Navy.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

basis for his opinions.  Dr. Sterba's testimony coupled with his timeline are critical to understanding what medically and physiologically happened to Mr. Docher and how he became rapidly asphyxiated into unconsciousness in a critically unstable condition.

In this case, the timeline is merely an accurate depiction of events evidenced by the video footage from the cell phone and CVS surveillance cameras that form the factual predicate for Dr. Sterba's opinions. There is no dispute as to what is evidenced in the videos besides Dr. Sterba's interpretation of Tavares' verbal sounds which was assessed based on his education, training, and experience in evaluating patients experiencing cardiopulmonary distress in trauma and medical settings, and from Dr. Sterba's Institutional Review Board (IRB)-approved human medical and physiological research investigating cardiopulmonary distress and shortness of breath during simulated asphyxiation in civilian and U.S. Navy Diver experimental subjects. Ex. D & Ex. F.

WHEREFORE, based on the foregoing, the Plaintiff respectfully requests that this Court deny Defendants, Sheriff, Newman, Mangrum, Robinson, and Courtemache's, *Daubert* Motion to Exclude Certain Opinions of Plaintiff's medical expert, John Sterba, M.D., Ph. D., FACEP, FACFEI, as he is duly qualified to render his opinions and are in accordance with the standards set forth in *Daubert*.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), Plaintiff believes that, before excluding any portion of the expert testimony of Dr. Lichtblau, an evidentiary hearing would be appropriate to clarify any of the issues before the Court. *See Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cnty., Fla*., 402 F. 3d 1092, 1113 (11th Cir.2005) (quoting *City of Tuscaloosa v. Harcros Chems., Inc*., 158 F.

Docher, Tavares vs. St. Lucie County Sheriff's Office
Case No.:  2:16-cv-14413
Plaintiff's Response in Opposition to Defendants, Sheriff, Newman,
Mangrum, Robinson and Courtemanche Motion to Exclude Certain Testimony of
Medial Expert, John Sterba, M.D.

3d 548, 564 n. 21 (11th Cir.1998)) ("*Daubert* hearings are not required, but may be helpful in

'complicated cases involving multiple expert witnesses'").

## 7.1(a)(3) STATEMENT

Plaintiff's counsel has conferred with all defense counsel in a good faith effort to resolve

the issues raised in this motion and has been unable to do so.

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed and sent via

electronic filing using the CM/ECF system with the Clerk of the Court, which sends e-mail

notification of such filing to all CM/ECF participants in this case, on this  6th day of October, 2017.

/s/ DARRYL L. LEWIS
DARRYL L. LEWIS
Florida Bar No.: 818021
Attorney E-Mail(s):  dll@searcylaw.com and
axs@searcylaw.com
Primary E-Mail: _lewisteam@searcylaw.com
Searcy Denney Scarola Barnhart & Shipley, P.A.
2139 Palm Beach Lakes Boulevard
West Palm Beach, Florida 33409
Phone: (561) 686-6300
Fax:    (561) 383-9485
Attorney for Plaintiff(s)