UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

        Plaintiffs,

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as SHERIFF of ST. LUCIE
COUNTY, Florida, JOSE ROSARIO,
individually, and the ST. LUCIE COUNTY
FIRE DISTRICT, an independent special
district,

        Defendants.
_____/

CASE NO.: 2:16cv14413

**DEFENDANT SHERIFF, NEWMAN, MANGRUM, ROBINSON AND COURTEMANCHE'S REPLY IN SUPPORT OF THEIR MOTION IN LIMINE REGARDING PLAINTIFF'S LAW ENFORCEMENT EXPERT [DE 81]**

      Defendants KEN J. MASCARA, as Sheriff of St. Lucie County, Florida, CHRISTOPHER NEWMAN, individually, CLAYLAN MANGRUM, individually, CALVIN ROBINSON, individually, and WADE COURTEMANCHE, individually, by and through their undersigned counsel, file this their Reply in Support of their Motion in Limine Regarding Plaintiff's Law Enforcement Expert [DE 81], and would state as follows:

      The Plaintiff has filed a Memorandum of Law in Opposition to the Defendants' Motion in Limine Regarding Plaintiff's law enforcement expert, Melvin Tucker [DE 124]. The Summary Judgment record in this case establishes that the Plaintiff, Tavares Docher, was engaging in bizarre behavior at the time of the encounter and that he had been consuming alcohol, and was in possession

of a screw driver. Mr. Docher reported that he knew the location of headless bodies and that BSO Seal teams were involved. He reported that Arabs were a threat to him. This case also involves what can be described as open hand use of force techniques. The involved deputies did not use their firearms, tasers or other tools to restrain Mr. Docher. In that sense, this case is not comparable to cases cited by Plaintiff involving the use of deadly force with a firearm in the face of an armed suspect. Nor does this case involve a circumstance regarding the use of a taser to subdue an inmate in a secure corrections facility. This incident occurred on private property, in a parking lot associated with CVS Pharmacy.

Ultimately the issue here is whether Mr. Tucker's opinions will assist the trier of fact regarding resolution of triable issues related to the Plaintiff's claims in this case. It is the Defendants' position, as set forth in their motion [DE 81], that they will not.

Despite the attempt to qualify Mr. Tucker's opinions, as set forth in his report, which has yet to be amended, it is obvious that Mr. Tucker bases some of his opinions on his conclusion that elbow strikes to the head are per se deadly force. This opinion is not only legally incorrect, but it will not assist the trier of fact in this case. The use of an elbow strike to the head, depending on the circumstances, may constitute many different levels of force. This is obviously very different from a circumstance where an officer discharges a firearm at a suspect, or deliberately tases a suspect with a taser. Plaintiff's attempt to analogize this case to cases involving the use of deadly force with a firearm, or the use of non-deadly force with a taser, is not instructive or helpful in resolving the Defendants' motion. This is particularly true where there is no legal support for the notion that there is a singular, or unified, clearly established set of law enforcement standards regarding training, that is applicable in this country. In fact, no such uniform standards exist. In addition, Mr. Tucker's preliminary opinion number 1 is not limited to the question of whether, in his view, Deputies

Newman, Mangrum and/or Robinson used excessive or unreasonable force upon Mr. Docher. The opinion also includes a secondary statement which touches on the concept of qualified immunity, wherein he opines that the Defendant Deputies used a greater level of force than other, unknown hypothetical deputies, would have used in 2014 under same or similar circumstances. Not only does this aspect of the opinion touch on the concept of qualified immunity, which is a legal matter for this court to resolve, based upon undisputed material facts, it is also an opinion that is not based upon any recognized uniform standard in the law enforcement community. It is axiomatic that the use of force involves subject factors such as the officer's experience, abilities, and training, as well as factors that are unique to each individual person who has an encounter with a law enforcement officer. In short, law enforcement officers cannot be trained in any clearly established way regarding exactly how to respond to any particular encounter.

    Mr. Tucker's preliminary opinion number 2 is equally flawed as it represents an attempt to touch on the concept of qualified immunity and is based upon a non-existent clearly established law enforcement training standard. In fact, the evidence in this case indicates that the nature of this call was such that it involved potential criminal activity, potential medical considerations, including use of Florida's Baker Act, and legal principles that may apply to any one or both of those circumstances. In that regard, issues would include whether reasonable suspicion and/or arguable reasonable suspicion existed to believe that Mr. Docher committed a crime and/or was subjected to temporary detention to investigate the possibility of criminal activity and/or to investigate the possibility that he met the criteria to be Baker Acted under Florida law. In addition, once Mr. Docher escaped from the patrol car, issues would arise regarding whether probable cause or arguable probable cause existed for offenses such as disorderly intoxication, obstruction of an officer under Florida Statute 842.02, escape or battery on a law enforcement officer. In short, Mr. Tucker's opinion that the call

