UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother and
legal guardian,

        Plaintiff(s),

vs.

CHRISTOPHER NEWMAN, individually,
CLAYLAN MANGRUM, individually,
CALVIN ROBINSON, individually, WADE
COURTEMANCHE, individually, KEN J.
MASCARA, as Sheriff of St. Lucie County,
Florida, JOSE ROSARIO, individually, and
the ST. LUCIE COUNTY FIRE DISTRICT,
an independent special district,

        Defendant(s).
_____/

CASE NO.: 2:16cv14413

**DEFENDANTS', JOSE ROSARIO AND ST. LUCIE COUNTY FIRE DISTRICT, REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE CAUSATION OPINIONS OF CRAIG LICHTBLAU, M.D. [DE 125]**

Defendants, JOSE ROSARIO and ST. LUCIE COUNTY FIRE DISTRICT, by and through their undersigned counsel, hereby respectfully files their Reply to Plaintiff's Response in Opposition to Defendants', Jose Rosario and St. Lucie County Fire District, Motion to Exclude Causation Opinions of Craig Lichtblau, M.D. and in support states as follows:

**A. The Eleventh Circuit Has Determined that a Temporal Relationship Does Not Establish a Causal Relationship**

The Eleventh Circuit Court of Appeals has rejected the notion that a "temporal relationship" between using a product and the onset of symptoms establishes a causal connection:

> The issue of the chronological relationship leads to another important point-proving a temporal relationship between taking Metabolife and the onset of symptoms does not establish a causal

> relationship. In other words, simply because a person takes drugs and then suffers an injury does not show causation. Drawing such a conclusion from temporal relationships leads to the blunder of the post hoc ergo propter hoc fallacy.
>
> The post hoc ergo propter hoc fallacy assumes causality from temporal sequence. It literally means "after this, because of this." Black's Law Dictionary 1186 (7th ed. 1999). It is called a fallacy because it makes an assumption based on the false inference that a temporal relationship proves a causal relationship. As the Court of Appeals for the District of Columbia explained in a similar context: "[i]n essence, the requirement of 'adequate documentation in scientific literature' ensures that decision makers will not be misled by the post hoc ergo propter hoc fallacy-the fallacy of assuming that because a biological injury occurred after a spill, it must have been caused by the spill." *Ohio v. U.S. Dept. of the Interior*, 880 F.2d 432, 473 (D.C.Cir.1989).

*McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1243 (11th Cir. 2005) (emphasis in original).

In *McClain*, Plaintiffs used Metabolife, a weight-loss supplement containing ephedrine and caffeine, and allegedly experienced medical problems as a result. *Id*. at 1236. Defendant appealed the district court's denial of its *Daubert* motion. In applying *Daubert* principles, the Eleventh Circuit Court of Appeals determined that a temporal relationship is not enough to allow admission of an expert's testimony when the remaining *Daubert* factors have not been met: "There is evidence in the case supporting the third criteria, the chronological relationship between exposure and effect, but this does not overcome the failure of proof on the other three propositions." *Id*. at 1244.

The Eleventh Circuit also rejected that a temporal relationship can establish causation in *Wingster v. Head*, 318 Fed. Appx. 809, 2009 WL 585781 (11th Cir. Mar. 9, 2009) (unpublished opinion). In *Wingster*, Plaintiff alleged excessive force was used on her inmate son, causing him to suffer an aneurysm two days after the alleged excessive force occurred. *Id*. at 810, 2009 WL

585781 at *1. The court found that Plaintiff, who did not present expert evidence, could not survive summary judgment based only upon a temporal relationship:

> We recognize that Wingster relies on the temporal proximity of the alleged beatings on October 14 and the aneurysm on October 16. However, this medical causation issue presents a technical and scientific issue that requires the specialized knowledge of an expert medical witness.

*Id.* at 815-16, 2009 WL 585781 at *5 (internal citation omitted); *see also Cooper v. Marten Transport, Ltd.*, 539 Fed. App'x 963 (11th Circuit 2013) (upheld district court order that the treating doctors could not testify to their causation opinions in part based upon the temporal relationship to the accident).

It is clear that Dr. Lichtblau relies on the temporal proximity of the Ativan injection and Tavares Docher's cardiopulmonary arrest. As stated above, temporal proximity is generally not a reliable indicator of a causal relationship. Based on the Eleventh Circuit's rejection of the notion that a temporal relationship proves causation, Dr. Lichtblau's causation opinions should be held insufficiently unreliable.

