UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through                    CASE NO.: 2:16cv14413
JANICE DOCHER-NEELEY, his mother
and legal guardian,

           Plaintiff,

vs.

CHRISTOPHER NEWMAN, individually,
et al.

           Defendants.

_____/

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS MANGRUM AND
ROBINSON'S MOTION FOR SUMMARY JUDGMENT [DE 87]**

      The Defendants, MANGRUM and ROBINSON, in their individual capacities, file this

their Reply Memorandum in support of their Motion for Summary Judgment, as follows:

**Plaintiffs Cannot Defeat Summary Judgment Through Speculation, Conjecture or
Evidence which is Merely Colorable**

      Plaintiff, as the nonmoving party, "must do more than simply show that there is some

metaphysical doubt as to the material facts." Matsushita Elec. Indus. Corp. v. Zenith Radio

Corp., 475 U.S. 574, 586, 106 S.Ct. 1348 (1986). The non-moving party cannot create a genuine

issue of material fact through speculation, conjecture, or evidence that is "merely colorable" or

"not significantly probative." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 106 S.Ct.

2505, 2511, (1986); see also Bryant v. U.S. Steel Corp., 428 F. App'x 895, 897 (11th Cir. 2011).

The 11th Circuit Court of Appeals has held that "[a]ll reasonable inferences arising from the

undisputed facts should be made in favor of the nonmovant, but an inference based on

1

speculation and conjecture is not reasonable." Blackston v. Shook & Fletcher Insulation Co., 764 F.2d 1480, 1482 (11th Cir.1985) (citation omitted).

In reviewing the record evidence in this case, despite the Plaintiffs' attempts, there is no genuine dispute in the *material* facts as to the claims pending before this Court against the Defendants Mangrum and Robinson therefore they are entitled to summary judgment.

### Deputy Mangrum and Robinson's actions should be judged separately when analyzing whether they acted lawfully

Because multiple deputies are alleged to have violated the Plaintiff's rights in multiple ways, it is appropriate for this Court to analyze each deputy's actions individually. "Each defendant's liability must be assessed individually based on his own actions. Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir. 2010). "A reviewing court analyzes the subject event in segments when assessing the reasonableness of a police officer's actions." Morrison v. Bd. of Trustees of Green Twp., 583 F.3d 394, 401 (6th Cir. 2009).

### Defendant Robinson's use of force in response to Plaintiff's fleeing and active resistance was reasonable

It is now undisputed that the only force used by Defendant Robinson was his attempt to push the Plaintiff back into the patrol car when he fled the patrol car while handcuffed, his two strikes to the Plaintiff's legs as Docher pushed himself past the deputies and elbowed Deputy Newman in the face, and one closed fist strike to Plaintiff's side during the struggle after Docher was taken to the ground.

Plaintiff contends that because his detention was unlawful, any force used by Defendant Robinson was excessive. Plaintiff does not seem to be suggesting that the force used by Deputy

2

Robinson was more than reasonably necessary to effect the arrest. Nor could he credibly do so. In situations where an otherwise reasonable amount of force was utilized in an unlawful arrest, the damages recoverable are subsumed in a false arrest claim. There is no basis for an independent and separate excessive force claim, rather the use of force by Defendant Robinson would be considered an element of damage to a false arrest count which the Plaintiff did not bring against Defendant Robinson. See Williamson v. Mills, 65 F.3d 155, 158-59 (11ᵗʰ Cir. 1995); Bashir v. Rockdale County, 445 F.3d 1323, 1331-32 (11ᵗʰ Cir. 2006). Ultimately, this scenario presents a purely academic exercise since Plaintiff's detention was lawful as argued in Defendant Newman's Motion for Summary Judgment (DE 85) and Reply Memorandum in support of same.

**Deputy Mangrum's elbow strike was a reasonable response to Plaintiff's active resistance including his attempt to bite Deputy Mangrum**

It is now undisputed that after being taken to the ground, the Plaintiff attempted to bite Defendant Mangrum's finger. (DE 131, ¶ 67). Plaintiff has also tried to create a material dispute regarding whether the Plaintiff actually bit Defendant Newman's finger based on the testimony of Merine Kanhai who testified that she did not see the Plaintiff bite Deputy Newman (from a distance of 20-25 feet away). (DE 135-2, 11: 15-21). The fact that Kanhai did not see the Plaintiff bite Deputy Newman is insufficient to create a material dispute regarding that fact. See Kesinger ex rel. Est. of Kesinger v. Herrington, 381 F.3d 1243, 1249-50 (11th Cir. 2004) (finding summary judgment was appropriate despite conflicting testimony of a fatal shooting because an eyewitness's version did not differ from the officer's in any material way). In a

