UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

TAVARES DOCHER, by and through
JANICE DOCHER-NEELEY, his mother
and legal guardian,

        Plaintiffs,

vs.

CHRISTOPHER NEWMAN, individually,
et al.

        Defendants.
_____/

CASE NO.: 2:16cv14413

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT NEWMAN'S
MOTION FOR SUMMARY JUDGMENT [DE 85]**

    The Defendant NEWMAN, in his individual capacity, files this his Reply Memorandum in support of his Motion for Summary Judgment [DE 85], and would state as follows:

**Deputy Newman's actions should be judged
separately in analyzing whether he acted lawfully**

    Because multiple deputies are alleged to have violated the Plaintiff's rights in multiple ways, it is appropriate for this Court to analyze each deputies' actions individually. "Each defendant's liability must be assessed individually based on his own actions. Binay v. Bettendorf, 601 F.3d 640, 650 (6th Cir. 2010). "A reviewing court analyzes the subject event in segments when assessing the reasonableness of a police officer's actions." Morrison v. Bd. of Trustees of Green Twp., 583 F.3d 394, 401 (6th Cir. 2009).

**Based on the undisputed facts, there was, at a minimum, reasonable suspicion to
handcuff the Plaintiff and escort him to the patrol car.**

1

It is now undisputed that upon arriving at the CVS, the defendant deputies encountered the Plaintiff who 1) was carrying a screwdriver with a closed fist to protect himself from the "Arabs," 2) declared that Seal Team 6 out of Broward County had cut off someone's head and were now trying to get him, 3) alleged that he was being followed by black vans and helicopters, 4) admitted had been drinking and 5) acknowledged that he was a registered sex offender. (DE 88, ¶¶ 9, 10, 12, 16, 18; see also DE 131 as to those ¶s).

Plaintiff asserts that because the crime of disorderly conduct is a misdemeanor, in order for the detention to have been lawful, the misdemeanor must have been committed in the officer's presence. First, as the Plaintiff correctly concedes, the in presence rule has no affect on Plaintiff's federal false arrest claim. See Knight v. Jacobson, 300 F.3d 1272, 1275-76 (11th Cir. 2002). Regardless, the in presence rule does not disturb Defendant Newman's entitlement to summary judgment on Plaintiff's false arrest claims, whether state or federal, since the undisputed facts as noted above all occurred in the deputies' presence. These facts, at a minimum, provided the reasonable suspicion required to justify Plaintiff's detention.

As predicted in Defendant Newman's motion, Plaintiff has attempted to create a material dispute regarding the legality of Plaintiff's detention by referring to Defendant Newman's testimony that he did not believe the Plaintiff was a direct threat to the public, which is an element of the offense of disorderly intoxication. However, "neither Florida nor federal law requires that a police officer actually have a subjective belief in the guilt of the person arrested." Rankin v. Evans, 133 F.3d 1425, 1433 (11th Cir. 1998). Instead, the proper analysis rests on what the totality of circumstances means to a reasonable police officer in the

2

field. Id; see also State v. Melendez, 392 So.2d 587, 588-89 (Fla. 4th DCA 1981).

      As noted above, the deputies confronted a person who admitted he had been drinking, informed the deputies he was a convicted felon, was holding a screwdriver to protect himself from "Arabs" and Seal Team 6 (who the Plaintiff claimed had cut off someone's head), and was saying that he was being followed by black helicopters and vans. While the Plaintiff suggests that it is not illegal to carry a screwdriver, separating that fact from Plaintiff's other observed behavior is not the proper analysis required here. When evaluating the totality of the circumstances, which is required when analyzing the propriety of Plaintiff's detention, the fact that the Plaintiff was holding a screwdriver **and** had declared his intention to defend himself from threats the Plaintiff presumably created in his mind, the legality of Plaintiff's detention becomes obvious. Based on the totality of the circumstances from the perspective of a reasonable officer, there was a danger that the Plaintiff, who unquestionably wasn't thinking clearly, might confuse a CVS patron for an "Arab" and then defend himself with a screwdriver. Under these circumstances, only reasonable suspicion was required to justify handcuffing the Plaintiff and placing him in the back of Deputy Newman's patrol car. Studemire v. State, 955 So.2d 1256, 1257-58 (Fla. 4th DCA 2007) (holding that criminal defendant's handcuffing and placing in back of patrol car was a lawful temporary detention which required only reasonable suspicion since there was an objectively reasonable necessity to protect the officers' safety or to thwart a suspect's attempt to flee).