the deputies responded to can only be classified as a medical emergency, rather than a potential criminal situation, is not only legally incorrect, but it also confuses the law and is based upon a non-existent, clearly established law enforcement training standard. In fact, the question of the legality of Mr. Docher's detention, whether it be initially a temporary detention, or whether the detention evolved into an arrest, is based upon an objective view of the facts, rather than any subjective or pre-textual notion that a particular law enforcement officer may have had. Whren v. U.S., 517 U.S. 806 (1996). In fact, police officers are not required to diagnose a mental health condition during a rapidly evolving event, particularly where, as here, the nature of the call and incident involved potential criminal activity. In that regard, Mr. Docher has no 4th Amendment right to commit a crime or to engage in criminal activity simply due to the fact that he might have been having a medical event and such medical events are merely another aspect that might relate to the 4th Amendment circumstantial calculus. Bates v. Chesterfield County, Virginia, 216 F.3d 367, 372-3 (4th Cir. 2000). Consequently, Mr. Tucker's preliminary opinion number 2 will not assist the trier of fact, constitutes a legal opinion and attempts to pigeonhole the nature of this incident as a medical emergency, therefore precluding any other options that might be available to the deputies under the law. This will simply confuse the jury regarding their role in determining factual issues and the actual jury instructions that will be used in light of the legal issues presented by the Plaintiff's claims.

      Mr. Tucker's preliminary opinion number 3 also appears to be an attempt to address the issue of qualified immunity by again referring to the alleged existence of clearly established law enforcement training standards. Law enforcement training varies throughout the country and always involves law enforcement discretion presented by a particular circumstance. There is no litmus test or check list response to an event governed by the 4th Amendment. (Scott v. Harris, 550 U.S. 372 (2007)) The law, of course, frowns on the notion of pigeonholing or attempting to classify any

particular situation in a particular way. In that regard, the question of whether reasonable suspicion or probable cause existed to investigate Mr. Docher's initial behavior and to engage in his temporary detention, whether it be based upon potential violations of the criminal law or whether it be based upon an attempt to determine whether he met the criteria for involuntary civil commitment, under Florida's Baker Act, including whether probable cause arose to further detain him for violating the criminal law for disorderly intoxication, obstruction, escape or battery on a law enforcement officer, or for involuntary civil commitment under Florida's Baker Act law, are matters that involve objective inquiries under the law. Therefore it is inappropriate to attempt to classify this incident as only involving a medical emergency, as Mr. Tucker intends to do. In addition, the aspect of the opinion that is based upon the alleged existence of clearly established law enforcement training standards regarding basic physiology of the struggle, is not a recognized standard that will assist the jury in resolving the Plaintiff's legal claims under the 4th Amendment, or under state law. Both federal and state law focus on the question of whether the use of force was reasonable under a particular set of circumstances, regardless of the nature of the potential outcome of a particular use of force. In other words, if the force used was reasonable, then unintended consequences, even if they could have been foreseen, are not unlawful. See Scott v. Harris, 550 U.S. 372 (2007).

      Finally, the Defendants will continue to assert that Mr. Tucker's preliminary opinion number 4 is fatally flawed and will not assist the trier of fact. Mr. Tucker's conclusion that deadly force was not justified under the circumstances presented to the deputies is being used to support his conclusion that Deputies Robinson and Mangrum failed to intervene to prevent Deputy Neuman from using two separate elbow strikes to the head of Tavares Docher. Since Mr. Tucker cannot state that the use of an elbow strike by Deputy Neuman to the head of Tavares Docker constituted deadly force as a matter of law, he therefore cannot state that Deputies Mangrum and Robinson failed to

intervene to prevent the unjustified use of deadly force.

The Defendants' motion [DE 81] should be granted.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **ADAM S. HECHT, ESQUIRE,** Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, ash@searcylaw.com, axs@searcylaw.com; mal@searcylaw.com; jcx@searcylaw.com, **HUGH L. KOERNER, ESQUIRE**, Hugh L. Koerner, P.A., Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021, hlklaw@hughkoerner.com, and **BENJAMIN W. NEWMAN, ESQUIRE,** Wilson Elser Moskowitz Edelman & Dicker, LLP, 111 N. Orange Ave., Suite 1200, Orlando, FL 32801, ben.newman@wilsonelser.com; julie.tyk@wilsonelser.com this **2nd** day of November, 2017.

        PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
        Attorneys for Defendants Newman, Mangrum, Robinson, Courtemanche and Sheriff
        2455 East Sunrise Boulevard, Suite 1216
        Fort Lauderdale, Florida 33304
        Telephone (954) 462-3200
        Telecopier (954) 462-3861
        Email: summer@purdylaw.com
              melissa@purdylaw.com

BY    *s/ Summer M. Barranco*
        SUMMER M. BARRANCO
        Fla. Bar No. 984663