### B. Dr. Lichtblau Does Not Lay Reliable Dose Response Relationship to Ativan and Alcohol and Respiratory Deficiency

In *McClain v. Metabolife Intern., Inc.,* 401 F.3d. 1233, 1239 (11th Cir. 2005), the Eleventh Circuit placed heavy emphasis on whether the causation experts adequately addressed the critical issue of whether there was a dose-response relationship between the substance in question and the alleged ill-effects of the substance. The court held that it was not enough for an expert to opine that a drug posed an extreme danger to its users, while failing to offer any testimony about the dose that was required to cause injury. *McClain*, 401 F.3d. at 1233. While the court allowed that "[s]ome ambiguity about individual responses is expected [,]... the link

between an expert's opinions and the dose-response relationship is a key element of reliability in toxic tort cases." *Id*., n.6.

Dr. Lichtblau provides no explanation for the basis for this opinion as to the dose response relationship. In fact Dr. Lichtblau incorrectly relies on the package insert for Ativan in tablet form despite Tavares Docher being injected with Ativan intramuscularly. Dr. Lichtblau did not conduct any tests himself, and did not rely on any epidemiological studies. Having failed to consider what the Eleventh Circuit has characterized as a "key element of reliability in toxic tort cases," *McClain*, 401 F.3d. at 1241, Dr. Lichtblau's causation opinions fail to satisfy the requirement of *Daubert* and Rule 702 that an expert's testimony be relevant and helpful to the scientific or technical issue at hand. For this additional reason, Dr. Lichtblau's causation opinions should be excluded under Rule 702 and *Daubert*.

### C. Dr. Lichtblau's Use of the Differential Diagnosis is Flawed

Differential diagnosis "is accomplished by determining the possible causes for the patient's symptoms and then eliminating each of these potential causes until reaching one that cannot be ruled out or determining which of those that cannot be excluded is the most likely." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 262 (4th Cir.1999); *see also McClain*, 401 F.3d at 1252 (describing differential diagnosis as "a process of identifying external causes by a process of elimination").

Although a reliable differential diagnosis need not rule out all possible alternative causes, it must at least consider other factors that could have been the sole cause of the plaintiff's injury. As the Fourth Circuit explained in *Westberry*, a "differential diagnosis that fails to take serious account of other potential causes may be so lacking that it cannot provide a reliable basis for an opinion on causation." 178 F.3d at 265; *see also In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717,

759 (3d Cir.1994) ("[A]t the core of differential diagnosis is a requirement that experts at least consider alternative causes—this almost has to be true of any technique that tries to find a cause of something."). As other circuits have recognized, an expert "must provide a reasonable explanation as to why 'he or she has concluded that [any alternative cause suggested by the defense] was not the sole cause' " of the plaintiff's injury. *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 179 (6th Cir.2009) (quoting Paoli, 35 F.3d at 758 n. 27); *see also Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 694 (8th Cir.2001) (stating an expert must "be able to explain why other conceivable causes are excludable"); *Westberry*, 178 F.3d at 265 (holding an expert must provide some explanation of why other potential causes were not the sole cause); *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 808 (3d Cir.1997) (holding that after a defendant identifies a plausible alternative cause, it is "necessary for the plaintiff's expert to offer a good explanation as to why his or her conclusion remains reliable").

Moreover, the Eleventh Circuit "does not allow general causation to be proved by a differential diagnosis." *In re Denture Cream Prods. Liab. Litig.*, 795 F. Supp. 2d 1345, 1365 (S.D. Fla. 2011); *McClain*, 401 F.3d at 1253 ("In the absence of [a showing of general causation] ... a differential diagnosis generally may not serve as a reliable basis for an expert opinion on causation in a toxic tort case."). "[D]ifferential diagnosis evidence by itself does not suffice for proof of causation." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1295 (11th Cir. 2005). "[S]imply claiming that an expert used the differential diagnosis method is not some incantation that opens the Daubert gate." *Bowers v. Norfolk Southern Corp.*, 537 F. Supp. 2d 1343 (M.D. Ga. 2007), aff'd, 300 F. App'x 700 (11th Cir. 2008). As the *Bowers* court stated:

> Plaintiff's argument is not an accurate statement of the law because using the "differential diagnosis" method does not trump the reliability requirement. Rather, opinions based on a differential diagnosis are admissible only if the trial court determines that the

> expert reliably applied the differential diagnosis method ... Thus, in evaluating the reliability of an opinion based on a differential diagnosis, courts look at the substance of the expert's analysis rather than just the label.

*Id.* at 1361 (citation omitted).