3

further attempt to create a material dispute regarding the fact that the Plaintiff bit Deputy Newman on the finger, Plaintiff cites to the fact that Defendant Newman did not seek medical treatment. This assertion is immaterial to the question of whether Defendant Mangrum used reasonable force unless the Plaintiff is advocating for a rule that unless a law enforcement officer suffers an observable injury in a struggle with a Plaintiff, any force used is unlawful.  Such is not the law.

Since it is undisputed that the Plaintiff attempted to bite Defendant Mangrum and there is no material dispute regarding the fact that the Plaintiff actually bit Deputy Newman, Defendant Mangrum's elbow strike to combat Plaintiff's actions was reasonable. See Benton v. Hopkins, 190 Fed. Appx. 856, 860 (11th Cir. 2006) (concluding that multiple baton strikes to the legs and neck of an unarmed resisting arrestee were not unreasonable).

Plaintiff advances two main theories in an attempt to defeat Defendant Mangrum's motion on the excessive force counts based on the elbow strike. Plaintiff's first theory is that since the Plaintiff's detention was unlawful, any force used by the deputies against the Plaintiff was excessive thus the Plaintiff's actions in biting and kicking the deputies in self-defense was permitted. Plaintiff cites to Dyer v. Lee, 488 F.3d 876, 870, 884 (11th Cir. 2007) with the parenthetical reference "explaining that persons are entitled to act in self-defense since any other result would allow the use of excessive force by a police officer free of fear of consequence under § 1983." (DE 129, p. 17). The issue in Dyer was whether the Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994) barred a Plaintiff convicted of resisting arrest with violence from bringing a § 1983 lawsuit alleging excessive force from the same incident where

4

the Plaintiff was arrested. The 11th Circuit's ruling in Dyer did not recognize a right to self defense in response to the use of excessive force, as the Plaintiff implies. Rather the Court held that not all successful §1983 claims against an officer for using excessive force will necessarily negate the underlying charge of resisting arrest with violence. Id. at 879 (holding for Heck to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory.) There is no claim here that Plaintiff's excessive force claims are barred by Heck. Further, as argued in Defendant Newman's Motion for Summary Judgment and Reply, Plaintiff's detention was supported by reasonable suspicion which later developed into probable cause.

Plaintiff cites to Pourmoghani-Esfahani v. Gee, 625 F.3d 1313 (11th Cir. 2010) in support of his contention that the force used by Defendant Mangrum was excessive. Plaintiff claims the facts in Gee are remarkably similar to this case with no meaningful differences. Defendant Mangrum disagrees. One meaningful difference is that the actions of the Defendant in Gee were very much disputed: the Plaintiff alleged that the Defendant slammed her head on the floor 7-8 times after the Plaintiff was restrained which the Defendant denied. Gee at 1316. There is no material dispute here regarding the fact that Defendant Mangrum elbowed the Plaintiff one time in response to the Plaintiff attempting to bite him. Plaintiff also notes that the video in Gee did not establish whether a pool of blood was present whereas in this case there is no dispute that the Plaintiff was bleeding from his face with the obvious implication that the justification for the denial of qualified immunity is stronger here. However, Plaintiff's injuries, no matter how minor or severe, do not convert an otherwise reasonable use of force into excessive force. See Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002); Silverman v. Ballantine, 694 F.2d

5

1091, 1096-97 (2nd Cir. 1982) (force used was not, as a matter of law, excessive even though arrestee died of heart attack during arrest). Finally, Plaintiff points to the testimony of the independent witnesses. To the extent the independent witnesses state that it did not look to them like the Plaintiff was resisting, Defendant Mangrum respectfully submits that the cell phone recording speaks for itself on that front. Gee, 625 F.3d at 1315. Further, the fact that a civilian witness did not perceive the Plaintiff as resisting does not overcome the fact that it is now undisputed that the Plaintiff fled the back of the patrol car while handcuffed and elbowed Defendant Newman in the eye, was able to slip his handcuffs underneath him during the struggle to control him, and attempted to bite the deputies.[1]