      As the Plaintiff correctly points out, the elements of disorderly intoxication are (1) defendant is intoxicated and (2) endangering the safety of a person. Royster v. Florida, 643

3

2d 61, 64 (Fla. 1st DCA 1994). Plaintiff's admission that he had been drinking combined with his erratic behavior certainly provided, at the very least, a "minimum level of objective justification" to handcuff the Plaintiff and escort him to the back of the patrol car. See Illinois v. Wardlow, 120 S.Ct. 673,675-76 (2000).

### Plaintiff's actions of elbowing Deputy Newman in the face while fleeing the back of Deputy Newman's Patrol Car established probable cause for his arrest

It is now undisputed that after the Plaintiff was escorted to Deputy Newman's patrol car without incident, the Plaintiff ran from the patrol car while handcuffed towards Prima Vista Boulevard. (DE 88, ¶21; see also DE 131 as to that ¶). Plaintiff does not specifically dispute that he elbowed Defendant Newman as he pushed his way out of Newman's patrol car but instead suggests a material dispute in the facts because Deputy Robinson described the event differently. However, the fact that Deputies Newman and Robinson, who were actively engaged in the struggle with the Plaintiff, do not have identical recollections of the event does not create a material dispute. See Kesinger v. Herrington, 381 F.3d 1243, 1249-50 (11th Cir. 2004) (finding summary judgment was appropriate despite conflicting testimony of a fatal shooting because an eyewitness's version did not differ from the officer's in any material way). Thus there is no material dispute regarding the fact that the Plaintiff offered physical resistance while fleeing the back of Deputy Newman's patrol car.

The now undisputed material facts demonstrate that probable cause existed for the crimes of resisting an officer with violence in violation of F.S.§843.01 (2014) and battery on a law enforcement officer in violation of F.S.§784.07 (2014). Plaintiff's suggestion that the

Plaintiff was privileged to resist arrest without violence since the initial detention was unlawful is factually and legally incorrect. First, as argued above, Plaintiff's detention for disorderly intoxication was lawful. Studemire, 955 So.2d at 1257-58. Second, even assuming arguendo that the Plaintiff's initial detention was unlawful (which it wasn't), "engaging in a scuffle with an officer-even during an improper police detention-can give rise to a valid arrest...for the offense of resisting arrest with violence." Robbins v. City of Miami Beach, 769 F. Supp. 2d 1372, 1375 (S.D. Fla. 2011) citing Reed v. State, 606 So.2d 1246 (Fla. 5th DCA 1992) and Savage v. State, 494 So. 2d 274 (Fla. 2nd DCA 1986).

### Deputy Newman's use of force was a reasonable response to Plaintiff's active resistance including biting Deputy Newman's fingers.

It is now undisputed that after being taken to the ground, the Plaintiff attempted to bite Defendant Mangrum's finger. (DE 131, ¶ 67). Plaintiff has also tried to create a material dispute regarding whether the Plaintiff actually bit Defendant Newman's finger based on the testimony of Merine Kanhai who testified that she did not see the Plaintiff bite Deputy Newman (from a distance of 20-25 feet away). (DE 135-2, 11:15-21). As argued above, the fact that Kanhai did not see the Plaintiff bite Deputy Newman is insufficient to create a material dispute regarding that fact. See Kesinger, 381 F.3d at 1249-50. In a further attempt to create a material dispute regarding the fact that the Plaintiff bit Deputy Newman on the finger, Plaintiff cites to the fact that Defendant Newman did not seek medical treatment. This assertion is immaterial to the question of whether the Defendant Newman used reasonable force unless the Plaintiff is advocating for a rule that unless a law enforcement officer suffers

5

an observable injury, any use of force by that officer is unlawful. Such is not the law.

Since it is undisputed that the Plaintiff attempted to bite Deputy Mangrum and there is no material dispute regarding the fact that the Plaintiff actually bit Defendant Newman, Defendant Newman's two elbow strikes to combat Plaintiff's actions in that regard were reasonable. See Benton v. Hopkins, 190 Fed. Appx. 856, 860 (11th Cir. 2006) (concluding that multiple baton strikes to the legs and neck of an unarmed resisting arrestee were not unreasonable).