"[A]n expert does not establish the reliability of his techniques or the validity of his conclusions simply by claiming that he performed a differential diagnosis on a patient." *McClain*, 401 F.3d at 1253. Dr. Lichtblau must correctly apply the differential diagnosis methodology for it to be reliable under *Daubert*. Dr. Lichtblau fails to consider other potential causes of cardiopulmonary arrest. There is no indication that Dr. Lichtblau considered other possible causes of Tavares Docher's cardiopulmonary arrest, including excited delirium, vasovagal response, hypovolemia, hyper/hypokalemia, etc. Dr. Lichtblau may claim to have performed a differential diagnosis, but he fails to identify a scientifically valid basis for his general and specific causation opinions. *See McClain*, 401 F.3d at 1253 ("A valid differential diagnosis, however, only satisfies a *Daubert* analysis if the expert can show the general toxicity of the drug by reliable methods."); *Rink*, 400 F.3d at 1293 (noting that without adequate general causation evidence, the physician's testimony was irrelevant); *Evans*, 2009 WL 2914252 (rejecting opinions of plaintiff's experts on both general and specific causation because "the Eleventh Circuit has concluded that a differential diagnosis is insufficient without adequate evidence of general causation."); *Siharath*, 131 F. Supp. 2d at 1362 ("differential diagnosis assumes that general causation has been proven for the entire list of possible causes that are eliminated one-by-one").

### D. The Newly Disclosed Basis for Dr. Lichtblau's Opinions Are Untimely and Prejudicial to the Defense

Rule 26(a)(2) provides that a party intending to use a testifying expert must disclose not only the identity of the witness, but a written report containing a "complete statement of all opinions to be expressed and the **basis and reasons therefore [and] the data or other information considered by the witness in forming the opinions** ...." (emphasis added). These disclosures must include not merely the expert's conclusory opinions, but "'how' and 'why' the expert reached [the] particular result." *Salgado v. General Motors Corp.*, 150 F.3d 735, 741 n.6 (7th Cir. 1998). These disclosures are to be made at the times and in the sequence directed by the Court, or, where the Court has not otherwise directed, at least 90 days before the trial date. Fed.R.Civ.P. 26.

In the instant matter, the original deadline for expert disclosures was March 17, 2017. [DE 24]. On February 21, 2017, the Court entered a paperless Order Granting the Motion for Modification. [DE 36]. The Order extended the deadline to disclosure primary/initial experts to May 1, 2017. [DE 36]. The deadline to disclose rebuttal experts was extended to May 27, 2017. [DE 36]. As the Court is aware, Plaintiff failed to comply with the Order and filed Expert Disclosures late. [DE 40] [DE 41] & [DE 43]. The Court granted another extension for expert disclosure and expert discovery. Expert reports were due on August 15, 2017 and expert discovery was to be completed on September 29, 2017. Dr. Lichtblau never produced or referenced the following documents in his disclosed reports: Medication Guide for Ativan; Hypoxic and Anoxic Brain Injury after Cardiac Arrest; Adverse Effects Associated with Physical Restraint; Interactions between Alcohol and Benzodiazepines and Clinical Pharmacology Elsevier/Gold Standard.

Under Rule 37(c)(1) where a party fails to make a timely disclosure of expert opinions, such opinions may not be presented at trial, at a hearing, or on any motion unless the failure to disclose was substantially justified or the failure was harmless:

> A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions. In addition to requiring payment of reasonable expenses, including attorney's fees, caused by the failure, these sanctions may include any of the actions authorized under Rule 37(b)(2)(A), (B), and (C).

Rule 37(c)(1), as amended in 1993, contemplates stricter adherence to the disclosure requirements of Rule 26, and harsher sanctions in the event of breach, than did prior law. *See, e.g. Poulis-Minott v. Smith*, 388 F.3d 354, 358 (1st Cir. 2004). Accordingly, "'the required sanction in the ordinary case is mandatory preclusion.'" *Id.* (*quoting Klonoski v. Mahlab*, 156 F.3d 255, 269 (1st Cir. 1998)); *see also Lohnes v. Level 3 Communications, Inc.*, 272 F.3d 49, 60 (1st Cir. 2001) ("The expert disclosure requirements are not merely aspirational, and courts must deal decisively with a party's failure to adhere to them"). The purpose of the disclosure rules is to prevent the unfair tactical advantage that can be gained by failing to unveil an expert or his opinions and thereby deprive the other party of the opportunity to conduct appropriate discovery. *See Poulis-Minott*, 388 F.3d at 358.