Plaintiff's second theory seems to be that even if some force was justified based on Plaintiff's resistance, the elbow strike utilized by Defendant Mangrum was an excessive use of deadly force. Plaintiff cites to and relies on the testimony of his retained expert, Mel Tucker, to support this contention. Plaintiff's expert's opinion aside, in order to divest Deputy Mangrum of the protections of qualified immunity, the legal issue is whether the case law was sufficiently clear that at the time Deputy Mangrum delivered the elbow strike that the elbow strike amounted to deadly force. That is not the state of the law now and it certainly was not the state of the law on May 11, 2014. In Baltimore v. City of Albany, Ga., 183 Fed.Appx.891, 898 (11th Cir. 2006), the 11th Circuit held that "striking a suspect in the head with a heavy flashlight or other blunt

---

[1]There is no record evidence that any of the civilian onlookers witnessed the Plaintiff alighting from the patrol car or going to the ground. Further, as evidenced by the testimony of Merine Kanhai, it is not surprising that civilians do not to fully understand what is meant by "resisting." (See DE 135-2, 24:9-20).

6

instrument at least poses a substantial risk of serious bodily injury, if not death" therefore constituting deadly force. Thus at the time of the incident, it was clearly established that striking a subject in the head with a **blunt instrument** constituted deadly force for purposes of qualified immunity. It is undisputed that only empty hand techniques were utilized by the deputies in dealing with Docher, i.e. they did not utilize a baton, taser or any other blunt instrument while attempting to gain compliance from the Plaintiff. Despite Plaintiff's suggestion that an elbow strike to the head constitutes deadly force, it certainly cannot be said that the law was clearly established to that effect on May 11, 2014. See Hoolihan v. Clayton County, Georgia, 2012 WL 12888679, at *6 (N.D. Ga. 2012), aff'd sub nom., Hoolihan v. Clayton County, Ga., 507 Fed.Appx. 831(11th Cir. 2013)("Thus even if an elbow strike to the head is considered deadly force [the law enforcement defendant] had no notice, by way of clearly established law, that the use of such force was unlawful under the circumstances").

Plaintiff's expert also suggests that Defendant Newman and the other deputies failed to treat this as a medical emergency rather than an arrest and control situation. The natural corollary of Plaintiff's expert's theory is that since the deputies should have treated their interaction with the Plaintiff as a medical emergency rather than an arrest and control situation, any force used by the deputies was unreasonable. As discussed above, prior to any force being used against the Plaintiff, the Plaintiff had committed multiple crimes of varying degrees of seriousness. Contrary to the Plaintiff's expert's opinion, this court should "credit the government with a significant interest in enforcing the law on its own terms, rather than on terms set by the arrestee." Buckley v. Haddock, 292 Fed. Appx. 791, 794 (11th Cir. 2008).

Finally, Plaintiff's expert contends that the Defendant Mangrum violated commonly accepted training practices which teach that elbow strikes are considered deadly force. The Supreme Court recently addressed this issue in City and County of San Francisco v. Sheehan, 135 S.Ct. 1765 (2015), where the Plaintiff in that case supported her 4th Amendment claim with expert testimony that the defendant law enforcement officers "fell short of their training by not using practices designed to minimize the risk of violence when dealing with the mentally ill." Id. at 1777. After scrutinizing the case law, the Supreme Court held that "the officers' failure to accommodate [the plaintiff's] illness [did not] violat[e] clearly established law." Id. at 1775. The Supreme Court further held that neither allegations that an officer deviated from accepted training standards nor suggestions from a Plaintiff's expert that an action should have been handled differently are substitutes for appropriate judicial precedent in the "clearly established" analysis. Id. at 1777.

The most telling portion of Plaintiff's expert's theory is where he declares that if deadly force was justified, "they should've just jumped back and drew their weapons and shot and killed him." This type of mechanical application to the analysis in use of force cases has been soundly rejected. See Bell v. Wolfish, 441 U.S. 520, 559 (1979) ("The test for reasonableness under the 4th Amendment is not capable of precise definition or mechanical application."). Rather, "[t]he sole inquiry is whether the officer's actions, as taken, were objectively reasonable under all the circumstances. See Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009). Defendant Mangrum's elbow strike in a tense and rapidly evolving situation was reasonable.