Plaintiff advances two main theories in an attempt to defeat Defendant Newman's motion on the excessive force counts. Plaintiff's first theory is that since the Plaintiff's detention was unlawful, any force used by the deputies against the Plaintiff was excessive thus the Plaintiff's actions in biting and kicking the deputies in self-defense was permitted. Plaintiff cites to Dyer v. Lee, 488 F.3d 876, 870, 884 (11th Cir. 2007) with the parenthetical reference "explaining that persons are entitled to act in self-defense since any other result would allow the use of excessive force by a police officer free of fear of consequence under § 1983." (DE 129, p. 17). The issue in Dyer was whether the Supreme Court's ruling in Heck v. Humphrey, 512 U.S. 477 (1994) barred a Plaintiff convicted of resisting arrest with violence from bringing a § 1983 lawsuit alleging excessive force from the same incident where the Plaintiff was arrested. The Eleventh Circuit's ruling in Dyer did not recognize a right to self defense in response to the use of excessive force, as the Plaintiff implies. Rather the Court held that not all successful § 1983 claims against an officer for using excessive force will necessarily negate the underlying charge of resisting arrest with violence. Id. at 879

6

(holding for Heck to apply, it must be the case that a successful § 1983 suit and the underlying conviction be logically contradictory.) There is no claim here that Plaintiff's excessive force claims are barred by Heck. Further, as argued above, Defendant's detention was supported by reasonable suspicion which then evolved into probable cause.

Plaintiff cites to Pourmoghani-Esfahani v. Gee, 625 F.3d 1313 (11th Cir. 2010) in support of his contention that the force used by Defendant Newman was excessive. Plaintiff claims the facts in Gee are remarkably similar to this case with no meaningful differences. Defendant Newman disagrees. One meaningful difference is that the actions of the Defendant in Gee were very much disputed: the Plaintiff alleged that the Defendant slammed her head on the floor seven to eight times after the Plaintiff was restrained which the Defendant denied. Gee at 1316. There is no material dispute here as to the force used by Defendant Newman in response to Plaintiff's resistance. Plaintiff also notes that the video in Gee did not establish whether a pool of blood was present whereas in this case there is no dispute that the Plaintiff was bleeding from his face with the obvious implication that the justification for the denial of qualified immunity is stronger here. However, Plaintiff's injuries, no matter how minor or severe, do not convert an otherwise reasonable use of force into excessive force. See Rodriguez v. Farrell, 280 F.3d 1341, 1351 (11th Cir. 2002); Silverman v. Ballantine, 694 F.2d 1091, 1096-97 (2nd Cir. 1982) (force used was not, as a matter of law, excessive even though arrestee died of heart attack during arrest). Finally, Plaintiff points to the testimony of the independent witnesses. To the extent the independent witnesses flatly state that it did not look to them like the Plaintiff was resisting, Defendant Newman respectfully submits that the cell

phone recording speaks for itself on that front. <u>Gee</u>, 625 F.3d at 1315. Further, the fact that a civilian witness did not perceive the Plaintiff as resisting does not overcome the fact that there is no material dispute that the Plaintiff fled the back of the patrol car while handcuffed and elbowed Defendant Newman in the eye, was able to slip his handcuffs underneath him during the struggle to control him, and attempted to bite the deputies.[1]

Plaintiff's second theory seems to be that even if some force was justified based on Plaintiff's resistance, the elbow strikes utilized by Defendant Newman were an excessive use of deadly force. Plaintiff cites to and relies on the testimony of his retained expert, Mel Tucker, to support this contention. Plaintiff's expert's opinion aside, in order to divest Deputy Mangrum of the protections of qualified immunity, the legal issue is whether the case law was sufficiently clear that at the time Deputy Mangrum delivered the elbow strike that the elbow strike amounted to deadly force. That is not the state of the law now and it certainly was not the state of the law on May 11, 2014. In <u>Baltimore v. City of Albany, Ga.</u>, 183 Fed.Appx.891, 898 (11th Cir. 2006), the Eleventh Circuit held that "striking a suspect in the head with a heavy flashlight or other blunt instrument at least poses a substantial risk of serious bodily injury, if not death" therefore constituting deadly force. Thus at the time of the incident, it was clearly established that striking a subject in the head with a **blunt instrument** constituted deadly force for purposes of qualified immunity. It is undisputed that only empty

---

[1] There is no record evidence that any of the civilian onlookers witnessed the Plaintiff alighting from the patrol car or going to the ground. Further, as evidenced by the testimony of Merine Kanhai, it is not surprising that civilians do not to fully understand what is meant by "resisting." (See DE 135-2, 24:9-20).

hand techniques were utilized by the deputies in dealing with Docher. In other words, the deputies did not utilize a baton, flashlight, taser or any other blunt instrument while attempting to gain compliance from the Plaintiff. Despite the Plaintiff's suggestion that an elbow strike to the head constitutes deadly force, it certainly cannot be said that the law was clearly established to that effect on May 11, 2014. See Hoolihan v. Clayton County, Georgia, 2012 WL 12888679, at *6 (N.D. Ga. 2012), aff'd sub nom., Hoolihan v. Clayton County, Ga., 507 Fed. Appx. 831 (11th Cir. 2013) (unpublished) ("Thus even if an elbow strike to the head is considered deadly force, [the law enforcement defendant] had no notice, by way of clearly established law, that the use of such force was unlawful under the circumstances").