There is no dispute that Dr. Lichtblau's disclosed Reports do not provide the basis for his causation opinions as outlined in Plaintiff's Response [DE 125] nor does it contain all the additional documents as part of Dr. Lichtblau's Rebuttal Report. *See, e.g., La Gorce*, 2011 WL 1522566, at *2-3 (striking expert where report did not contain his "final conclusion, much less

the facts to support his conclusion"). The purpose of Rule 26 is to allow both sides in a case to prepare their cases adequately and to prevent surprise. *Reese v. Herbert,* 527 F.3d 1253, 1266 (11th Cir. 2008). The requirement for expert disclosure is designed to afford opposing parties reasonable opportunity to prepare for effective cross-examination and perhaps arrange for expert testimony from additional witnesses. *Id.* at 1265. "[A]n expert report must be complete such that 'opposing counsel is not forced to depose an expert in order to avoid ambush at trial; and ... the report must be sufficiently complete so as to shorten or decrease the need for expert depositions and thus to conserve resources.'" *Dyett,* 2004 WL 5320630 * 1 (quoting *Salgado v. General Motors Corp.,* 150 F.3d 735, 742 (7th Cir.1998) (citation omitted)).

Defendants were essentially "in the dark" as to the basis for Dr. Lichtblau's causation opinions until Plaintiff's Response [DE 125]. Furthermore, because of this late disclosure, Defendants were unable to prepare for or schedule Dr. Lichtblau's deposition before the discovery cut-off. This inability to engage in a meaningful deposition and the lack of information regarding the basis for Dr. Lichtblau's opinions places Defendants at a severe disadvantage in terms of discovery, mediation, the filing of dispositive motions, filing of motions in limine, and trial. Dr. Lichtblau's inadequate disclosures significantly impair Defendants' ability to prepare for cross-examination, conduct any follow-up discovery to probe the veracity of the evidence and leaves Defendants vulnerable to unfair surprise.

There is nothing in the circumstances of the instant case that suggest that Dr. Lichtblau was justified in failing to disclose the basis of his causation opinions in a timely manner. Dr. Lichtblau had ample time to disclose the basis of his causation opinions given the numerous extensions to expert disclosures granted by the Court.

Dr. Lichtblau's failure to comply with Rule 26 is not harmless. Trial is only three months away. The extended discovery period has closed. Moreover, there are numerous other deadlines-dispositive motions, motions in limine, etc.--that that have closed. Under such circumstances, courts routinely hold that the failure to timely disclose expert testimony is not harmless. *See Reese*, 527 F. 3d at 1264-66 (failure to disclose expert opinions until after discovery closed was not harmless); *La Gorce*, 2011 WL 1522566, at *3 (failure to timely disclose experts was not harmless because "the parties' focus should be on drafting summary judgment and Daubert motions, not expert discovery"); *Young*, 269 F.R.D. at 694 (defendants prejudiced where expert disclosure was made ten days before close of discovery and depositions would require extending case management deadlines); *Rosado*, 2010 WL 3187661, at *1-2 ("Plaintiff's failure to disclose her experts until only two weeks prior to the [discovery] deadline is prejudicial to Defendants' ability to prepare a defense.").

WHEREFORE, Defendants, JOSE ROSARIO and ST. LUCIE COUNTY FIRE DISTRICT, respectfully request this Court grant their motion and prevent Dr. Lichtblau from offering his causation opinions regarding Ativan at trial as it does not meet the admissibility standards of section Rule 702 and *Daubert* and exclude his opinions as to life expectancy and damages that are mere possibilities as contained within his Expert Reports and any other relief the Court deems proper and just.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been furnished to the Clerk of Court using the CM/ECF on this 2nd day of November, 2017, and furnished a copy to: **Adam Hecht, Esq.,** *(Counsel for Plaintiff)* ash@searcylaw.com, axs@searcylaw.com, mal@searcylaw.com, jcx@searcylaw.com, lewisteam@searcylaw.com, Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, FL 33409; **Summer M. Barranco, Esq.,** (*Counsel for Christopher Newman, Claylan Mangrum, Calvin*

*Robinson, Wade Courtemanche, and Ken J. Mascara, as Sheriff of St. Lucie County, Florida)* summer@purdylaw.com; Melissa@purdylaw.com; Law Offices of Purdy, Jolly, Giuffreda & Barranco, P.A., 2455 East Sunrise Boulevard, Suite 1216, Fort Lauderdale, FL 33304.

                                                                    */s/BENJAMIN W. NEWMAN*
                                                                    BENJAMIN W. NEWMAN, ESQUIRE
                                                                    Florida Bar No.: 0011223
                                                                    JULIE A. TYK, ESQUIRE
                                                                    Florida Bar No.: 84493
                                                                    Wilson Elser Moskowitz Edelman & Dicker, LLP
                                                                    111 N. Orange Ave., Suite 1200
                                                                    Orlando, FL 32801
                                                                    Phone: (407) 203-7599
                                                                    Fax:     (407) 648-1376
                                                                    Ben.Newman@wilsonelser.com
                                                                    Julie.Tyk@wilsonelser.com

                                                                    Counsel for Defendant, JOSE ROSARIO and
                                                                    ST. LUCIE COUNTY FIRE DISTRICT