**Defendant Mangrum is entitled to qualified immunity on Plaintiff's "positional asphyxiation" excessive force claim**

8

It is now undisputed that after the Plaintiff was taken to the ground and during his active resistance, Docher was able to slip one of his handcuffs up to his elbow which permitted him to slip one of his arms underneath him despite being cuffed with his arms behind his back. (DE 88, ¶23 & DE 131 as to that ¶). In response to Defendant Mangrum's assertion that he is entitled to qualified immunity since a reasonable officer could have determined that the technique Deputy Mangrum used was needed to prevent the Plaintiff from again slipping his cuffs, Plaintiff suggests that the 11th Circuit in Post deemed the choke hold to be de minimus force. This is a curious argument for the Plaintiff to make considering by Plaintiff's theory, the choke hold was an excessive use of deadly force. Certainly a choke hold is likely to cause serious bodily injury or death. Plaintiff cites to Bozeman v. Orum, 422 F.3d 1265, 1272 (11th Cir. 2005) for the proposition that "Mangrum had fair warning that asphyxiating a person in police custody into unconsciousness after they have surrendered constitutes excessive force." When Deputy Mangrum lifted Docher's arms to prevent him from slipping his cuffs he clearly hadn't surrendered, as evidenced in the cell phone video. Further, Bozeman involved a group of detention officers who allegedly pushed a pretrial detainee's head into a mattress until he stopped breathing to intentionally cause the Plaintiff harm. Id at 1272-73. That is not what happened here.

The case of Fernandez v. City of Cooper City, 207 F.Supp 2d 1371 (S.D. Fla. 2002) is highly instructive to the issue of whether Deputy Mangrum's actions of lifting Docher's arms to prevent him from slipping his cuffs constituted excessive force. In Fernandez, three officers confronted a schizophrenic Vietnam veteran in a Winn Dixie parking lot after 911 received a call

9

concerning a man who seemed to be drunk and loitering. Id. at 1373-74. According to one of the witnesses, one of the defendant officers walked up to the man while he was sitting on a curb and attempted to place him in handcuffs. Id. at 1374. In response, the man began actively resisting the officers' efforts by swinging his arms and running through the parking lot. Id. at 1375. Eventually, the officers were able to restrain him by placing him in two sets of handcuffs and a restrainer on his legs while one officer kept his knee on his back. Shortly after placing the cuffs on the man's hands and legs, he stopped moving and later died at the scene. Id.

Like Docher, the Plaintiff filed suit against the officers with the primary argument being that "the positional asphyxiation" of [the Plaintiff] evidences the fact that the officers used unconstitutionally excessive force in restraining [the Plaintiff]." Id. at 1379. In ruling that the officers' use of force was lawful, the Court noted

> "[t]he prone restraint, pressure on the upper torso (presumably from one of the officer's knees being pressed to [the Plaintiff's] back, handcuffing, and struggle were all the result of Fidel's illegal, physical and prolonged resistance. It was of course an unfortunate occurrence, but sympathy for a plaintiff does not transform law enforcement officials' objectively reasonable responses to a volatile situation into a constitutional violation.

Id. at 1379.

Deputy Mangrum's actions in lifting the Plaintiff's arms did not violate clearly established law and to the extent Plaintiff's claim is based on that action, Deputy Mangrum is entitled to, at a minimum, qualified immunity.

For the reasons stated here and in Defendants' Motion for Summary Judgment (DE 87), Defendants Mangrum and Robinson respectfully request summary judgment as to Counts III, IV, V, VII, VIII, XVII and XVIII.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **ADAM S. HECHT, ESQUIRE,** Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, ash@searcylaw.com, axs@searcylaw.com; mal@searcylaw.com; jcx@searcylaw.com, **HUGH L. KOERNER, ESQUIRE**, Hugh L. Koerner, P.A., Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021, hlklaw@hughkoerner.com,  and **BENJAMIN W. NEWMAN, ESQUIRE,** Wilson Elser Moskowitz Edelman & Dicker, LLP, 111 N. Orange Ave., Suite 1200, Orlando, FL 32801, ben.newman@wilsonelser.com; julie.tyk@wilsonelser.com this **2nd**   day of November, 2017.

> PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
> Attorneys for Defendants Newman, Mangrum,
> Robinson, Courtemanche and Sheriff
> 2455 East Sunrise Boulevard, Suite 1216
> Fort Lauderdale, Florida 33304
> Telephone (954) 462-3200
> Telecopier (954) 462-3861
> Email: summer@purdylaw.com
>          melissa@purdylaw.com
>
> BY       *s/ Summer M. Barranco*
>          SUMMER M. BARRANCO
>          Fla. Bar No. 984663