Plaintiff's expert also suggests that Defendant Newman and the other deputies failed to treat this as a medical emergency rather than an arrest and control situation. The natural corollary of Plaintiff's expert's theory is that since the deputies should have treated their interaction with the Plaintiff as a medical emergency rather than an arrest and control situation, any force used by the deputies was unreasonable. As discussed above, prior to any force being used against the Plaintiff, the Plaintiff had committed multiple crimes of varying degrees of seriousness. Contrary to the Plaintiff's expert's opinion, this court should "credit the government with a significant interest in enforcing the law on its own terms, rather than on terms set by the arrestee." Buckley v. Haddock, 292 Fed. Appx. 791, 794 (11th Cir. 2008).

Finally, Plaintiff's expert contends that the Defendant Newman violated commonly accepted training practices which teach that elbow strikes are considered deadly force. The Supreme Court recently addressed this issue in City and County of San Francisco v. Sheehan,

9

135 S.Ct. 1765 (2015), where the Plaintiff in that case supported her Fourth Amendment claim with expert testimony that the defendant law enforcement officers "fell short of their training by not using practices designed to minimize the risk of violence when dealing with the mentally ill." Id. at 1777. After scrutinizing the case law, the Supreme Court held that "the officers' failure to accommodate [the plaintiff's] illness [did not] violat[e] clearly established law." Id. at 1775. The Supreme Court further held that neither allegations that an officer deviated from accepted training standards nor suggestions from a Plaintiff's expert that an action should have been handled differently are substitutes for appropriate judicial precedent in the "clearly established" analysis. Id. at 1777.

The most telling portion of Plaintiff's expert's theory is where he declares that if deadly force was justified, "they should've just jumped back and drew their weapons and shot and killed him." This type of mechanical application to the analysis in use of force claims has been soundly rejected. See Bell v. Wolfish, 441 U.S. 520, 559 (1979) ("The test for reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application."). Rather, "[t]he sole inquiry is whether the officer's actions, as taken, were objectively reasonable under all the circumstances. See Garczynski v. Bradshaw, 573 F.3d 1158, 1167 (11th Cir. 2009). Defendant Newman's actions in a tense and rapidly evolving situation were reasonable.

For the reasons set forth above and in his Motion for Summary Judgment, Defendant Newman respectfully requests summary judgment be granted in his favor on Counts I, II, VI, XIV and XVI.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF and furnished via email a copy to: **ADAM S. HECHT, ESQUIRE,** Searcy Denney Scarola Barnhart & Shipley, P.A., 2139 Palm Beach Lakes Boulevard, West Palm Beach, Florida 33409, ash@searcylaw.com, axs@searcylaw.com; mal@searcylaw.com; jcx@searcylaw.com, **HUGH L. KOERNER, ESQUIRE**, Hugh L. Koerner, P.A., Sheridan Executive Centre, 3475 Sheridan Street, Suite 208, Hollywood, FL 33021, hlklaw@hughkoerner.com, and **BENJAMIN W. NEWMAN, ESQUIRE,** Wilson Elser Moskowitz Edelman & Dicker, LLP, 111 N. Orange Ave., Suite 1200, Orlando, FL 32801, ben.newman@wilsonelser.com; julie.tyk@wilsonelser.com this **2nd** day of November, 2017.

        PURDY, JOLLY, GIUFFREDA & BARRANCO, P.A.
        Attorneys for Defendants Newman, Mangrum,
        Robinson, Courtemanche and Sheriff
        2455 East Sunrise Boulevard, Suite 1216
        Fort Lauderdale, Florida 33304
        Telephone (954) 462-3200
        Telecopier (954) 462-3861
        Email: summer@purdylaw.com
               melissa@purdylaw.com

BY    *s/ Summer M. Barranco*
        SUMMER M. BARRANCO
        Fla. Bar No. 984663